IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| *Plaintiffs*, | ) |
| v. | ) Civil Action No. 6:24-cv-0306 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) |
| *Defendants*. | ) |

**DEFENDANTS' MOTION FOR EXPEDITED JURISDICTIONAL
DISCOVERY, STAY OF BRIEFING, AND SCHEDULE PROPOSAL**

On August 23, 2024, Plaintiffs, 16 States, filed a complaint and motion for temporary restraining order challenging a process announced by the U.S. Department of Homeland Security for certain noncitizen spouses and stepchildren of U.S. citizens who are already residing in the United States to request temporary parole in place under existing statutory authority. *See Implementation of Keeping Families Together*, 89 Fed. Reg. 67,459 (Aug. 20, 2024). The Plaintiffs' allegations regarding standing largely center around State costs associated with unlawful immigration generally, not costs related to the Keeping Families Together process. That is especially critical to the Court's consideration of emergency relief because the noncitizen spouses of U.S. citizens at issue have, by definition, already been in the United States for at least ten years (and since June 17, 2024 for stepchildren of U.S. citizens). This policy merely grants parole to individuals who are already present in the United States. Granting parole to those noncitizens, which is what the Plaintiffs seek to temporarily restrain or preliminarily enjoin, will

1

not increase the number of noncitizens in the plaintiff States. Plaintiffs' claim that the Keeping Families Together program will incentivize illegal immigration, thus causing immediate financial harm to the Plaintiff States, is baseless. ECF No. 3 at 31. The program clearly states that it only applies to noncitizens who were present for at least ten years as of the day *before* it was announced, June 17, 2024. 89 Fed. Reg. at 67,461. Moreover, noncitizens who are granted parole in place are generally ineligible for most benefits for at least five years after being granted parole, a fact conceded by Plaintiffs, ECF No. 1 at 13-14.  Without a valid showing of impending, immediate harm absent Court action, there is no basis for asking the Cour to decide this case without the Court being assured standing exists through jurisdictional discovery, an administrative record, and complete briefing.

Accordingly, Defendants request that the Court stay briefing on the motion for temporary restraining order to allow Defendants to conduct limited expedited discovery into Plaintiffs' standing to bring this suit before proceeding. In the alternative, if the Court is not inclined to delay briefing on the motion, Defendants request that the Court adopt the schedule set out below for briefing the motion. At a minimum, before the Court issues any order on the briefing schedule or case management generally, Defendants respectfully request that the Court set a status conference with the parties to discuss these various issues.

Good cause supports this request. Defendants plan to make a factual jurisdictional attack on Plaintiffs' standing under Fed. R. Civ. P. 12(b)(1). Plaintiffs' allegations in the Complaint regarding Article III standing are entirely speculative, and there is good reason to believe that the Plaintiff States cannot provide evidence to support their allegations of harm from the parole process they challenge. Factually resolving the issue of standing at this stage will maximize efficient use of the Court's and parties' resources, sparing the need for this determination later

2

upon summary judgment or trial, and potentially resolving the case without further investment of resources if jurisdiction is lacking. Permitting this limited jurisdictional discovery will also aid the Court in determining whether Plaintiffs can show sufficient evidence of harm to pursue the preliminary injunctive relief they seek.

In order to seek a preliminary injunction, Plaintiffs must show, among other things, "a substantial likelihood of establishing Article III standing," and "a substantial threat of irreparable injury." *Louisiana v. CDC*, No. 6:22-CV-00885, 2022 WL 1604901, at *10, 15 (W.D. La. May 20, 2022). Plaintiffs have not shown more than a speculative injury in their Complaint and motion. Courts in this circuit routinely grant jurisdictional discovery in these circumstances where Defendants intend to raise a factual attack on Plaintiffs' alleged standing. *See, e.g., Texas v. Mayorkas, et al.*, No. 2:22-cv-0094-Z, ECF No. 60 (N.D. Tex. May 31, 2022) (J. Kacsmaryk) (ordering parties to "complete limited jurisdictional discovery into Texas's alleged injuries and standing to sue" while staying Defendants' response to motion for preliminary injunction); *Arizona et al. v. Garland et al.*, No. 6:22-cv-1130 (W.D. La. May 18, 2022) (J. Joseph), ECF No. 24 (providing a period for limited discovery after which plaintiff States "must clearly show that they are 'likely' to obtain each element of Article III standing" before requiring Defendants to respond to motion for preliminary injunction).

Because jurisdictional discovery is warranted, Defendants request the Court enter the following schedule to allow Defendants to complete discovery and compile and produce the administrative record before responding to the motion:

| | |
|---|---|
| September 6, 2024 | Defendants produce to Plaintiffs the administrative record |
| October 23, 2024 | Parties complete 60-day period of limited jurisdictional discovery into Plaintiffs' alleged injuries and standing to bring this suit |
| October 23, 2024 | Parties submit updated proposals for additional briefing and proceedings |

Alternatively, if the Court is not inclined to permit limited jurisdictional discovery before moving forward with this matter, the Court should allow Defendants 14 days, until September 6, 2024, to assemble and produce the administrative record, and permit Defendants a reasonable amount of time after the record is available, at least until September 13, 2024, to respond to the motion for preliminary injunction. If the Court is not inclined to delay briefing on the motion for temporary restraining order to permit discovery and compiling of the record, at a minimum, Defendants respectfully request the Court permit them until August 28, 2024 to respond to the motion for temporary restraining order.

## BACKGROUND

In this case, Plaintiffs challenge the federal government's Keeping Families Together process as unlawful under the Administrative Procedure Act (APA) and the U.S. Constitution. *See generally* ECF No. 1. Keeping Families Together is a process for certain noncitizen spouses and stepchildren of U.S. citizens who are already present in the United States without admission or parole and have been continually physically present in the United States for a specified time period to request temporary parole in place under existing statutory authority. *See* 8 U.S.C. § 1182(d)(5)(A); *Implementation of Keeping Families Together*, 89 Fed. Reg. 67,459 459 (Aug. 20, 2024). For spouses, the requisite time period is at least ten years of continuous physical presence as of June 17, 2024. For stepchildren, the requirement is continuous physical presence since at least June 17, 2024. The median time period that spouses of U.S. citizens who are expected to be eligible for this process have lived in the United States is 23 years. 89 Fed. Reg. at 67,460, note 4. Individuals who would already have a path to seek lawful permanent residence under existing statutory authority may apply for parole in place through this process which, if granted, would enable them to apply for adjustment of status to that of lawful permanent resident without

4

having to leave the United States, thereby avoiding the disruption and hardship to these families that other routes to obtain lawful permanent status would impose. Absent such a process, family members would face temporary or potentially permanent separation while they left the country sought an immigrant visa and admission to the United States from abroad. The Keeping Families Together process was first publicly announced on June 18, 2024, and the government began accepting applications on August 19, 2024. DHS has begun granting applications consistent with the notice.

Plaintiffs filed this suit on August 23, 2024 alleging the Keeping Families Together process is in excess of Defendants' statutory authority, arbitrary and capricious, unlawful for lack of notice and comment, and in violation of the Take Care Clause of the Constitution. ECF No. 1 at 37-51. Plaintiffs allege they will be harmed by the Keeping Families Together process because any increase of parolees in their States will result in increased costs to the States. ECF No. 1 at 12-29. Plaintiffs also filed a motion for temporary restraining order, preliminary injunction, and stay of agency action. ECF No. 3.

## ARGUMENT

Defendants respectfully request that the Court enter an order permitting the parties 60 days to conduct limited discovery to ascertain the Court's subject matter jurisdiction before requiring any additional briefing on the motion for temporary restraining order or preliminary injunction. Such discovery is necessary in particular to ascertain Plaintiffs' Article III standing, which is not apparent from the face of the Complaint. Fully and factually resolving this jurisdictional issue now, as opposed to merely determining whether it has been adequately pleaded, will maximize efficient use of the Court's and parties' resources, potentially resolving the case at the threshold without further investment of resources if jurisdiction is lacking.

"As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Bank of La. v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019) (internal quotation omitted). When evaluating jurisdiction, courts distinguish between "facial" and "factual" attacks under Rule 12(b)(1). *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Under a facial attack, the court assesses the presence of subject matter jurisdiction based solely on "the sufficiency of the allegations in the complaint." *Id.* With a factual attack, the court may consider evidence outside of the pleadings and the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* In this case, Defendants plan to make a factual attack under Rule 12(b)(1), arguing that Plaintiffs lack standing, in addition to other jurisdictional defects.

In order to seek a preliminary injunction, Plaintiffs must show, among other things, "a substantial likelihood of establishing Article III standing," and "a substantial threat of irreparable injury." *Louisiana v. CDC*, No. 6:22-CV-00885, 2022 WL 1604901, at *10, 15 (W.D. La. May 20, 2022); *see also Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The plaintiff bears the burden of establishing standing by showing "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015). The injury must be "certainly impending"—speculative or merely "possible" future injury is not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2014).

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *see In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (noting, in a bankruptcy appeal, "some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact"). In the context of threshold challenges to jurisdiction under Rule 12(b)(1), "courts have permitted jurisdictional discovery to determine whether the court has subject matter jurisdiction." *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2012 WL 5845426, at *1 (N.D. Tex. Nov. 19, 2012) (citing *Garbin v. Gulf South Pipeline Co.*, 2001 WL 1386067 (E.D. La. Nov. 7, 2001) (ordering jurisdictional discovery to support a motion to remand a removed complaint for lack of subject matter jurisdiction)); *see, e.g.*, *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 3 (D.D.C. 2018) (holding that limited jurisdictional discovery for purposes of deciding a Rule 12(b)(1) motion to dismiss was appropriate).

Courts in this Circuit have recently authorized threshold jurisdictional discovery into plaintiff's Article III standing in other State challenges to federal immigration actions before completing briefing on motions for preliminary injunctive relief. *See Texas v. Mayorkas, et al.*, No. 2:22-cv-0094-Z, ECF No. 60 (N.D. Tex. May 31, 2022) (J. Kacsmaryk) (ordering parties to "complete limited jurisdictional discovery into Texas's alleged injuries and standing to sue" while staying Defendants' response to motion for preliminary injunction); *Arizona, et al. v. Garland, et al.*, No. 6:22-cv-1130 (W.D. La. May 18, 2022) (J. Joseph), ECF No. 24 (providing a period for limited discovery after which plaintiff States "must clearly show that they are 'likely' to obtain each element of Article III standing" before requiring Defendants to respond to motion for preliminary injunction); *Texas, et al. v. Dep't of Homeland Sec., et al.*, No. 6:23-cv-0007 (S.D. Tex. Mar. 22, 2023) (J. Tipton), ECF No. 90 (granting request for jurisdictional discovery into

Plaintiffs' standing to challenge the CHNV program before requiring Defendants to respond to motion for preliminary injunction); *Texas, et al. v. Biden, et al.*, No. 3:22-cv-00780-M (N.D. Tex. Aug. 22, 2022) (J. Lynn), ECF No. 50 (staying Defendants' response to the Complaint and allowing the parties time to conduct jurisdictional discovery).

Although the Fifth Circuit has not established a standard for when expedited discovery should be allowed, courts in this Circuit generally allow such discovery when good cause exists. *See, e.g.*, *Equistar Chemicals, LP v. Maschinenfabrik Alfing Kessler GmbH*, No. 2:13-CV-02642, 2014 WL 3735219, at *1 (W.D. La. July 28, 2014) (collecting cases). Good cause exists where the need for expedited discovery outweighs the prejudice to the responding party. *Id.* "In determining whether good cause exists, courts often consider '[ ] whether a preliminary injunction is pending.'" *Greenthal v. Joyce*, No. 4:16–CV–41, 2016 WL 362312, at *2 (S.D. Tex. Jan. 29, 2016) (quoting *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011)); Fed. R. Civ. P. 26(d), Advisory Committee Note to 1993 Amendment (noting that early discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction").

Good cause exists here because there are genuine questions as to Plaintiffs' standing to challenge Keeping Families Together and the allegations of imminent harm. Plaintiffs' allegations of harm are speculative at best, and there is good reason to doubt Plaintiffs can show any evidence of harm sufficient to invoke this Court's jurisdiction. For example, among other reasons, Keeping Families Together applies only to noncitizens who are already in the United States, who are married to or are stepchildren of U.S. citizens, and who have been in the country for more than ten years (for spouses) or since June 17, 2024 (for stepchildren), so there is no basis for Plaintiffs' allegations that it will affect the number of noncitizens in the Plaintiff States or increase the States' costs. Additionally, noncitizens who are granted parole in place are generally ineligible for most

8

benefits for at least five years after being granted parole, a fact conceded by Plaintiffs, ECF No. 1 at 13-14, and certain benefits are not available at all in some Plaintiff states. 89 Fed. Reg. at 67,478 (explaining that SNAP, Medicaid, TANF, and CHIP programs require five years in "qualified alien" status for those who entered after August 22, 1996, and that the Plaintiff States of Ohio, South Carolina, and Texas deny access to TANF to some "qualified aliens" even after expiration of the five-year period). Plaintiffs also claim the Keeping Families Together process will incentivize illegal immigration, ECF No. 3 at 31, thus causing financial harm to the Plaintiff States, but the program applies only to noncitizens who were present for ten years as of the day *before* it was announced, June 17, 2024. 89 Fed. Reg. at 67,461. Therefore, no noncitizen arriving in the country after that date would be eligible for these benefits. Plaintiffs' claim that it will immediately incentivize illegal immigration is baseless.

Without such an injury in fact fairly traceable to the challenged policy, Plaintiffs do not have standing to bring this case or seek a preliminary injunction. Therefore, there is a factual question about whether Plaintiffs' have standing, and jurisdictional discovery is necessary to resolve that question before proceeding. *See MPF Holdings* US LLC, 701 F.3d at 457. The Court will need to address these questions in any ruling on the motion for temporary restraining order or preliminary injunction.

Plaintiffs allege potential injury from the Keeping Families Together process primarily in the form of costs to each Plaintiff State. ECF No. 1 at 12-29. However, the Fifth Circuit has held that generalized information showing "immigration is costing the state money" is insufficient to confer standing. *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015). A state must put forth "concrete evidence" that state "costs had increased or will increase as a result" of the particular challenged action, otherwise traceability is "purely speculative." *Id.* The Supreme Court's recent

9

decision in *United States v. Texas*, 599 U.S. 670 (2023), confirms that potential downstream economic effects on state programs in response to a federal immigration policy without any concrete evidence of harm are insufficient to establish standing.

The Complaint does not allege any increase in costs due to the Keeping Families Together process itself, as opposed to immigration generally, so discovery is necessary to determine if the requisite causal connection to Keeping Families Together exists. Regardless of the policy they are challenging, Plaintiffs frequently claim the same economic injuries: more noncitizens in their State will result in the State paying more for State services—such as emergency Medicaid, education, and welfare benefits—for those noncitizens. *See, e.g., Florida v. United States*, 3:21-cv-1066-TKW-ZCB (N.D. Fla) (challenging PATD, and an alleged non-detention policy); *Texas, et al. v. Dep't of Homeland Sec.*, 6:23-cv-00007 (S.D. Tex) (challenging CHNV); *Arizona, et al. v. Garland*, 6:22-cv-01130-DCJ-CBW (W.D. La.) (challenging asylum officer rule); *Texas v. DHS*, 6:23-cv-0007 (S.D. Tex.) (challenging Asylum Officer Rule); *Texas v. Mayorkas*, 2:23-CV-00024-AM (W.D. Tex.) (challenging Circumvention of Lawful Pathways); *Arizona, et al. v. Biden*, 3:21-CV-00314 (S.D. Ohio) (challenging enforcement priorities); *Texas v. Biden*, 2:21-CV-00067 (N.D. Tex.) (challenging enforcement priorities); *Texas, et al. v. United States*, 1:14-CV-00254 (S.D. Tex.) (challenging DAPA); *Texas, et al. v. Biden*, 2:21-CV-00067 (N.D. Tex.) (challenging termination of migrant protection protocols); *Texas, et al. v. United States*, 1:14-CV-00254 (S.D. Tex.) (challenging DACA). In the cases where Defendants challenged a State's alleged injury on the basis of increased costs to the State as a result of noncitizens using State services, however, Courts have frequently found the State's injuries were not sufficient to establish standing and dismissed the case on that basis. *See Arizona,* No. 6:22-cv-1130 (W.D. La. Apr. 16, 2024), ECF No. 235 (holding Plaintiff States did not suffer an injury in fact because they could not demonstrate

they had actually incurred additional expenses as a result of the challenged policy); *Texas, et al.*, 6:23-cv-0007 (S.D. Tex. Mar. 8, 2024), ECF No. 305 (same); *Texas v. Mayorkas*, 2:23-CV-0024 (W.D. Tex. Aug. 2, 2024), ECF No. 48 (same).

Plaintiffs allege these same economic injuries here, including seemingly unrelated injuries as a result of increased "illegal" immigration, but these allegations are even more attenuated in this case, because the challenged policy applies only to noncitizens who are already present in the United States—for at least ten years (for spouses) and since at least June 17, 2024 (for stepchildren). Jurisdictional discovery is needed to probe this issue and determine whether Plaintiffs have standing to bring this case at all. *See DA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (plaintiff "does not have standing to challenge a government regulation simply because [it] believes that the government is acting illegally), *id.* at 396 (there is no general "overs[ight of] the conduct of the National Government by means of lawsuits in federal courts" (citing *United States v. Texas*, 599 U.S. 670, 685 (2023)).

Given these substantial factual questions as to Plaintiffs' standing, the need to "affirmatively ascertain subject-matter jurisdiction before adjudicating [this] suit," *Bank of La.*, 919 F.3d at 922, outweighs any prejudice to Plaintiffs from providing both sides a mere 60 days to conduct limited discovery. *See Equistar Chemicals*, 2014 WL 3735219, at *1. Plaintiffs do not have an urgent need to obtain relief: the challenged policy applies only to noncitizens who are already present in the United States, so there can be no claim that allowing this policy to remain in effect during the discovery period will increase the States' population. The parties will need to engage in such discovery at some point to establish whether Plaintiffs have standing for summary judgment. Providing them an additional 60 days to do so earlier in this litigation so that a central issue may be resolved sooner rather than later does not amount to prejudice to Plaintiffs and would

be a better use of the Court's and the parties' time and resources.

Accordingly, Defendants respectfully move the Court for an order permitting the parties 60 days to conduct discovery, written and/or by deposition, limited to the issue of Plaintiffs' Article III standing. Defendants propose that the parties file a joint status report on the last day of the discovery period with a proposal for scheduling, including whether additional time is needed to complete discovery, and, if not, a proposed schedule for additional briefing on the motion for preliminary injunction.

Alternatively, if the Court is not inclined to permit limited jurisdictional discovery before moving forward with this matter, the Court should allow Defendants 14 days, until September 6, 2024, to assemble and produce the administrative record, and permit Defendants a reasonable amount of time after the record is available, at least until September 13, 2024, to respond to the motion for preliminary injunction. Defendants will need this reasonable amount of time to identify what should be included in, and to compile, an administrative record for the challenged process. Defendants anticipate that the administrative record will be voluminous and will take some amount of time to compile, certify, and produce. Defendants have begun to compile the administrative record and believe they can complete that process by September 6, 2024.[1] The parties and Court

---

[1] This deadline to produce an administrative record is itself a very accelerated timeline. Although this Court does not have a local rule governing when an administrative record should be produced, fellow district courts usually do not require the production of an administrative record until Defendants file an answer to a complaint. *See*, *e.g.*, D.D.C. L. Civ. R. 7(n)(1) (filing of administrative record after answer); D. Kansas L. Civ. R. 83.1(c)(1) (filing of administrative record with answer); D. Utah L. Civ. R. 7-4(a)(4–5) (filing of administrative record after ruling on motion to dismiss); N.D. Cal. Local Rule 16-5 (in cases seeking "District Court review on an administrative record, the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint").

will need to address the administrative record to address Plaintiffs' likelihood of success on the merits of their APA claims as part of resolving any motion for preliminary relief.

Courts, including in this Circuit, have allowed government agencies time to submit an administrative record before requiring a response to a motion for a preliminary injunction that is based on APA claims because the focal point for review of certain APA claims is the administrative record. *See, e.g.*, Order, ECF No. 19, *Louisiana v. Centers for Disease Control & Prevention*, 6:22-cv-885-RRS-CBW (Apr. 20, 2022) (setting deadline for response to motion for preliminary injunction at the same time as deadline to produce the record); Order, ECF No. 52 at 4, *Texas v. Biden*, No. 2:21-cv-67 (N.D. Tex. Jun. 7, 2021) (Kacsmaryk, J.) (setting deadline of 14 days after filing of a motion for preliminary injunction for filing of an administrative record because "focal point of judicial review should be the administrative record" and "the Court finds that the inclusion of the administrative record will provide a firm basis for the Court's analysis of Plaintiffs' APA claims); Order, ECF No. 37, *Texas v. Biden*, 2:21-cv-67 (N.D. Tex. May 21, 2021) (Kacsmaryk, J.) (setting deadline to respond to motion for preliminary injunction after deadline to produce the administrative record, and ordering administrative record to be produced 17 days after the filing of motion for preliminary injunction); *cf. Louisiana Crawfish Producers Ass'n-W. v. Mallard Basin, Inc.*, No. 10-CV-1085, 2014 WL 4207607, at *3 (W.D. La. Aug. 25, 2014) (explaining that "[u]nder the APA, '[t]he task of the reviewing court is to apply the appropriate standard of review, 5 U.S.C. § 706 to the agency decision based on the record the agency presents to the reviewing court....' The focal point for judicial review should be the administrative record...." (citations omitted)). And courts have held that a district court abuses its discretion in ruling on a motion for preliminary injunction without allowing time for the government to produce the administrative record. *See Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582–83 (D.C. Cir.

2001) (holding that "before assessing … probability of success on the merits" court "should have required the [agency] to file the administrative record," and vacating and remanding because district court improperly ruled on motion for preliminary injunction without a sufficient basis); *see also id.* (noting that Supreme Court's decision in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), also "arose on a motion for a preliminary injunction (to halt construction of a highway)" and ruled that the review must "be based on the full administrative record that was before the [agency]").

The Court should treat any motion for a temporary restraining order as a motion for preliminary injunction and resolve it on the schedule proposed above. If the Court is not inclined to delay briefing on a motion for temporary restraining order and intends to rule before any additional briefing on the motion for preliminary injunction and other issues set out above, Defendants request until August 28, 2024 to respond to the motion for temporary restraining order. At a minimum, before the Court issues any order on the briefing schedule or case management generally, Defendants respectfully request that the Court set a status conference with the parties to discuss these various issues prior to any briefing being due.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move the Court for an order permitting the parties 60 days to conduct discovery limited to ascertaining subject matter jurisdiction, specifically Plaintiffs' standing, and for the Court to stay Defendants' response to the motion for temporary restraining order and preliminary injunction to permit them time to complete that discovery, and to compile and produce the administrative record for the challenged policy.

14

Dated: August 23, 2024   Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Senior Counsel*

BRIAN C. WARD
KATIE J. SHINNERS
*Senior Litigation Counsel*

<u>By:/s/ *Erin T. Ryan*</u>
ERIN T. RYAN
JOSEPH A. DARROW
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: 202-532-5802
E-Mail: erin.t.ryan@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Defendants complied with the meet and confer requirements of Local Rule CV-7(h). On August 23, 2024, counsel for Defendants—Erin Ryan and Brian Ward—conferred with counsel for Plaintiffs—Ryan Walters, Gene Hamilton, Alan Hurst, Ryan Gianetti, and Kathleen Hunker—by videoconference about the relief requested in this motion. Plaintiffs oppose all the relief requested, except for Defendants' request that the Court set a status conference before Defendants are required to respond to Plaintiffs' motion for temporary restraining order and preliminary injunction. The parties were unable to reach an agreement on this motion because Plaintiffs are seeking emergency relief and request that the Court move quickly, so they do not consent to the schedule proposed by Defendants. Pursuant to Local Rule CV-7(i), discussions have conclusively ended at an impasse, leaving an open issue for the Court to decide.

/s/ *Erin T. Ryan*
ERIN T. RYAN
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, I electronically filed this motion with the Clerk of the Court for the United States District Court for the Eastern District of Texas by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/*Erin T. Ryan*
ERIN T. RYAN
U.S. Department of Justice