**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

STATE OF TEXAS, *et al.*,

        *Plaintiffs*,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

        *Defendants*.

No.: 6:24-cv-0306

## PROPOSED INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... 3

INTRODUCTION ..................................................................................................................... 4

BACKGROUND ....................................................................................................................... 5

    I.    THE KEEPING FAMILIES TOGETHER PAROLE PROCESS ................................... 5

    II.    PROPOSED INTERVENORS ...................................................................................... 6

SUMMARY OF ARGUMENT ............................................................................................... 10

ARGUMENT .......................................................................................................................... 11

    I.    Proposed Intervenors Are Entitled to Intervene as of Right; Alternatively, They Meet the Requirements for Permissive Intervention................................................................. 11

        A.   Proposed Intervenors Are Entitled to Intervene as of Right. ..................................... 11

          i.    Proposed Intervenors' Motion is Timely. ............................................................... 12

          ii.    Proposed Intervenors Possess Legally Protectable Interests. ................................. 13

          iii.   Proposed Intervenors' Ability to Protect Their Interests May Be Impaired by the Court's Disposition of this Action.............................................................................. 16

          iv.   Existing Parties Inadequately Represent Intervenors' Interests............................... 17

        B.   Proposed Intervenors Also Meet the Permissive Intervention Requirements.............. 20

CONCLUSION........................................................................................................................ 23

CERTIFICATE OF SERVICE ................................................................................................ 24

CERTIFICATE OF CONFERENCE....................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022)............................................ 18

*League of United Latin Am. Citizens v. Clements*, 884 F.2d 185 (5th Cir. 1989) ....................... 21

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984).......... 21

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ........................................................................... 12

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ..................................................... 11, 12, 17, 18

*Sierra Club v. Fed. Emergency Mgmt. Agency*, 07CV608, 2008 U.S. Dist. LEXIS 47405 (S.D. Tex. June 11, 2008)........................................................................................................ 17

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996) ................................................................. 16

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) .......................................................... 12

*Students for Fair Admission v. Univ. of Tex. at Austin*, 338 F.R.D. 364 (W.D. Tex. 2021) ........ 21

*Texas v. Biden*, No. 3:22-CV-00780-M, 2022 WL 22858891 (N.D. Tex. May 26, 2022)............. 4

*Texas v. United States*, No. 6:21-CV-3, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021)............ *passim*

*Texas v. United States*, No. 6:23-CV-7, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023) ....... *passim*

*Wal-Mart Stores v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562 (5th Cir. 2016)....... 11, 12, 14, 16

**OTHER AUTHORITIES**

8 C.F.R. § 274a.12(c)(11) ....................................................................................................... 6, 15

Federal Rule of Civil Procedure 24(a) ..................................................................................... *passim*

Federal Rule of Civil Procedure 24(b)................................................................................ 4, 11, 21

Implementation of Keeping Families Together, 89 Fed. Reg. 67459 (Aug. 20, 2024) ......... *passim*

**STATUTORY PROVISIONS**

8 U.S.C. § 1182(a)(6)(B) ............................................................................................................ 5

8 U.S.C. § 1182(a)(9)(A) ............................................................................................................ 5

8 U.S.C. § 1182(a)(9)(B)(i)(I)..................................................................................................... 5

8 U.S.C. § 1182(a)(9)(B)(i)(II) ................................................................................................... 5

8 U.S.C. § 1255(a) ...................................................................................................................... 5

## INTRODUCTION

Oscar Silva Perez, Natalie Taylor, Salvador Doe, Justin Doe,[1] Carmen M. Miranda Zayas, Ricardo Ocampo Hernandez, Jessika Ocampo Hernandez, Foday Turay, Jaxhiel Turay, Genaro Vicencio Palomino, and Cindy Siqueiros Maduena ("Proposed Individual Intervenors"), and the Coalition for Humane Immigrant Rights ("CHIRLA") ("Proposed Organizational Intervenor")  on behalf of its members (collectively, "Proposed Intervenors") seek to intervene in this litigation as beneficiaries of the "Keeping Families Together" Parole process (hereinafter "Keeping Families Together Parole" or "KFT Parole"). *See* Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459 (Aug. 20, 2024). They seek intervention under Rule 24 as of right or, alternatively, permissively. *See* Fed R. Civ. P. 24(a), (b). Consistent with Fifth Circuit precedent favoring intervention, courts in this Circuit previously granted permissive intervention to program beneficiaries under materially indistinguishable circumstances in *Texas v. United States*, No. 6:23-CV-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023) (challenging humanitarian parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV Parole")); *Texas v. Biden*, No. 3:22-CV-00780-M, 2022 WL 22858891 (N.D. Tex. May 26, 2022) (challenging a humanitarian parole process for Central American minors ("CAM")); and *Texas v. United States*, No. 6:21-CV-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021) (challenging the Biden Administration's 100-day deportation moratorium).

Proposed Intervenors have compelling interests they seek to protect through this litigation, as they are intended direct beneficiaries of KFT Parole. They have concrete, personalized interests in the outcome of this litigation, which seeks to terminate KFT Parole, thereby obstructing their

---

[1] A motion for leave of the Court for Salvador Doe and Justin Doe to proceed under pseudonyms is being filed concurrently.

access to its benefits, including family unity, employment authorization, and freedom from fear of removal. As an organization with a mission to protect family unity in immigrant communities, and whose members are intended beneficiaries of KFT Parole, Proposed Organizational Intervenor represents its members' strong interest in this litigation. Proposed Intervenors' interests are not adequately or fully represented in this litigation by the Defendants, whose interests are largely institutional in nature. *Texas v. United States*, 805 F.3d 653, 663 (5th Cir. 2015).

## BACKGROUND

### I.  THE KEEPING FAMILIES TOGETHER PAROLE PROCESS

Under current law, noncitizen spouses of U.S. citizens are eligible for a green card as an "immediate relative" of a citizen. However, this path to legal permanent residence, and later to U.S. citizenship, can be arduous. Individuals who entered the United States "without inspection" (i.e., if they entered between ports of entry or otherwise did not have prior approval to enter) cannot apply for a green card from within the United States—a process called "adjustment of status"— until they meet the independent requirement of being "inspected and admitted *or* paroled" by an immigration officer. 8 U.S.C. § 1255(a) (emphasis added). For these noncitizen spouses, the only available option has been to "consular process"—that is, to leave the United States, travel to a consulate abroad, and obtain a new immigrant visa that allows them to return home. Not only is the grant of the visa not guaranteed and can, even if granted, require months or even years of waiting for consular processing overseas, but departing the country will also often trigger a years-long bars on reentry that Congress imposed in 1996. *See, e.g.*, 8 U.S.C. § 1182(a)(6)(B) (*in absentia* removal order bar), (a)(9)(A) (prior orders of removal bar), (a)(9)(B)(i)(I)-(II) (unlawful presence bars). While certain noncitizens spouses may apply for a provisional waiver of the unlawful presence bars, eligibility is limited, approval is not guaranteed, and the processing backlog for provisional waiver applications currently exceeds three and a half years. Moreover,

those who receive the provisional waiver still must leave the country for an indefinite—and often prolonged—period to await consular processing. This leads to additional stress caused by the separation from family and, in some cases, the inability to work to support that family.

For the foregoing reasons, Defendants recently announced Keeping Families Together Parole, a new process for certain spouses and stepchildren of U.S. citizens through which qualifying individuals are considered on a case-by-case basis for parole for a period of up to three years. *See* KFT FRN, 89 Fed. Reg. at 67473. If granted parole, the noncitizen will be considered to have been "inspected and paroled" and will not need to leave the United States for consular processing. Under longstanding regulations, parolees then become eligible to apply for employment authorization via separate application and agency action. 8 C.F.R. § 274a.12(c)(11). The program offers stability and security for families who have been living in fear of separation.

The Department of Homeland Security ("DHS") announced KFT Parole on June 17, 2024, and published the Federal Register Notice on August 20, 2024. The application form, Form I-131F, became available for reference on August 16, 2024, and USCIS began accepting applications on August 19, 2024. On August 23, 2024, sixteen states led by Texas ("Plaintiffs") filed a complaint with this Court seeking to have KFT Parole enjoined and declared unlawful.

## II. PROPOSED INTERVENORS

Proposed Intervenors each seek to vindicate their compelling interests in the continuation of KFT Parole.

Oscar Silva Perez and Natalie Taylor, married and both twenty-three years old, are high school sweethearts and longtime Texas residents. Ex. 1, Declaration of Oscar Silva Perez ("Silva Decl.") ¶ 2; Ex. 2, Declaration of Natalie Taylor ("Taylor Decl.") ¶ 2. Oscar arrived in the United States from Mexico when he was an infant. Silva Decl. ¶ 3. The first person in his family to go to college, Oscar is currently pursuing a master's degree in accounting and wants to become a

Certified Public Accountant. *Id.* ¶ 6. However, his DACA and work authorization applications remain unapproved because of years-long court challenges to DACA, so he isn't sure he can get a job after school. *Id.* ¶¶ 5-6. Natalie, a U.S. citizen born and raised in Texas, works three jobs to support their family. Taylor Decl. ¶¶ 1-3. The couple find their career dreams on hold and their potential stifled. *Id.* ¶ 8; Silva Decl. ¶¶ 6, 11. They face constant fear that Oscar will be deported. Silva Decl. ¶¶ 11-12; Taylor Decl. ¶¶ 8-9. Oscar has applied for KFT Parole so they can finally develop their careers and plan for the future, as well as ensure that Oscar can remain with Natalie and his family in Texas in the only home he knows. Silva Decl. ¶¶ 19-20; Taylor Decl. ¶¶ 15-16.

Salvador Doe and Justin Doe are a married couple and members of the LGBTQ+ community living in Pennsylvania. Ex. 3, Declaration of Salvador Doe ("Salvador Doe Decl.") ¶¶ 2, 5-7; Ex. 4, Declaration of Justin Doe ("Justin Doe" Decl.) ¶¶ 2, 4, 6.  They have been together for almost sixteen years and married for almost seven. Salvador Doe Decl. ¶ 12. Salvador came to the United States from Mexico when he was twenty-two years old in search of a better life and to be closer to his family members. *Id.* ¶ 3. Over the years, he and Justin, a U.S. citizen, have created a life together and have developed a close-knit community. *Id.* ¶¶ 6-8, 10-11; Justin Doe Decl. ¶¶ 8-10. However, like a "dark cloud always looming over" them, Salvador's lack of immigration status prevents them from planning for their future and feeling secure. Justin Doe Decl. ¶¶ 11-12; Salvador Doe Decl. ¶ 12. Salvador has applied for KFT Parole because if he had to consular process in Mexico, or if he were deported there, he would be exposed to dangerous conditions, including homophobia and violence from organized crime. Salvador Doe Decl. ¶ 18. KFT Parole will also allow him to obtain employment authorization for the first time. *Id.* ¶ 19.

Carmen M. Miranda Zayas, a U.S. citizen, has been married to her husband Francisco, a national of Mexico, for over twenty years, and they have lived in Pennsylvania together for more

than three decades. Ex. 5, Declaration of Carmen M. Miranda Zayas ("Miranda Decl.") ¶¶ 1-3, 7-8. Carmen is a little person and has Multiple Sclerosis ("MS"), and Francisco is Carmen's sole support and caretaker for her daily needs. *Id.* ¶¶ 8, 11. Carmen's MS often gives her serious pain and makes it difficult for her to walk and maintain her balance, so she needs Francisco's help with daily tasks like cooking and grocery shopping. *Id.* ¶ 8. Francisco has also been integral in helping raise Carmen's two children and their grandchildren. *Id.* ¶¶ 5-6, 14. He has applied for KFT Parole, which would be crucial for the couple because any length of separation would cause Carmen significant hardship given her medical conditions. *Id.* ¶¶ 11-12, 13-14. KFT Parole would also allow them to maintain the life and marriage they have built over two decades, including allowing Francisco to continue to support their grandchildren as they grow up. *Id.* ¶¶ 7, 11-12, 14-15.

Jessika Ocampo Hernandez, a U.S. citizen, has been married to Ricardo Ocampo Hernandez for over ten years. Ex. 6, Declaration of Jessika Ocampo Hernandez ("J. Ocampo Decl.") ¶¶ 1-2. Originally from Mexico, Ricardo has lived in the U.S. since he was two years old. Ex. 7, Declaration of Ricardo Ocampo Hernandez ("R. Ocampo Decl.") ¶ 1. Together, they have built a life in Las Vegas, Nevada, that revolves around their two young children and Ricardo's large family, many of whom are U.S. citizens or Lawful Permanent Residents. *Id.* ¶ 2. Jessika and Ricardo met through church, and their faith continues to play a central role in their lives. J. Ocampo Decl. ¶ 3; R. Ocampo Decl. ¶ 5. Although Ricardo has had DACA since 2013, the precarious nature of this status has fostered a sense of instability, a concern that intensifies as their children grow and begin to understand that their father may, one day, be separated from them. R. Ocampo Decl. ¶¶ 4, 9, 13. Ricardo has applied for KFT Parole to eliminate the risk that he could become separated from his family indefinitely by consular processing. *Id.* ¶¶ 17-18. Indeed, Ricardo's mother missed the birth of their first child because she had to remain abroad for nearly a year as

she went through consular processing. J. Ocampo Decl. ¶ 9.

Foday Turay and Jaxhiel Turay are a married couple raising their one-year-old son in Philadelphia. Ex. 8, Declaration of Foday Turay ("F. Turay Decl.") ¶ 2; Ex. 9, Declaration of Jaxhiel Turay ("J. Turay Decl.") ¶ 2. Foday is a noncitizen from Sierra Leone whose family fled civil war when he was a young child. F. Turay Decl. ¶ 3. He is a DACA recipient and has lived in the U.S. for more than twenty years, and he serves as an Assistant District Attorney with the Philadelphia District Attorney's Office. *Id.* ¶¶ 2, 6, 8-9. Jaxhiel is a U.S. citizen and healthcare worker. J. Turay Decl. ¶¶ 1, 3. Their lives are centered on their Christian faith and their love for each other and their son. *Id.* ¶¶ 5-8; F. Turay Decl. ¶¶ 12-14. Foday has applied for KFT Parole to avoid the risk of prolonged separation from his family, which would cause their son to lose his father during his most formative years and jeopardize their ability to keep their house. F. Turay Decl. ¶ 19; J. Turay Decl. ¶ 11. KFT Parole may also allow them to finally travel together to meet Jaxhiel's family in the Dominican Republic and will enable Foday to pursue bigger goals of contributing to the U.S. as a federal prosecutor. F. Turay Decl. ¶¶ 14, 23-24.

High school sweethearts Genaro Vicencio and Cindy Siqueiros are a married couple in their mid-twenties living in Pennsylvania with their six-year-old son. Ex. 10, Declaration of Genaro Vicencio ("Vicencio Decl.") ¶ 1; Ex. 11, Declaration of Cindy Siqueiros ("Siqueiros Decl.") ¶¶ 1-2. Several years after Genaro and his mother arrived in the United States, his mother returned to Mexico for a visit and was murdered. Vicencio Decl. ¶ 4. Despite being a teenager in a new country without any parental support, Genaro graduated from high school and started a highly successful painting company. *Id.* ¶¶ 4, 6-7. Cindy, a U.S. citizen, works part-time and relies on Genaro's income and support to pay the bills and raise their son. Siqueiros Decl. ¶¶ 1, 7. Genaro applied for KFT Parole to prevent the financial and psychological harm to himself, Cindy, and

their son that Genaro's prolonged absence from the United States to consular process would cause. *Id.* ¶ 8; Vicencio Decl. ¶ 8. It will allow them to pursue their dreams of accessing financing to grow Genaro's business, traveling abroad as a family, and having more children. Siqueiros Decl. ¶ 9; Vicencio Decl. ¶ 11.

The Coalition for Humane Immigrant Rights ("CHIRLA") is a California nonprofit representing the interests of its members; its mission is to advance the human and civil rights of immigrants and refugees and ensure immigrant communities are fully integrated into society with full rights and access to resources. Ex. 12, Declaration of Angelica Salas ("CHIRLA Decl.") ¶ 2. The largest statewide immigrant rights organization in California, CHIRLA has approximately 50,000 active members. *Id.* ¶¶ 3-4. Much of its membership consists of mixed-status families that include both individuals with citizenship or lawful status and individuals without. *Id.* ¶ 4. To date, forty CHIRLA members and clients have applied for KFT Parole. *Id.* ¶ 7. For CHIRLA's members, KFT Parole presents an opportunity for an improved life, free of the risk of family separation— one that would be taken from them if Plaintiffs' challenge is successful. *Id.* ¶ 18.

## SUMMARY OF ARGUMENT

Proposed Intervenors are entitled to intervene as of right under Rule 24(a). Their motion is timely and seeks to protect numerous "concrete, personalized, and legally protectable" interests. *Texas v. U.S.*, 805 F.3d 653, 658 (5th Cir. 2015) (challenging the "Deferred Action for Parents of Americans and Lawful Permanent Residents" ("DAPA") program). Because this case will decide the fate of KFT Parole, from which they intend to benefit, it will necessarily impede their ability to protect their interests. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2015). Finally, Defendants' interests in defending the KFT process are distinct from Proposed Intervenors' interests. Defendants seek to defend their institutional interests in "strengthening the U.S. economy," "advancing diplomatic relationships and key foreign policy objectives of the United

States," "reducing strain on limited U.S. government resources," and "furthering national security, public safety, and border security objectives," 89 Fed. Reg. at 67465; *see also Texas*, 805 F.3d at 663 (finding that although the government and immigrant intervenors both sought to uphold DAPA, the government's institutional interests were distinct from immigrant intervenors' interests), while Proposed Intervenors seek to advance and defend their deeply held interests in the humanitarian and public benefits of the programs, including the ability for families to remain together, contribute fully to their communities and local economies, and be free of the fear that removal will upend the lives they have built here in the country they call home.

In the alternative, permissive intervention is warranted, as other courts in this Circuit recently found in three materially identical cases.

## ARGUMENT

### I.  Proposed Intervenors Are Entitled to Intervene as of Right; Alternatively, They cent

Proposed Intervenors meet the criteria for intervention under controlling precedent. *See Texas*, 805 F.3d at 655 (reversing denial of intervention to intended beneficiaries of immigration program). Rule 24 of the Federal Rules of Civil Procedure allows nonparties to intervene either as of right or permissively. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citation omitted). Intervention is permitted "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citation omitted). Proposed Intervenors satisfy Rule 24's requirements to intervene as of right and permissively.

### A.  Proposed Intervenors Are Entitled to Intervene as of Right.

Nonparties may intervene as of right where (1) the application is timely; (2) the proposed intervenors "have an interest relating to the property or transaction which is the subject of the

action"; (3) they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest"; and (4) their interests are "inadequately represented by the existing parties to the suit." *Wal-Mart Stores*, 834 F.3d at 565 (citations omitted); Fed. R. Civ. P. 24(a)(2). Proposed Intervenors satisfy each requirement.

### i.    Proposed Intervenors' Motion is Timely.

In determining whether an intervention motion is timely, courts consider four factors: (a) the length of time the would-be intervenor knew or should have known of their interest in the case; (b) the extent of prejudice to existing parties due to the proposed intervenor's failure to move to intervene sooner; (c) the extent of prejudice to proposed intervenors if the motion is denied; and (d) any unusual circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). Under these factors, Proposed Intervenors' motion is timely.

First, Proposed Intervenors filed this motion one business day after Plaintiffs filed their Complaint. The first factor thus clearly favors intervention. *See, e.g.*, *Ross v. Marshall*, 426 F.3d 745, 754-55 (5th Cir. 2005) (intervention motion filed several months after learning of interest was not tardy); *Texas*, 2021 WL 411441, at *2 (intervention motion filed six days after Texas filed complaint was found timely). Second, the existing parties are not prejudiced by this motion's timing. "[P]rejudice must be measured by the *delay* in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206 (emphasis added). Here, there has been no delay. *See Texas*, 2021 WL 411441, at *3 ("Given that the matter is in its infancy, the Proposed Intervenors' request will not impose timing issues, difficulties, or constraints . . . ."). Proposed Intervenors would be joining at the outset of the litigation and will continue to act diligently so as not to prejudice the existing parties. Third, denial of the motion could severely prejudice Proposed Intervenors, who have a direct stake in this case's outcome. This litigation could terminate KFT Parole, of which Proposed Individual

Intervenors are the intended beneficiaries. Without KFT Parole, Proposed Individual Intervenors lose the opportunity to obtain legal status for themselves or their spouses without risking prolonged family separation, request work authorization, and pursue their individual and family dreams without fear. *See generally* Exs. 1-11, Proposed Individual Intervenor Declarations. Among Proposed Organizational Intervenor's approximately 50,000 active members are individuals who, like Proposed Individual Intervenors, are intended beneficiaries of KFT Parole and whose ability to attain durable family unity will be determined by this litigation. *See generally* CHIRLA Decl. ¶ 4. If not permitted to intervene, Proposed Intervenors could lose *any* opportunity to defend their interests, significantly prejudicing them. Thus, this motion is timely.

### ii. Proposed Intervenors Possess Legally Protectable Interests.

As described above, Proposed Individual Intervenors are applicants for, and intended beneficiaries of, the challenged KFT Parole process. Through this process, Proposed Individual Intervenors seek to apply for parole, which, if granted, would enable them to request work authorization and, eventually, adjustment of status, without the hardships and risks that accompany consular processing—including the hardship of separating from their families in the U.S. as they travel abroad, and the risk that such separation could last for weeks, months, or even years. *See, e.g.,* R. Ocampo Decl. ¶ 14; F. Turay Decl. ¶¶ 18-19; Miranda Decl. ¶ 11. Proposed Organizational Intervenor's members and clients are intended KFT Parole beneficiaries. CHIRLA Decl. ¶ 7. Proposed Intervenors' legally protectable interests in this case satisfy the Rule 24 requirement. *See Texas*, 805 F.3d at 660.

To satisfy Rule 24(a), intervenors must show a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657-58 (citation omitted). "[A]n interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Id*. at 658. The intervenor must demonstrate "a stake in the matter that goes beyond a generalized preference

that the case come out a certain way." *Id.* at 657. Intervenors' interests need not give rise to Article III standing: "[A]n interest is sufficient if it is of the type that the law deems worthy of protection." *Wal-Mart Stores*, 834 F.3d at 566 (citation omitted).

Crucially, the Fifth Circuit has held that individuals who are "intended beneficiaries" of a program, like Proposed Individual Intervenors and Proposed Organizational Intervenor's members, necessarily have an interest sufficient to support intervention. *Texas*, 805 F.3d at 660. *Texas* held that immigrants eligible for a program that would have protected them from deportation and granted other benefits were "intended beneficiaries" of that program and therefore entitled to intervene. *Id.* "This is not a mere generalized interest in the implementation of [the program]; rather, the [intervenors] are the intended beneficiaries of the challenged federal policy." *Id.* The court found sufficient the intervenors' interest in applying to receive the program's benefits, even though their applications could be denied. *Id.* at 660-61.

Proposed Individual Intervenors have additional protectable interests in the outcome of this litigation identical to those contemplated and approved by the Fifth Circuit in *Texas v. U.S.* First, Proposed Individual Intervenors "have an interest in receiving [parole-in-place] under [KFT Parole] so that they may legally remain in the United States." *Texas*, 805 F.3d at 660. "Although the [Proposed Individual Intervenors] do not have a legal entitlement to [KFT Parole], their interest in avoiding deportation is a concrete, personalized interest that is legally protected by the Due Process Clause of the Fifth Amendment." *Id.*; *see also* Salvador Doe Decl. ¶ 18 (explaining KFT parole would alleviate Salvador's concern of being deported to Mexico, where he would likely be subjected to the severe threat of crime and targeted as an LGBTQ+ person); F. Turay Decl. ¶ 19 (detailing the harm to Foday's family if, as the primary breadwinner, he were deported); Miranda Decl. ¶ 11 (describing the danger posed to Francisco if he were to return to Mexico, where his

family members have been murdered or kidnapped).

Second, "Proposed Individual Intervenors have an interest in the employment opportunities that would be available to them if they are granted [parole] and employment authorization," *Texas*, 805 F.3d at 660, which they would be eligible to request upon receiving parole. *See* 8 C.F.R. § 274a.12(c)(11); *see also* Salvador Doe Decl. ¶ 19 ("I have always been working while here and contributing to the economy but never had the security that comes with work authorization."); Silva Decl. ¶¶ 6, 11, 19 (describing the opportunities that a work permit would give Oscar's family);  Miranda Decl. ¶ 15 ("[KFT Parole] would allow Francisco to obtain work authorization and pursue his dreams of owning his own landscaping company.").

And third, many of the Proposed Individual Intervenors are parents, who "have an interest in directing the upbringing of their United States-citizen children. This interest, which would be adversely affected if the [Proposed Individual Intervenors] are deported, is a legally protected liberty interest under the Due Process Clause." *Texas*, 805 F.3d at 660. Foday Turay, Genaro Vicencio, and Ricardo Ocampo are all fathers to children under the age of ten from whom they would be separated if they were deported or required to consular process. *See, e.g.*, Vicencio Decl. ¶¶ 10-11 (describing how "emotionally taxing" it would be for "[Genaro's] young son to be without his father for an undetermined amount of time").

Like Proposed Individual Intervenors, the members of Proposed Organizational Intervenor have a strong interest in the continuation of KFT Parole. If Plaintiffs' challenge is successful, CHIRLA's members will lose their most viable opportunity for permanent and durable family unity. CHIRLA Decl. ¶ 18 ("For many, this process is the best—if not the only—pathway to work authorization, and sometimes to lawful permanent residence."). Without KFT Parole, these families face "uncertainty and pain, including years of potential separation," harming "elderly,

minor and other dependents by depriving them of caregiving while exacting economic hardship on families, employers, and the community." *Id.* Such interests alone are sufficient to support intervention. Indeed, this Circuit has granted intervention as of right to associations on behalf of their members. *See, e.g.*, *Wal-Mart*, 834 F.3d 562 (granting intervention as of right to association because its members are the beneficiaries of the challenged regulatory system); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (granting intervention as of right where a few, but not all, of a federation's members had an interest in the litigation). Moreover, "the interest requirement may be judged by a more lenient standard" where, like here, "the case involves a public interest question or is brought by a public interest group." *Brumfield*, 749 F.3d at 344.

Together, Proposed Intervenors have an array of interests that are "concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658. Such interests are unequivocally ones the "law deems worthy of protection," satisfying this intervention requirement. *Wal-Mart Stores*, 834 F.3d at 566 (citation omitted).

### iii.   Proposed Intervenors' Ability to Protect Their Interests May Be Impaired by the Court's Disposition of this Action.

Proposed Intervenors must also "demonstrate that disposition of that action may, as a practical matter, impair or impede [their] ability to protect [their] interest." *Brumfield*, 749 F.3d at 344. The impairment must be "practical," not merely "theoretical." *Id.*

The outcome of this case could dramatically impede Proposed Intervenors' interests. If Plaintiffs prevail, Proposed Individual Intervenors could lose their opportunities to benefit from the KFT Parole process before their individual applications are even considered, and thus could be altogether denied the process's benefits. *See* Ex. 1-11, Proposed Individual Intervenor Declarations (all noncitizen Proposed Individual Intervenors have submitted their KFT Parole applications as of filing of this motion). Similarly, Proposed Organizational Intervenor also surpasses the

"minimal" burden of showing its ability to protect its members' interests may be impaired, as it has members who have pending KFT Parole applications, or who intend to apply but have not done so yet. CHIRLA Decl. ¶¶ 13-17; *Brumfield*, 749 F.3d at 344. Thus, the outcome of this case will impair Proposed Intervenors' ability to protect their interests.

### iv.    Existing Parties Inadequately Represent Intervenors' Interests.

Proposed Intervenors' deeply held interests diverge from the broader interests that Defendants pursue. While Defendants are responsible for establishing and implementing the KFT Parole process, they do not represent the interests of people and community organizations directly and personally affected by it. Defendants are not concerned about the outcome of this litigation because it may jeopardize their own familial integrity, well-being, or their ability to earn a living, unlike Proposed Intervenors. Without the chance to defend their personal and community interests in this litigation, the voices and experiences of Proposed Intervenors will be left out altogether.

Intervention is warranted when the proposed intervenors "occup[y] a different position and [have] different interests" than the existing defendants. *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. 07-0608, 2008 U.S. Dist. LEXIS 47405, at *18-19 (S.D. Tex. June 11, 2008). Proposed Intervenors have the burden of demonstrating inadequate representation, but that burden is "minimal." *Sierra Club*, 18 F.3d at 1207. "[T]he Rule is satisfied if the applicant shows that the representation of [their] interest *may be* inadequate." *Texas*, 805 F.3d at 661 (cleaned up) (emphasis added). A presumption of adequate representation applies in two situations: First, where proposed intervenors have the same ultimate objective as a party, the proposed intervenors must show "adversity of interest, collusion, or nonfeasance on the part of the existing party" to overcome a presumption that their interests are adequately represented. *Id.* at 661-62 (cleaned up). Second, when the existing party is a governmental body charged by law with representing the interest of the intervenor, the intervenor must show that their respective interests in fact differ and that the

government will not adequately represent the intervenors' interests. *Id.* Where there is a "lack of unity in all objectives," it is sufficient for proposed intervenors to show that they plan to advance "real and legitimate additional or contrary arguments." *Id.* at 662 (cleaned up).

Here, Proposed Intervenors are unaware of any authority charging the federal government with representing their specific interests. Instead, Defendants represent the interests of the agencies—which have the authority to grant *or deny* Proposed Intervenors' applications—whereas Proposed Intervenors' interests are in the benefits of the KFT Parole process and the life-changing opportunities those benefits present. Silva Decl. ¶ 19 (describing that KFT Parole would be "life-changing," opening opportunities that Oscar and Natalie have been "afraid to hope for or unable to work toward."); R. Ocampo Decl. ¶¶ 18-21 (KFT Parole would allow Ricardo to own a house and stop "liv[ing] in increments").

Even assuming a presumption of adequate representation applies, controlling precedent demonstrates that Proposed Intervenors overcome it. *See, e.g.*, *Texas*, 805 F.3d at 663 (finding that although both government and intervenors sought to uphold challenged immigration program, the government had an interest in preserving expansive executive authority, enforcing immigration laws, and maintaining relationships with the plaintiff states, while intervening program beneficiaries sought to avoid removal and obtain work authorization); *Sierra Club*, 18 F.3d at 1208 (holding that the government's representation of the "broad public interest" did not adequately represent intervenors' specific economic concerns); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308-09 (5th Cir. 2022) (finding that the intervenors' private interests are "less broad" than and different from the government's public interests).

Recently, the Southern District of Texas held the federal government did not adequately represent the interests of intended beneficiaries of new parole processes for nationals of certain

countries who sought to intervene in a case brought by Texas challenging the processes:

> The Proposed Intervenors have demonstrated that they are concerned exclusively with the welfare of individuals directly benefiting from the parole program, unlike the Federal Government, which is required to balance its advocacy for individuals entering the United States through the parole program with its duty to protect American citizens.

*Texas*, 2023 WL 3025080, at *4 (CHNV Parole); *see also Texas*, 2021 WL 411441, at *4 (deportation moratorium) (finding the federal government did not adequately represent the interests of two immigrants' rights groups in a case challenging federal immigration policy). The court thus held the proposed intervenors "met their minimal burden to show their interests are sufficiently adverse to the Federal Government's in a way that is germane to the case—despite . . . the[ir] common goal of opposing the Plaintiff States' lawsuit." *Texas*, 2023 WL 3025080, at *4*.

These cases dictate the result here. Even if Defendants' and Proposed Intervenors' objectives overlap, there is sufficient "adversity of interest[s]" and "lack of unity in all objectives" to overcome the presumption that Defendants adequately represent Proposed Intervenors' interests. *Texas*, 805 F.3d at 661-62. Defendants support KFT Parole because it "will achieve the significant public benefit of promoting the unity and stability of families, increasing the economic prosperity of American communities, strengthening diplomatic relationships with partner countries in the region, reducing strain on limited U.S. government resources, and furthering national security, public safety, and border security objectives." KFT FRN at 67459. Defendants also explain that KFT Parole is one of several steps that DHS has taken "to promote accessibility and increase efficiency in the immigration system." *Id.* at 67460. Moreover, Defendants stress that "[n]othing in the [Federal Register Notice] or the implementation of this parole in place process is intended to limit DHS's authority to take enforcement actions in accordance with the INA and consistent with governing policies and practices." *Id.* at 67465. Defendants further caution that DHS "may initiate and pursue enforcement action pursuant to its enforcement priorities under its

19

existing authorities" notwithstanding the availability of KFT Parole. *Id*. Defendants also assert the right to terminate at any time any parole granted under the process. KFT FRN at 67463.

Proposed Intervenors seek to defend KFT Parole because of the life-changing opportunities it could make available to them and to CHIRLA's members—opportunities to realize family unity, maintain safety and stability in the United States, request employment authorization, and build their families and futures without fear that removal will tear it all away. CHIRLA Decl. ¶ 7 (explaining that "[c]ommunities as a whole benefit when its members gain the security and opportunity that obtaining lawful permanent status provides."); *see* Salvador Doe Decl. ¶¶ 17-20; F. Turay Decl. ¶¶ 23-25 ("I would never have to put my son's future in the U.S. at risk again."). In short, Proposed Intervenors hope to maintain KFT Parole so that they and other prospective parolees may realize the direct benefits of KFT Parole, and *not* for purposes of "strengthening the U.S. economy," "advancing . . . key foreign policy objectives," "reducing strain on limited U.S. government resources," and "furthering national security" goals. KFT FRN at 67465.

Moreover, as in the two *Texas* cases discussed *supra*, Defendants' interests in preventing Plaintiffs from impinging on the federal government's authority to regulate immigration and "promot[ing] accessibility and increas[ing] efficiency in the immigration system," KFT FRN at 67460, differ from Proposed Intervenors' interests in securing and defending for themselves, their spouses, their families, their communities, and their members the humanitarian and public benefits of the KFT Parole process. Proposed Intervenors' and Defendants' variant interests and the "lack of unity in all objectives, combined with real and legitimate additional or contrary arguments," suffices to rebut any presumptions of adequate representation. *Texas*, 805 F.3d at 662.

## B. Proposed Intervenors Also Meet the Permissive Intervention Requirements

On a timely motion, courts may permit intervention where the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact" and

intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *accord League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989) [hereinafter "LULAC"]. In determining whether to permit intervention, courts should consider other factors, including adequate representation by other parties and whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (citation omitted); *accord LULAC*, 884 F.2d at 189.

Proposed Intervenors satisfy these standards. As stated above, the motion is timely. Proposed Intervenors also have a defense that shares a common question of law or fact with this litigation: they seek to defend against Plaintiffs' challenge to the lawfulness of KFT Parole. And Proposed Intervenors' arguments arise from the same set of facts as the existing parties' claims: Defendants' implementation of KFT Parole. *Texas*, 2023 WL 3025080, at *3 (finding proposed intervenor defendants articulated a common question of law and fact where "the Proposed Intervenors' defenses, the Federal Government's defenses, and the Plaintiff States' claims arise from the same set of facts and considerations: DHS's implementation of the new parole program"). Thus, Proposed Intervenors meet the first two requirements of permissive intervention.

Moreover, intervention will not unduly delay or prejudice the existing parties' rights for the same reasons Proposed Intervenors' motion is timely. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) ("The [undue delay and prejudice] analysis . . . is essentially the same as the timeliness analysis."); *Texas*, 2023 WL 3025080, at *3 (finding no undue delay or prejudice where litigation was still in early stages and where proposed intervenor defendants would contribute toward "obtaining a more fulsome record and briefing," such that intervention would be "in the interest of justice and pose[] no harm").

21

Finally, Proposed Intervenors will significantly contribute to the full development of relevant facts at issue, including the need for, impact of, and resulting public benefits of KFT Parole—including how it benefits the Plaintiffs. *Texas*, 2023 WL 3025080, at *4 ("As individuals directly participating in the parole program, the Court finds that the Proposed Intervenors would provide important perspectives, substantial expertise, and experience that will aid the Court in its consideration of the issues."). Proposed Organizational Intervenor will similarly "provide an important perspective and substantial expertise and experience" as it "bring[s] a wealth of experience in observing the direct impact of immigration regulations on individuals as opposed to political entities," since its "members and clients *are* the individuals subject" to the challenged policy. *Texas*, 2021 WL 411441, at *4 (deportation moratorium) (granting intervention of membership and legal services organizations (emphasis in original)). CHIRLA has over a decade of institutional experience providing legal services to tens of thousands of immigrants, including adjustment of status and consular processing, prior parole programs, and now KFT Parole. CHIRLA Decl. ¶ 5. CHIRLA's deep familiarity with the operation and impacts of the immigration processes at issue here is precisely the unique expertise that would aid the Court in developing the factual record.

In the recent *Texas* challenge to CHNV Parole*,* the court granted permissive intervention where: (1) the motion, filed early in the case months before the trial date, was timely; (2) proposed intervenors' defense of the challenged parole program shared questions of law and fact with the main action; (3) there was no undue prejudice or delay where the matter was still in the early stages of litigation and intervention would not disrupt the extant briefing schedule; and (4) proposed intervenors' interests in the welfare of directly impacted individuals were not adequately represented by the federal government defendants who, despite sharing a goal of maintaining the

parole program, balances that with its interest in its immigration enforcement measures. *Texas*, 2023 WL 3025080 at *2-4. The relevant factors in this case are materially indistinguishable. *See also Texas*, 2021 WL 411441 at *2-4 (another materially similar grant of permissive intervention).

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention.[2]

---

[2] Although an Answer is premature at this early stage, Rule 24(c) requires the filing of a "pleading" when moving to intervene, and therefore, out of an abundance of caution, Proposed Intervenor Defendants are including a proposed Answer as an exhibit to this motion. *See* Exhibit 13, Proposed Answer of Proposed Intervenor Defendants. Proposed Intervenors respectfully request leave to file a motion to dismiss and, if necessary thereafter, to amend their Answer as appropriate.

Dated: August 26, 2024

Respectfully submitted,

*/s/ Esther H. Sung*

**Paige Austin\***
New York Bar No. 5246954
paige.austin@maketheroadny.org

**Harold A. Solis\***
New York Bar No. 5122726
Harold.Solis@maketheroadny.org

MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169

*\* pro hac vice forthcoming*

**Esther H. Sung\* (Lead Attorney)**
California Bar No. 255962
esther.sung@justiceactioncenter.org

**Karen C. Tumlin\***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Hillary Li\***
Georgia Bar No. 898375
hillary.li@justiceactioncenter.org

**Laura Flores-Perilla\***
California Bar No. 355645
laura.flores-perilla@justiceactioncenter.org

**Brandon Galli-Graves\***
Texas Bar No. 24132050
brandon.galli-graves@justiceactioncenter.org

**Vanessa Rivas-Bernardy\***
California Bar No. 341464
vanessa.rivas-bernardy@justiceactioncenter.org

JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

*Counsel for Proposed Intervenor Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2024, I electronically filed this motion with the Clerk of

the Court for the United States District Court for the Eastern District of Texas by using the CM/ECF

system. Counsel in this case are registered CM/ECF users and service will be accomplished by the

CM/ECF system.

*/s/ Esther H. Sung*
Esther H. Sung

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Proposed Intervenors have complied with the meet and confer requirements of Local Rule CV-7(h). On August 24, 2024, counsel for Proposed Intervenors—Karen Tumlin—conferred with counsel for Defendants—Brian Ward—by telephone about the relief requested in this motion. Defendants take no position. On August 25, 2024, counsel for Proposed Intervenors—Karen Tumlin—conferred with counsel for Plaintiffs—Ryan Walters—by telephone about the relief requested in this motion. Plaintiffs oppose Proposed Organizational and Individual Intervenors because they believe intervention would complicate the case and that this is a case that requires speedy relief. Pursuant to Local Rule CV-7(i), discussions have conclusively ended at an impasse, leaving an open issue for the Court to decide.

*/s/ Esther H. Sung*
Esther H. Sung