**Exhibit 2:** Declaration of Natalie Taylor

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | No.: 6:24-cv-0306 |

**DECLARATION OF NATALIE ANN TAYLOR**
**(pursuant to 28 U.S.C. § 1746)**

## DECLARATION OF NATALIE ANN TAYLOR

I, Natalie Ann Taylor, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen. I was born in Dallas, Texas in 2000.

2. I currently live in Denton, Texas with my spouse, Oscar Martin Silva Perez. I have lived in Texas my whole life.

3. I currently teach ninth grade biology. I graduated from the University of North Texas in 2022 with a bachelor's degree in biology and minors in chemistry and secondary education. I also work as a tutor after school and on the weekends during the school year, and at a local water park during the summer, to provide more financial support for our family.

4. I met Oscar in 2016, when we were 15 years old and freshmen in high school. Oscar is a national of Mexico who has been living the U.S. since 2000, and it was around the time when we met that he was realizing what it meant for him to be undocumented in the U.S. In 2017, he was preparing to apply for Deferred Action for Childhood Arrivals ("DACA") when the federal government stopped the program. Since then, he still has not been given the opportunity to have his applications considered. Therefore, I have known since we met that Oscar is undocumented. While at first, since I was only 15, I did not fully grasp what it meant for him or would mean for us in the future, Oscar's immigration status has always been something that I have accepted and understood about him.

5. After being friends for a couple years, Oscar and I started dating in 2018, before our senior year of high school. We went to Six Flags Over Texas for our first date, where we ate funnel cake and talked for hours. We finished high school, went to our senior prom together and celebrated graduation together, and then we both chose to go to the University of North Texas ("UNT"). In 2019, we moved to Denton together. In college, I

3

was involved in Her Campus, an all-female organization aimed at women's empowerment. I helped plan social events around campus and philanthropy efforts, and I wrote articles for their website.

6. On February 12, 2022, Oscar and I got married at the courthouse in Garland, Texas. Only family and a few close friends celebrated with us that day. We are currently in the middle of planning to have a bigger wedding in May 2025.

7. Oscar and I have now been in a relationship for six years and married for two and a half. We decided to merge our lives when we were 17, and we now enjoy our life as husband and wife in Denton. We have good friends here that we love socializing with, and we both have family close by that we visit often. I like to see my mom, grandparents, and other family members as much as we can, in addition to visiting Oscar's parents and his siblings.

8. Although we have a strong marriage and community in Denton, Oscar and I live with constant uncertainty and fear about our future because of Oscar's lack of immigration status. We feel like we can only plan as far as six or seven months ahead at any one time, given the continual changes in the status of the DACA program, the unpredictable future of immigration policy, and ongoing federal litigation challenging immigration programs that may directly impact Oscar's options for finding work or remaining in the U.S. in the future. It has made it very difficult to plan our lives, including our careers. Oscar is working on his master's degree in accounting at UNT, but he currently can't get a job after he finishes school. I am the sole breadwinner in our family, which can put financial pressure on me and our relationship. Working extra jobs outside of teaching is exhausting, and being a single-income household is not sustainable for us. I also want to

go back to school to get a graduate degree in science, so I can pursue a career in genetics or biochemistry, but that dream is on hold for now. Oscar has big dreams as well of becoming an accountant and continuing to grow his passion for math and finance. It makes me sad to see Oscar lose out on opportunities because of his immigration status, since I know he has so much potential. Long-term, we also want to have children, but we can't plan for that either until Oscar's status in the U.S. is more certain.

9. There are also daily challenges that we experience. I live with constant fear that any day Oscar could get detained and face deportation. If I text him and don't get a response for a while, for example, I fear the worst. When we travel around the U.S. together, we also have to be cautious and aware of that risk. We also can't travel internationally together, which limits our ability to visit Oscar's birth country and meet his family there, and to eventually see the world together. Despite these challenges, I try my best to remain optimistic, particularly as we have a lot of anxiety about our situation. Oscar and our marriage are the most important things to me, and I know that together we can figure out a path forward toward a bright future. We have already been through so much together over the years, and I have learned to look on the bright side whenever I can. These days, I rarely feel mad or frustrated about how things are, because I know our love is stronger than any obstacle we face.

10. Based on consulting with an immigration attorney, Oscar and I are aware that the only barrier for him to get a green card is the fact that he entered without inspection when he came to the U.S. as an infant. I have already filed an I-130, Petition for Alien Relative, for Oscar that was approved in January 2024, and I will also support him in later applying for adjustment of status. However, before the new process for parole-in-place ("Keeping

Families Together Parole") was announced, the only way that Oscar could meet the requirement for adjustment of status of being "inspected and admitted" or "inspected and paroled" was to leave the United States and seek an immigrant visa through consular processing abroad. To do that without triggering the ten-year reentry bar in current U.S. immigration law, he would need to obtain an I-601A Provisional Unlawful Presence Waiver. We were recently working together to prepare the documents and information needed to apply for an I-601A waiver, but we were concerned about how burdensome and risky the process would be. If after the more than 40-month backlog in application processing Oscar is granted a waiver, he could still be stranded abroad for months or even years if he were to depart the U.S. for consular processing.

11. If Oscar and I were separated because he was deported or forced to leave the country to do consular processing, it would turn our lives upside down. It would worsen the uncertainty we already have about our futures and cause us even more stress. We would be forced into survival mode, setting all our plans, education, and community involvement aside to think only about how to survive each day without each other. Additionally, my father passed away while I was in high school, which was difficult and painful to process. The idea of being separated from another vitally important person in my life triggers severe anxiety in me. I cannot imagine life without Oscar.

12. The Keeping Families Together Parole process is therefore the best available option for Oscar and for our family, because it will allow Oscar to stay in the U.S. and continue building our lives and following our dreams here. We can stay together, and we can finally start taking steps to plan for the long term, while continuing to give back to our community. The day that we heard that the process was being implemented by the

government, we were overjoyed. As I listened to President Biden and First Lady Dr. Jill Biden make the announcement and express the importance of keeping families like ours together, I started tearing up. I felt emotional hearing them share their support for immigrants who come to the U.S., fall in love, and want to build a life here. I felt like they were speaking directly to us.

13. Upon hearing about the announcement, Oscar immediately began preparing to be able to apply for Keeping Families Together Parole the moment applications are accepted. I supported him during the process, including helping call schools he previously attended to obtain records, and visiting our high school together to get his transcripts.

14. On August 19, 2024, Oscar submitted to United States Citizenship and Immigration Services ("USCIS") a Form I-131F, Application for Parole in Place for Certain Noncitizen Spouses and Stepchildren of U.S. Citizens, so he can be considered for Keeping Families Together Parole. The form required information about Oscar's immigration history and any criminal history, and about our marriage. Oscar also submitted documentation showing his eligibility for parole.

15. Receiving Keeping Families Together Parole would be transformative for Oscar and me. It would allow us the freedom to make decisions and change our life to follow our passions. Oscar could get a work permit and find a job, which would make it possible for me to go back to school to get an advanced degree to pursue a career in science. We would also want to continue giving back to our community by advocating for immigrant rights and supporting undocumented students. We dream of being able to establish educational scholarships for immigrant youth, so that other students can benefit from schooling like Oscar did.

16. Keeping Families Together Parole would give us long-term stability and security in the U.S. and give me a profound sense of relief that Oscar won't be taken away. If Oscar is granted parole under the program, I would feel joy like never before. So many fears that we carry with us on the daily would be gone. We would feel like we'd won the lottery.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed in Denton, Texas on August __19__, 2024.

_Natalie Ann Taylor_
_____
Natalie Ann Taylor