**Exhibit 4:** Declaration of Justin Doe

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | No.: 6:24-cv-0306 |

**DECLARATION OF JUSTIN DOE**
**(pursuant to 28 U.S.C. § 1746)**

## DECLARATION OF JUSTIN DOE

I, Justin Doe, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen. I was born in Reading, Pennsylvania in 1977.

2. I currently live in Reading, Pennsylvania with my husband, Salvador, an immigrant from Mexico who has been living in the United States since 2004. I have lived in Reading for roughly the last twenty years.

3. I currently work at Rolex Watch USA. I have been working for the Rolex company for 17 and a half years. I received my associate's degree in Specialized Technology in 1997. I also went to watch-making school and graduated from there in 2005.

4. In 2008, I met my husband, Salvador. I was volunteering for a Pride event at a local gay bar when I saw Salvador for the first time. Since I was busy volunteering, I wasn't expecting to meet anyone that night, but there he was, just drinking a beer by himself and wearing a baseball cap. Although he was quiet, we instantly connected. We have been together ever since that night.

5. Over the years, our lives merged—Salvador has become close with my friends, and I have grown close to his family. In 2014, we took a big step and bought our first home together here in Reading. I learned that Salvador was undocumented right at the beginning of our relationship, but I didn't care about that at all. I knew that once things became more serious, there would probably be difficulties we would need to overcome because of his immigration status, but this did not change how I felt about Salvador. You cannot help who you fall in love with.

6. In March of 2017, Salvador and I got married in Reading. We had an intimate wedding with only six people at a Victorian mansion in the area that has since turned into a bed and breakfast. At that point in our lives, we knew we loved each other, and we were

committed to one another, so it just felt like it was the right time to take this step in our relationship.

7. Salvador and I do not have children together, but Salvador is part of a very large family, with many siblings, nieces, and nephews, so we are part of a large and close family.

8. Salvador and I have a beautiful Victorian-style home, and our life consists of a strong community filled with family, neighbors, and friends. We enjoy spending time together in our home. We also love to entertain as a couple when we have friends and family come over to the house.

9. Salvador and I live in a great community here in Reading with strong community ties. Our community holds many public events and gatherings in the park, community tours of the public garden, LGBTQ+ Pride-related events, and other events for families and the entire neighborhood. We love to attend these events and connect with our neighbors.

10. My husband and I are very involved and take pride in our community as one that promotes architectural integrity, unity, and diversity. I am part of many boards and committees that oversee different aspects of the neighborhoods' buildings and important sites. Salvador is a pillar in the community and volunteers regularly.

11. After being together for almost sixteen years and married for over seven years, I feel very lucky to have Salvador as my husband. We have a great life together. But knowing that I could be separated from him at any moment because he is undocumented feels like a dark cloud always looming over us. It would be a nightmare if Salvador were not allowed to remain here in the United States, and I would be devastated if that ever happened. As a gay man, based on things that I have heard from Salvador's friends and family who are still in Mexico and living in Salvador's hometown, I also fear for Salvador's safety if he

were removed from the United States or forced to remain there due to delays in consular processing. In the area where he is from, members of the LGBTQ+ community are often subjected to discrimination and persecution, and there is high crime due to the presence of drug cartels in the area.

12. Apart from the life we've built together in the United States, Salvador and I would also love to travel abroad one day. We have decided that we would love to go to France first; we even started learning French together. However, we cannot travel as a couple until we can resolve Salvador's immigration status.

13. When we heard about the new parole-in-place process ("Keeping Families Together Parole"), I was excited and hopeful about what this would mean for our lives. Ever since the Keeping Families Together Parole process was announced in June and we discovered that Salvador's case would likely qualify, Salvador and I have been in contact with his immigration attorney and working to gather all of the necessary documents required for the application. We met with the immigration attorney on August 18—the day before the program was officially open and a day before we submitted the form—to prepare for the filing and ensure we have collected all supporting documents and evidence.

14. On August 19, we submitted the Form I-131F, Application for Parole in Place for Certain Noncitizens Spouses and Stepchildren of U.S. Citizens, to the United States Citizenship and Immigration Services ("USCIS") so Salvador can be considered for Keeping Families Together Parole. I helped support Salvador in the filing of this form. The form required information about Salvador's immigration history and any criminal history, and information about our marriage. Salvador also submitted documentation showing his eligibility for this parole process.

15. I also previously filed an I-130 petition for Salvador, which has been approved. I fully intend to support Salvador in applying for adjustment of status later on so he can begin the process of one day hopefully becoming a U.S. citizen.

16. For most of my life, I never thought I would ever get married or find someone like Salvador to share my life with. I am living my dream. If Salvador were to be granted parole through the Keeping Families Together Parole process and allowed to stay in the United States as he goes through the adjustment of status process, it would mean everything to us and be a huge weight off my shoulders. It would allow me to continue living my dream with Salvador and sharing the life and community we have built together.

17. Like my husband, I decided to join this intervention because Keeping Families Together Parole is a life-changing opportunity for my husband and our family that we want to help defend. However, I still fear that because I have shared personal details about myself and my husband in this declaration, including details about our sexuality and relationship, using my real name in this intervention, which will be public on a national scale, could put us and our extended family at risk of being targeted or harassed because of our sexuality and because my husband is undocumented. Also, both my husband and I are identified by our real names in online public sources, so if we were to use our real names in this litigation, it would be easy for someone who is anti-LGBTQ+ and anti-immigrant to find out who we are and in what specific area we live.

18. For this reason, I respectfully ask the court to allow me to proceed as a defendant intervenor in this lawsuit under a pseudonym in order to protect myself and my family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Reading, Pennsylvania on August 25, 2024.

Justin Doe