**Exhibit 5:** Declaration of Carmen M. Miranda Zayas

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

STATE OF TEXAS, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    *Defendants*.

No.: 6:24-cv-0306

**DECLARATION OF CARMEN M. MIRANDA ZAYAS**
**(pursuant to 28 U.S.C. § 1746)**

## DECLARATION OF CARMEN M. MIRANDA ZAYAS

I, Carmen M. Miranda Zayas, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen. I was born in Ponce, Puerto Rico in 1968. I am 56 years old.

2. I moved to Pennsylvania when I was five years old, and I currently live in Reading, Pennsylvania with my spouse, Francisco Cortes Sanchez. We have lived together in Reading for more than 30 years. We have lived in the same house for about 25 years, and in 2019, we were able to buy it. We have two dogs, a cat, and eleven birds.

3. Francisco is 53 years old and a national of Mexico. He was born in 1970 in a small town near Yuriria, Mexico in the state of Guanajuato. He came to the United States from Mexico as a teenager in 1987 to find stability and economic opportunity so that he could support his family. His parents, who are farmers, were very poor and had 10 children, including Francisco, to feed. They often did not have enough food or money to provide for everyone, especially during years of drought. When Francisco was 11 or 12 years old, he started working on the farm, helping raise crops and livestock. Then, when he got older, he took it upon himself to go to the U.S. to find work here so he could send money back to his family. His first job in the U.S. was picking mushrooms on a farm in Pennsylvania. Francisco has now resided continuously in the U.S. for more than three decades. He has not been admitted or paroled into the U.S.

4. Francisco currently works in landscaping, which he has done for over 20 years. I currently do not work. Previously, I worked for United Community Services for more than 20 years. I supported people who had been laid off and needed to navigate social services, and I was a coordinator for our local food pantry. I stopped working in 2016 to help take care of my grandson who had recently been born and because my health was starting to decline. I currently receive Social Security benefits, but they are not enough to

3

cover all our costs. I depend on Francisco's income to provide for many of our costs, including utility bills, supplies and medical care for our pets, home repairs and maintenance, and daily needs like food, toiletries, and more.

5. I have two children, who are both U.S. citizens and were born before Francisco and I met. My son is 39 years old and lives in Arizona. My daughter is 36 years old and lives in Pennsylvania, close to Reading. She has two children, who are 16 years old and 8 years old. Francisco has been like a father to my children for most of their lives, and he sees our grandchildren as his own as well. We are grateful to have family nearby, as family is very important to both Francisco and me. My daughter and grandchildren frequently come to visit us, which brings us a lot of joy. Francisco loves bringing them to the park to play and spoiling them with gifts when they go to the store. Francisco also has a brother who lives in Reading, and other siblings who live in Tennessee and other areas of the U.S. They sometimes visit us, and we try to make trips to see them when we can.

6. Francisco and I met through a mutual friend in 1988. We started dating and moved in together soon after because we knew we wanted to commit our lives to each other. My kids were very young at the time, and I was caring for them on my own, so I was not working. From early on in our relationship, Francisco provided financial support to me and my children, including helping pay for their schooling. He quickly became the father figure that they never had and helped raise them with me. During hard times in those early days, he was always by my side. For example, I had back surgery when we were dating, and he cared for me during my recovery. He assisted me with everything that I needed, from helping me bathe to cooking me meals. I could tell from early on that he was someone I could rely on.

7. Francisco and I were together for many years before we decided to officially get married on May 23, 2003. We didn't have an engagement or a wedding. We simply decided that that we wanted to get married, went down to city hall for the license, and made an appointment with a judge. It was only the two of us there, but all that mattered was that we were committing to each other for life.

8. Now, we have been in a relationship for 36 years and married for 21 years. We have a strong partnership, and one of the biggest reasons why is that Francisco has continued to support me, no matter how challenging life may be. I am a little person, and I have Multiple Sclerosis ("MS"). Due to my MS, I have difficulty walking and keeping my balance. I also had full double knee reconstruction surgery a few years ago, which makes it even harder to get around. As a little person, I can't reach the stove, cabinets, and other things in my house without climbing up on a stool. I often struggle with this given my balance issues, so I can't always easily cook or get items for myself. Francisco is the only person I can depend on to help me around the house with these daily tasks. He cooks meals for me when I can't, retrieves items out of cabinets when I need them, and assists me with my basic needs. I can't go grocery shopping without him either, because I can't reach things on the shelves or carry heavy items on my own. He helps take care of our pets and makes some repairs around the house too. I suffer a lot of pain from my MS as well, sometimes to the point that I have to take opioid medication prescribed by my doctor. On the days when my pain is the worst, Francisco consistently cares for me.

9. I have known since we met that Francisco is undocumented. I knew other undocumented individuals in the community, so I knew that there might be challenges in our future related to Francisco's immigration status. One of the biggest challenges we deal with

every day is the fear of Francisco being detained and deported. When he goes out to work and goes around Reading, as well as when we go visit family outside of Pennsylvania, we always worry that he could be detained and face removal from the U.S. Relatedly, Francisco is not able to travel internationally, so he hasn't seen his father in more than 30 years. His mother has been able to obtain a visa to visit us in the U.S. occasionally, but Francisco wants to spend more time with both her and his dad, especially as they are elderly. A couple years ago, Francisco's grandfather passed away in Mexico, which was a deep loss for Francisco. His grandfather had a big role in raising him. Missing out on both seeing his grandfather before he passed, as well as paying his respects afterward, made Francisco very sad. Finally, Francisco's lack of immigration status also makes it hard to find a better job. While he enjoys landscaping, the work is laborious and strenuous on his body, as he works outside in the elements for many hours at a time. Francisco dreams of having his own landscaping company in the future.

10. From consulting with our immigration attorney, we know that the only obstacle for Francisco to adjust status is the fact that he entered without inspection in 1987 when he first came to the U.S. I first filed an I-130, Petition for Alien Relative, for Francisco in 2014 that was approved in 2015. However, before the new process for parole-in-place ("Keeping Families Together Parole") was announced, the only way that Francisco could satisfy the requirement to apply for adjustment of status of being "inspected and admitted" or "inspected and paroled" was to leave the United States and seek an immigrant visa abroad through consular processing. To allow him to do that without triggering the reentry bars in current U.S. immigration law, Francisco applied for an I-601A Provisional Unlawful Presence Waiver based on the extreme hardship that our

separation would cause me. The I-601A waiver was granted in 2017 and our visa interview was scheduled in 2021, but we found out about it only a few days before, so we were not able to make the financial and medical arrangements to attend on such short notice. The waiver remains approved, but because of the COVID-19 pandemic, the interview has not been rescheduled. The original I-130 petition was terminated in 2023, but our immigration attorney helped me re-file the petition in October 2023. It is currently pending. I will also support Francisco in later applying for adjustment of status.

11.  Despite wanting to do whatever is needed to get Francisco on the path to a green card, the prospect of his traveling to Mexico for consular processing is also frightening and poses difficulties for us. If we were separated for any period of time, I would be without my sole support and caretaker, as well as my partner and husband. It is hard for me to navigate daily life without him, given my serious medical conditions. I wouldn't be able to take care of myself, our house, or our pets on my own. I also would not be able to afford to pay for basic needs, like food, toiletries, and utilities, without his income. Our grandkids would miss their doting grandfather as well, and Francisco would miss milestones in their lives as they grow up. We have heard stories of people leaving the country for consular processing who were not allowed to return to the U.S. or had to wait abroad for many years. That kind of prolonged separation would be devastating for us and our family. Further, Francisco's family members who have gone back to Mexico after spending time in the U.S. have experienced violence from the mafia in Mexico, including two cousins who were murdered and a brother who was kidnapped for ransom. In Francisco's hometown, it is particularly dangerous for people who are traveling there from the U.S. If Francisco got the opportunity to travel back in the future, he would need

      to meet with his parents somewhere outside of their town. This makes me fear that if he went for consular processing, he might not come back.

12. The Keeping Families Together Parole process is therefore the best option for Francisco to adjust status because it will allow us to stay together, continue to support each other, and continue to grow our life together without risking separation that would have serious consequences for my health and our family's well-being. When we first heard from our immigration attorney that the process was being announced, we were incredibly excited. I started tearing up from how excited I was that there was finally a path forward for us that wouldn't require us to be apart. I had been waiting so long for this day.

13. Upon hearing about the announcement, we made an appointment with our immigration attorney to prepare to apply for Keeping Families Together Parole as soon as possible. I gathered documents that she told me that we would need, so I would be ready when we met with her. On August 19, 2024, our immigration attorney assisted Francisco in submitting to United States Citizenship and Immigration Services ("USCIS") Form I-131F, Application for Parole in Place for Certain Noncitizen Spouses and Stepchildren of U.S. Citizens, so he can be considered for Keeping Families Together Parole. In addition to my biographical information, the form asked for details about Francisco's immigration history, any criminal history, and our marriage. Francisco was also required to submit supporting documentation showing he meets the eligibility criteria for Keeping Families Together Parole. This documentation included proof that he has been continuously present in the United States for at least ten years and that he is legally married to a U.S. citizen. To our knowledge, Francisco meets the eligibility criteria for Keeping Families Together Parole. His application is now filed and pending.

14. Receiving Keeping Families Together Parole is critical for our family because Francisco is such an integral part of my life and the lives of our children and grandchildren. He provides physical care for me that is necessary given my medical conditions, and he provides financial and emotional support to me and our grandchildren. His leaving our family for any amount of time would cause significant hardship.

15. Keeping Families Together Parole would also open up more opportunities for our family. It would allow Francisco to obtain work authorization and pursue his dreams of owning his own landscaping company, which would relieve some of the physical stress that his current job has on his body. He would also be able to get health insurance and seek medical care when needed, which is especially important as he gets older. We would be able to travel more freely without the constant fear of deportation. Everything would feel more stable and secure. It would be the best feeling in the world.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed in Reading, Pennsylvania on August __21__, 2024.

_____
Carmen M. Miranda Zayas