**Exhibit 10:** Declaration of Genaro Vicencio

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | No.: 6:24-cv-0306 |

**DECLARATION OF GENARO VICENCIO PALOMINO**
**(pursuant to 28 U.S.C. § 1746)**

## DECLARATION OF GENARO VICENCIO PALOMINO

I, Genaro Vicencio Palomino, upon my personal knowledge, hereby declare as follows:

1. I was born on July 7, 1999 in Veracruz, Mexico. I currently live in Temple, Pennsylvania with my wife, Cindy, and our six-year-old son.

2. When I was six months old, my mother left Mexico for the United States. I remained in Mexico in my grandmother's care. My life in Mexico was difficult. My grandmother and I moved around a lot, and I experienced abuse from another relative. When I was around eleven years old, my mother returned to Mexico and then brought me to the United States with her. I have remained here ever since. I have not been admitted or paroled into the United States.

3. My mother and I lived together in Reading, Pennsylvania. My first few years in the United States were very challenging. I didn't speak English, and my school didn't have any services for non-English speaking students. After a year, I transferred to another school, which had services specifically for students who had recently arrived in the country. There, I was finally able to connect with kids my age for the first time because there were other Spanish-speaking students. My first few years in the United States were very depressing, but as I learned English and met more kids, I became happier and more settled in my new home.

4. About four years after I arrived in the United States, my mother left me in the care of a relative while she visited Mexico. During that visit, she was murdered. When my school found out what had happened, they provided me with a lot of help, including by connecting me with an immigration attorney. My attorney helped me apply for asylum in 2017, and my application is still pending.

5. Cindy and I met when I was in eleventh grade, and she was in tenth grade. We first

connected over social media and then began visiting each other's cities. We went to different high schools, but only lived ten minutes away from each other. We started dating and quickly became very close.

6. I graduated from high school in 2017 and soon after received work authorization through my asylum application. This was a huge help, as it allowed me to start working for landscape and painting companies. In 2018, Cindy gave birth to our son. Cindy and I had a courthouse wedding in September 2019. We invited just our immediate family, we got dressed up, and we went out to dinner afterward. It was a great day. Cindy and I have now been married for almost five years. I work a lot, which can be hard on our family, but Cindy puts in a lot of effort to make things work. She is a great mother and takes very good care of our son.

7. In December 2020, I started my own painting company. I had always wanted to be an entrepreneur, and after several years of working at painting companies I had grown to like the trade. When I started my business, it was just me and one part-time employee. I worked very long days. But my effort paid off: The business picked up quickly. Cindy was very supportive and helped me with paperwork. I was eventually able to grow the company, and I now have 15 full-time employees. I take great pride in the fact that my company is the highest-paying painting company in the county. When I worked at painting companies previously, I was often discouraged by how the owners would treat me and other employees. Now, I am happy to be able to treat my employees well. Every time I go to the grocery store, I look at the prices of food items and ask myself whether my employees would be able to afford them. I put myself in their shoes to make sure they are always able to provide for their own families. Because at the end of the day, they are more than just my employees—they are humans.

8. On August 19, 2024, I submitted to United States Citizenship and Immigration

Services ("USCIS") a Form I-131F, Application for Parole in Place for Certain Noncitizen Spouses and Stepchildren of U.S. Citizens ("Keeping Families Together Parole"). The form requested my biographical information and details about my immigration history, any criminal history, and my marriage. I also included supporting documentation showing I meet the eligibility criteria for Keeping Families Together Parole, such as proof that I have been continuously present in the United States for at least ten years and that I am legally married to my spouse, a U.S. citizen. To my knowledge, I meet the eligibility criteria for Keeping Families Together Parole.

9. When my immigration attorney first told me about the Keeping Families Together Parole announcement, Cindy and I were very excited. Cindy helped me gather all the necessary documents and we made an appointment with our attorney for August 17, so we could complete the paperwork and be prepared to file on the first day applications were accepted.

10. Cindy filed an I-130 petition, which has been approved, and we filed an I-601A waiver, which has been pending since November 2021. Receiving a grant of Keeping Families Together Parole would be incredibly beneficial to our family. We would all struggle if I had to consular process in Mexico. Cindy would have difficulty supporting herself and our son without my income to help pay the bills. It would also be emotionally taxing for all of us to be separated, but especially for my young son to be without his father for an undetermined amount of time. If Keeping Families Together Parole is blocked, I would lose a pathway to lawful permanent residence that would save me time and, most importantly, that would allow me to remain in the United States with my family and avoid the risk of prolonged separation.

11. Once I obtain lawful permanent residence, I will be so relieved to no longer have to live in uncertainty about the future. It will allow me to access loans in order to grow my business. It has been difficult to expand my company without access to loans. I have tried so

many different ways to access financing, but my immigration status has always prevented me from accessing those options. It will also allow me freedom to travel. My wife and I dream of being able to travel abroad as a family to see the world and show our son new places and cultures. I also hope to be able to visit my mother's burial site in Mexico so I can pay my respects. Most of all, I hope to have peace of mind knowing I will always be around to provide for my wife and son.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Temple, Pennsylvania on August 21, 2024.

_____
Genaro Vicencio Palomino