UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CASE NO. 6:24-CV-306-JCB |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

---

## PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS

---

Texas and 15 other States (Plaintiffs) filed suit against various federal agencies and officials (Federal Defendants) (together, the Parties) to challenge the Biden-Harris Administration's "Parole in Place" (PIP) Program, which illegally circumvents the longstanding statutory requirement that certain illegal aliens leave the country for ten years before reapplying for admission and legal status. A group of eleven individuals and one non-profit (collectively, the Proposed Intervenors), request intervention. ECF No. 15. The motion for intervention came on the same day this Court issued its Order granting an administrative stay of the PIP Program, and putting in place an expedited briefing and discovery schedule that would allow it to rule on the merits as early as mid-October. ECF No. 27.

Although justified by good cause, the accelerated timeline entered by this Court presents substantial case-management issues. Not only must the Parties prepare their case-in-chief, including any discovery (such as serving and responding to interrogatories and requests for admission on five-day turnarounds, requesting and producing documents on the same timeframe, and taking and defending depositions, all in a 21-day period), but they also must complete any motions practice so that it does not impede the swift resolution of the claims brought by Plaintiffs.

1

To facilitate matters, the Parties have started negotiations aimed at streamlining the proceedings. A joint stipulation limiting the scope of discovery has already been filed.  ECF No. 36.

Adding the Proposed Intervenors, even at this early stage, threatens to upend the expedited schedule. This is because intervenors do not merely articulate their perspective to the court like amici. Unless their participation is cabined at the start, they are a source of additional discovery, questions, briefs, arguments, motions and the like—all of which makes disposition of a lawsuit more difficult, especially when the parties are operating under tight deadlines. In addition to this, it is clear from their motion that the Proposed Intervenors share the same objective as the Federal Defendants. They have not established adversity of interests—nor could they since the Federal Defendants have yet to even file an answer. The basis of their intervention rests entirely on speculation.

Proposed Intervenors therefore cannot meet their burden for intervention as of right, and circumstances of the case disfavor permissive intervention. Their motion should be denied on all grounds. In the alternative, should this Court grant intervention, Plaintiffs request that this Court preclude the Proposed Intervenors from engaging in any discovery. The questions presented in these proceedings are primarily legal ones. Proposed Intervenors cannot contribute to the development of standing any more than the Federal Defendants. Their exclusion from discovery proceedings therefore would not undermine Proposed Intervenors' interests, but it would have the benefit of minimizing potential disruptions.

## BACKGROUND

Congress has strictly limited the Executive's parole authority to a "case-by-case" basis for "urgent humanitarian reasons" or "significant public benefit." 8 U.S.C. § 1182(d)(5)(A). These restrictions were intended to prevent the Executive from circumventing immigration laws by admitting large groups of aliens without a lawful basis. The Biden-Harris Administration's PIP Program defies these statutory limits by creating a pathway to legal status for over 1.3 million aliens who have been unlawfully present for ten years or more, without requiring them to follow

Congress's mandate that they leave the country or comply with existing immigration laws. *See generally* Implementation of Keeping Families Together, 89 Fed. Reg. 67,459 (Notice). The program grants parole *en masse*, bypassing the need for individualized determinations and disregarding Congress's clear limits on parole authority.

Plaintiffs filed a complaint on August 23, 2024, arguing that the PIP Program conflicts with existing immigration law and incentivizes illegal immigration, causing irreparable harm. ECF No. 1. Plaintiffs moved for emergency relief that same day. ECF No. 3. In response, this Court issued an administrative stay on August 26, 2024—temporarily preventing USCIS from approving any PIP applications for 14 days, while allowing the agency to continue accepting new applications. In its order, the Court set an expedited schedule, requiring discovery to be completed by September 16, 2024, and it established tight deadlines for motions and responses, including a timeline for preparing the administrative record by September 9, 2024, and completing summary judgment by October 10, 2024. ECF No. 27.

Despite the considerable logistical challenges, the Parties negotiated in good faith and managed to reach substantial agreement on how to proceed with the accelerated discovery schedule. A stipulation describing an important aspect of that agreement was jointly filed with this Court. *See* ECF No. 36. Specifically, the Parties agreed that Plaintiffs "will only seek to establish Article III injury based on alleged injuries to Texas;" they "may not attempt to introduce new evidence of injury or irreparable harm" relating to another State "absent new reciprocal discovery." *Id.* ¶¶ 1–2. In exchange, Federal Defendants stipulated that their discovery requests would be limited to Texas. *Id.* ¶ 1. The Parties continue to negotiate in good faith on other matters and hope to enter into additional arrangements in the near future that further simplify litigation.

The Parties have balanced the need for speedy resolution with the practical concern of giving each side sufficient opportunity to develop their facts and legal arguments. Yet, on the same day this Court issued its order, Proposed Intervenors sought admission into the case as defendants advancing the same ultimate objective as the federal government: namely, the continuation of the

PIP Program. They consist of the "Coalition for Humane Immigrant Rights" (CHIRLA), an advocacy organization, claiming to represent the interests of its members, as well as eleven individuals who describe themselves as beneficiaries of the PIP Program. The Proposed Intervenors have not disclaimed an interest in participating in discovery, which is ongoing at a hyper pace on a short timeline. They have also prematurely indicated an intention to file a motion with court, seeking vacatur of the administrative stay—that motion would be duplicative of the one Federal Defendants plan to submit next week. *See* Ex. A.

Recognizing the disruption their addition would cause, Plaintiffs submit this response in opposition to Proposed Intervenors' motion for intervention.

S<span style="font-variant:small-caps">TANDARD</span>

The Federal Rules of Civil Procedure provide two mechanisms for third-party intervention: intervention of right under Rule 24(a), and permissive intervention under Rule 24(b). Rule 24(a) allows nonparties to intervene only where they are "given a right to intervene by a federal statute" or they "claim[ ] an interest relating to the property or transaction that is the subject of the action, and [are] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest*." Fed. R. Civ. P. 24(a) (emphasis added).

The Proposed Intervenors do not claim a statutory right to intervene, so they must satisfy the requirements of Rule 24(a)(2):

> It is well-settled that to intervene as of right each of the four requirements of the rule must be met: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impeded his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (quotation omitted). "If a would-be intervenor fails to meet any one of these requirements

4

then it cannot intervene as a matter of right." *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984) (per curiam).

Meanwhile, permissive intervention under Rule 24(b) is permitted at the Court's discretion when: (1) a timely application is made by the intervenor; (2) the intervenor's claim or defense and the main action have a question of law or fact in common; and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *LULAC v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). Permissive intervention "is at the discretion of the court." *Walker v. Alta Colls, Inc.*, No. 1:09-cv-894, 2011 WL 13269547, at *2 (W.D. Tex. Aug. 10, 2011). A district court thus "may deny permissive intervention even when the requirements of Rule 24(b) are met." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (per curiam).

ARGUMENT

## I. Proposed Intervenors have no right to intervene because their interests are adequately represented by existing parties.

As an initial matter, this Court should not rule on the Proposed Intervenors' motion until Federal Defendants file an answer to Plaintiffs' complaint. The alleged inadequacy of Federal Defendants' representation is pivotal to deciding the motion to intervene. Until Federal Defendants file an answer, Proposed Intervenors' arguments that their interests are not adequately represented by Federal Defendants are entirely speculative. *See Franciscan All., Inc. v. Burwell*, No. 7:16-cv-108, 2016 WL 9281524, at *3 (N.D. Tex. Nov. 1, 2016) (O'Connor, J.) (staying consideration of motion to intervene until after defendants filed answer, refusing to consider intervention despite a pending motion for preliminary injunction, but allowing participation as amicus curiae). Considering the motion to intervene after Federal Defendants file their answer will provide the Court with enough information to determine whether the Proposed Intervenors have met their burden to show that circumstance. Beyond that, the Proposed Intervenors will not be prejudiced by such a delay because they have filed a motion to intervene in the early stages of litigation which this Court can consider once the parties have stated their positions in this case. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

5

That said, the Proposed Intervenors do not have a right to intervene because they have no statutory right to intervene, and the existing Parties adequately represent the interest the Proposed Intervenors claim. There are two presumptions the Proposed Intervenors must overcome to show inadequate representation. "First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). The second presumption applies "when the would-be intervenor has the same ultimate objective as the party to the suit." *Id.*

The Federal Defendants are charged with implementing DHS policies and defending them in court. Thus, as courts have held in comparable cases, the first presumption applies. *See, e.g.*, *Texas v. U.S. Dep't of Homeland Sec. (CHNV Intervention)*, No. 6:23-cv-7, 2023 WL 3025080, at *4 (S.D. Tex. Apr. 19, 2023) (Tipton, J.) (first presumption applies because DHS is obligated to defend its policies on parole). The second presumption also applies because the Proposed Intervenors and the Federal Defendants have the same objective: "for the parole program to remain effective." *Id.* Thus, both presumptions apply, and neither has been overcome.

"This Circuit holds that when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Kneeland v. NCAA*, 806 F.2d 1285, 1288 (5th Cir. 1987) (citing *Viterna*, 740 F.2d at 355). "[W]here the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994). Here, the Proposed Intervenors do not allege any form of collusion or nonfeasance—only adversity of interest is at issue. Yet the Proposed Intervenors have failed to show that their interests are inadequately represented by Federal Defendants; they have not identified a single legal position or argument likely to differ between them.

6

"In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas v. United States (Texas DAPA Intervention)*, 805 F.3d 653, 662 (5th Cir. 2015). The *Edwards* court held that the governmental representative presumption arises "whether the would-be intervenor is a citizen or subdivision of the governmental entity," 78 F.3d at 1005, so it would be absurd to say that the fundamental difference in position between a governmental entity and a citizen is, alone, sufficient to show inadequacy of representation—there must be some material difference in how the parties would approach the case. This is where the Proposed Intervenors have come up short.

Proposed Intervenors rely heavily on *Texas DAPA Intervention*, but that case is readily distinguishable and even provides a helpful counterexample to the Proposed Intervenors here. There, the intervenors demonstrated "the particular way in which these divergent interests have impacted the litigation." 805 F.3d at 663. Specifically, "the Government had taken the position that the States may refuse to issue driver's licenses to deferred action recipients," but the proposed intervenors specifically sought a form of legal status that would permit them to acquire driver's licenses. *Id*. The Government also had a general interest "in securing an expansive interpretation of executive authority" distinct from anything the proposed intervenors sought and could impact litigation strategy.

Similarly, in *Sierra Club*, 18 F.3d 1202, timber industry trade groups sought to intervene after a court granted a preliminary injunction against certain logging practices. In response, the government defendants adopted a policy broader than the injunction required, prohibiting both the challenged timber sales and any other sales of the same type. *Id*. at 1204. The court found that this broader policy reflected the government's obligation to "represent the broad public interest" and contrasted that against the proposed intervenors' narrower interest in representing "the economic concerns of the timber industry." *Id*. at 1207–08.

Here, however, the interests of the Proposed Intervenors and the Federal Defendants are closely aligned. The Proposed Intervenors emphasize that the agencies "have the authority to grant

*or deny*" parole applications but never hint at a belief that the Government lacks power to deny applications that do not meet PIP Program requirements. ECF No. 15 at 18 (emphasis in original). The Proposed Intervenors list governmental objectives that they claim not to share but do not even try to explain how those objectives create any form of adversity between themselves and the government. Fundamentally, both the Proposed Intervenors and the Federal Defendants are fully aligned.

For example, the Proposed Intervenors point to the Federal Defendants' alleged interest in "reducing strain on limited U.S. government resources," ECF No. 15 at 19, but the Notice explains that this objective is only anticipated where PIP Program applicants would otherwise pursue a more thorough procedure, such as the Form I-601A Application for Provisional Unlawful Presence Waiver. *See* 89 Fed. Reg. at 67,468. In other words, per the Federal Defendants, that objective is accomplished when applicants are granted parole. The same applies to every other alleged disparate objective: the Federal Defendants do not argue in the Notice that their alleged interest in family stability, the alleged economic benefits of PIP, diplomatic objectives, and so on, are accomplished by creating Form I-131F or having a new program available; every one of the Federal Defendants' objectives boils down to one more reason the Federal Defendants want to grant applicants parole.

The Proposed Intervenors want the Federal Defendants to grant parole to illegal aliens who meet the requirements of the PIP Program. Federal Defendants obviously want the same thing. They may have different reasons for wanting that, but the Proposed Intervenors cannot identify a single way in which those different reasons affect participation in this case. As in *Kneeland v. NCAA*, the Proposed Intervenors may "argue that they have a stronger interest in the litigation," but they "have demonstrated no adversity of interest that justifies allowing intervention." 806 F.2d at 1288 (no right for schools to intervene where associations were sued for records, even though the records were the schools', because the schools could not show how their participation would impact the course of the litigation).

8

Similarly, in *Hopwood v. Texas*, the State's obligation to "balance competing goals," as contrasted against the proposed intervenors' "sharp focus on preserving the" challenged policy was not enough to show inadequate representation. 21 F.3d at 605 (cleaned up). As with the Proposed Intervenors here, the groups seeking to intervene in *Hopwood* identified a number of governmental goals they did not share, such as "educational goals, fiscal responsibility, administrative concerns[,] and public opinion," whereas their only goal was preserving a policy of racial preferences that benefited their members. *Id.* Yet, like the Proposed Intervenors here, they "ha[d] not demonstrated that the State [would] not strongly defend its affirmative action program," nor had they "shown that they have a separate defense of the affirmative action plan that the State has failed to assert." *Id.* at 605–06.

Like the proposed intervenors in *Hopwood* and *Kneeland*, the Proposed Intervenors here may argue that they have a more personal concern for the PIP Program than the agencies that created it. But they have not shown how that concern translates to a difference in how they would defend the illegal program. Intervention by right should be denied.

## II. The Court should deny permissive intervention in the unique circumstances present in this case.

The Proposed Intervenors also ask that this Court to grant them permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). That request should be denied as intervention would be disruptive and prejudicial. Intervention under Rule 24(b) "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland*, 806 F.2d at 1289; *see* 7C C. Wright & A. Miller, *Federal Practice and Procedure* § 1913. In exercising that discretion, "it is proper to consider, among other things, whether the intervenors' interests are adequately represented by other parties' and whether they will significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 732 F.2d at 472 (cleaned up). Moreover, Rule 24(b)(3) states:

> **Delay or Prejudice**. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Plaintiffs do not contest that the Proposed Intervenors have filed their application early in the proceedings and share a common question of law or fact with existing parties to this case. The Court, nonetheless, should exercise its broad discretion to deny intervention under Rule 24(b) because their addition to the case would provide no material benefit to the development of underlying factual issues, but it would prejudice Plaintiffs and risk delay, confusion, and expense in an accelerated litigation schedule. Indeed, the Proposed Intervenors, despite not being admitted into the case, have already sought to confer on a motion to vacate this Court's administrative stay. *See* Ex. A. The Proposed Intervenors acknowledged in their email that they are aware that the Federal Defendants intend to file a "similar" motion next week, but that knowledge failed to lead to restraint. Far from being atypical, the forthcoming motion epitomizes the type of duplicative proceedings that would result from Proposed Intervenors' entry into this lawsuit, should this Court grant intervention.

## A. Denying permissive intervention would not harm Proposed Intervenors because their interests are already represented.

As set forth above, it is undeniable that the Proposed Intervenors have failed to show that the Federal Defendants do not adequately represent the interests of Proposed Intervenors in this case. They plainly have the same overall objective as the Federal Defendants: namely, the defense and implementation of the PIP Program. The Proposed Intervenors also have not alleged or proved that there is any collusion, nonfeasance or adverse interests that would render the Federal Defendants' representation of the interests of the Proposed Intervenors deficient. There is thus no basis to believe that denying intervention would impair Proposed Intervenors' interests, particularly since they retain the option to participate as amicus curiae. That alone justifies denying their request as unnecessary and needlessly complicating the litigation. *Staley v. Harris Cnty.*, Tex., 160 F. App'x 410, 414 (5th Cir. 2005) (per curiam) (denial of permissive intervention was proper

where another party "adequately represents [intervenor's] interests in this case"); *see also Nevada v. United States Dep't of Labor*, No. 4:16-cv-731, 2017 WL 3780085, at *3 (E.D. Tex. Aug. 31, 2017) (Mazzant, J.).

**B.  Intervention is unlikely to aid in the factual development of this case any more than an amicus brief would.**

At the same time, Proposed Intervenors' motion did not give this Court any reason to believe that intervention—as opposed to status as amicus curiae—would significantly contribute to the development of the underlying facts relevant to this case. The facts that are relevant in this case are quite limited. The "record rule" sharply restricts what facts this Court may consider when resolving Plaintiffs' claims. *See Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n. 8 (5th Cir. 1988) ("Nor are the courts permitted to consider evidence outside the administrative record"); *Accord Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). The Proposed Intervenors therefore have little or nothing to contribute to the factual issues that are exceptions to the record rule, such as those surrounding the standing of the Plaintiffs to bring this action, the existence of final agency action, or the scope of relief.

Judging by the voluminous declarations the Proposed Intervenors submitted with their motion to intervene, they would like to detail their individual life journeys, experiences, and circumstances to argue that the PIP Program would be of great value to them. That is understandable, but those declarations would be far better directed to Congress than this Court. At the end of the day, the desires and needs of the Proposed Intervenors for the benefits the PIP Program could provide are irrelevant to the issues in this case. The real issues, aside from Plaintiffs' standing, center on the legality of the PIP Program under the INA and APA, as well as the Take Care Clause. These are questions of law, not fact, and can be developed by Proposed Intervenors just as well via an amicus brief.

**C. Because of the accelerated schedule, intervention will disrupt the orderly proceeding of this case.**

In contrast to the slight impact of denial of intervention, a grant of intervention to the Proposed Intervenors would risk significant delay of the resolution of this case as between the existing Parties. The Court on August 26, 2024, entered its Order. *See generally* ECF No. 27. The Order provides temporary equitable relief for 14 days, renewable for good cause or on consent; and a case schedule providing for shortened notice on discovery requests and completion of all discovery by September 16, 2024. Under that schedule, Plaintiffs will have until September 17 to supplement and replace their motion for preliminary injunction, with additional briefing and attachments pertinent to summary judgment, including parts of the administrative record that is to be filed by September 9. Briefing by all parties is to be completed by October 3, with the Court to set an "expedited hearing on preliminary relief and summary judgment, and if necessary, a consolidated bench trial, on a date as soon as possible after completion of the briefing."

Adding twelve Proposed Intervenors with their own entitlement and burden to take and defend discovery would greatly complicate this expedited schedule and render it impracticable. Intervenors, after all, "do not come alone—they bring along more issues to decide, more discovery requests," all of which makes disposition of the case more cumbrous.[1] *South Carolina v. North Carolina,* 558 U.S. 256, 287 (2010) (Roberts, C.J., concurring). The risk for disruption is particularly acute here since the Plaintiffs and Federal Defendants have managed to reach significant agreement on how to proceed with the accelerated discovery ordered by this Court. This includes a stipulation that Plaintiffs "will only seek to establish Article III injury based on alleged injuries to Texas." ECF No. 36. The addition of Proposed Intervenors to the case puts that agreement in question. The Parties entered into the stipulation to streamline what otherwise would have been a time-intensive struggle to compile discovery for all 16 Plaintiffs. The entry of the

---

[1] As evidence, the Court need not look any further than the email sent by Proposed Intervenors earlier today, which seeks to confer on a motion to vacate this Court's administrative stay. *See* Ex. A. This motion would be filed on top of a "similar" forthcoming motion from Federal Defendants.

Proposed Intervenors will undermine these agreements. Plaintiffs and Federal Defendants continue to negotiate in good faith and have come to agreement on rolling productions of documents and continue to evaluate the need for depositions. Granting intervention would upset this ongoing process, resulting in delays and unnecessary work for both this Court and the Parties.

### D. In this situation, the Court should grant amicus curiae status as an alternative to intervention.

In these circumstances, when detriments of intervention outweigh the benefits, the Fifth Circuit has recognized the proper role for such putative intervenors:

> Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

*Viterna*, 740 F.2d at 359 (affirming denial of county association's motion for permissive intervention as defendant in statewide challenge to county-jail conditions) (cleaned up); *see, e.g.*, *La Union del Pueblo Entero v. Abbott*, No. SA-21-cv-00844, 2021 WL 5410516, at *3 (W.D. Tex. Nov. 16, 2021) (Rodriguez, J.) (denying intervention but allowing participation as amicus). That is precisely the situation that the Proposed Intervenors' motion presents here. Plaintiffs will not object to the Proposed Intervenors filling an amicus curiae brief by September 26, the date on which the Federal Defendants are to file their brief under the schedule in the Order. But intervention is unwarranted.

### III. If intervention is allowed, the Court should restrict the Proposed Intervenors from discovery.

If the Court exercises its discretion to allow intervention, Plaintiffs respectfully request that the Court preclude the Proposed Intervenors from engaging in any discovery. "When granting an application for permissive intervention, a federal district court is able to impose almost any condition, including the limitation of discovery." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) (citing 7C Charles A. Wright & Arthur R. Miller, Fed. Prac. &

Proc. § 1922 (2d ed. 1986)); *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 353 & n.5 (5th Cir. 1997) (favorably citing *Columbus-Am. Discovery Grp.,* 974 F.2d 450, for "allow[ing] various conditions to be imposed upon intervenors"). Any such limitation on intervention would not be subject to immediate appeal. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987) (noting district courts' power to restrict the ability of an intervenor to take discovery or request additional relief, rejecting argument that order allowing intervention while restricting ability to conduct discovery allowed immediate appeal).

Because the questions presented in these proceedings are primarily legal ones—and the injection of more discovery would increase demands where the Parties are already facing the prospect of completing discovery in a very short time—Proposed Intervenors should not be allowed discovery. *See Bibles v. City of Irving*, No. 3:08-cv-1795, 2009 WL 2252510, at *5 (N.D. Tex. July 28, 2009) (Lynn, J.) (limiting intervenor's participation in discovery). This would ensure that the delicate balance of the careful schedule set out in the Court's Order is not unsettled.

## CONCLUSION

Proposed Intervenors have not shown the factors—adversity of interest, collusion, or nonfeasance, or differing ultimate objectives—needed to overcome the presumptions of adequate representation by the existing Federal Defendants in this case. Their presence at this point would only needlessly complicate an already accelerated litigation schedule and add nothing of any substance. Intervention should be denied.

Dated: August 30, 2024.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

*/s/Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085
Ryan.Walters@oag.texas.gov

**KATHLEEN T. HUNKER**
Special Counsel
Texas Bar No. 24118415
Kathleen.Hunker@oag.texas.gov

**DAVID BRYANT**
Senior Special Counsel
Texas Bar No. 03281500
David.Bryant@oag.texas.gov

**GARRETT GREENE**
Special Counsel
Texas Bar No. 24096217
Garrett.Greene@oag.texas.gov

**MUNERA AL-FUHAID**
Special Counsel
Texas State Bar No. 24094501
Munera.Al-fuhaid@oag.texas.gov

Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100

Respectfully submitted,

Fax: 512-457-4410

**GENE P. HAMILTON***
Virginia Bar No. 80434

**JAMES ROGERS***
Arizona Bar no. 027287

**RYAN GIANNETTI***
DC Bar no. 1613384

America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
Gene.Hamilton@aflegal.org
James.Rogers@aflegal.org
Ryan.Giannetti@aflegal.org

**COUNSEL FOR PLAINTIFF**
**STATE OF TEXAS**

**RAÚL R. LABRADOR**
Idaho Attorney General

*/s/ Alan Hurst*
**ALAN HURST***
Solicitor General
**MICHAEL A. ZARIAN***
Deputy Solicitor General
Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
Alan.Hurst@ag.idaho.gov
Michael.Zarian@ag.idaho.gov

**COUNSEL FOR STATE OF IDAHO**
*\*Admitted Pro Hac Vice*

STEVE MARSHALL
Attorney General of Alabama

*/s/ Robert M. Overing*
ROBERT M. OVERING
Deputy Solicitor General
Robert.Overing@AlabamaAG.gov
Office of the Attorney General of Alabama
501 Washington Avenue
Montgomery, Alabama 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400

COUNSEL FOR STATE OF ALABAMA


TIM GRIFFIN
Attorney General of Arkansas

Nicholas J. Bronni
 Solicitor General

*/s/ Dylan L. Jacobs*
DYLAN L. JACOBS*
 Deputy Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201
Telephone: (501) 682-2007
Dylan.jacobs@arkansasag.gov
Counsel for State of Arkansas
*admission application forthcoming*


ASHLEY MOODY
Attorney General of Florida

*s/ James Percival*
JAMES H. PERCIVAL
Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
James.percival@myfloridalegal.com

COUNSEL FOR STATE OF FLORIDA


CHRISTOPHER M. CARR
Attorney General of Georgia

*/s/Stephen J. Petrany*
STEPHEN J. PETRANY*
Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

COUNSEL FOR STATE OF GEORGIA
*Admitted Pro Hac Vice*


BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

COUNSEL FOR STATE OF IOWA


KRIS W. KOBACH
Attorney General of Kansas

*s/ Abhishek S. Kambli*
ABHISHEK S. KAMBLI
Deputy Attorney General – Special Litigation
& Constitutional Issues Division
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-6109 | Fax: (785) 221-3938
abhishek.kambli@ag.ks.gov

COUNSEL FOR STATE OF KANSAS

ELIZABETH B. MURRILL
Attorney General of Louisiana

s/ J. Benjamin Aguiñaga
J. BENJAMIN AGUIÑAGA*
Solicitor General
Office of the Attorney General
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

COUNSEL FOR STATE OF LOUISIANA
*admission application forthcoming


ANDREW BAILEY
Attorney General of Missouri

/s/ Samuel C. Freedlund
SAMUEL C. FREEDLUND, 73707MO
 Deputy Solicitor General
Office of the Attorney General
815 Olive St., Suite 200
St. Louis, MO 63188
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

COUNSEL FOR THE STATE OF MISSOURI


DREW H. WRIGLEY
Attorney General of North Dakota

/s/ Philip Axt
PHILIP AXT*
Solicitor General
Office of Attorney General
600 E. Boulevard Ave Dept. 125
Bismarck, ND 58505
Phone: (701) 328-2210
pjaxt@nd.gov

COUNSEL FOR STATE OF NORTH DAKOTA
*Admitted Pro Hac Vice


DAVE YOST
Attorney General of Ohio

/s/ T. Elliot Gaiser
T. ELLIOT GAISER*
Ohio Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
614.466.5087 fax
thomas.gaiser@ohioago.gov

COUNSEL FOR STATE OF OHIO
*Admitted Pro Hac Vice


MARTY JACKLEY
Attorney General of South Dakota

/s/ Clifton E. Katz
CLIFTON E. KATZ*
Assistant Attorney General
1302 E. Highway 14, Suite 1
Pierre, South Dakota 57501
Telephone: 605-773-3215
E-Mail: clifton.katz@state.sd.us

COUNSEL FOR STATE OF SOUTH DAKOTA
*Admitted Pro Hac Vice


ALAN WILSON
Attorney General of South Carolina

s/ J. Emory Smith, Jr.
JAMES EMORY SMITH, JR.
Deputy Solicitor General
Email:  esmith@scag.gov
Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3642
Fax: (803) 734-3677

COUNSEL FOR STATE OF SOUTH CAROLINA
*Application for Admission Forthcoming

17

**JONATHAN SKRMETTI**
Attorney General of Tennessee

/s/ *Whitney D. Hermandorfer*
**WHITNEY D. HERMANDORFER**
*Director of Strategic Litigation*
Tennessee Bar. No. 041054
Whitney.Hermandorfer@ag.tn.gov
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726

**BRIDGET HILL**
Attorney General of Wyoming

*/s/ Ryan Schelhaas*
**RYAN SCHELHAAS***
Chief Deputy Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

**COUNSEL FOR STATE OF WYOMING**
**motion for pro hac vice admission forthcoming*

## CERTIFICATE OF SERVICE

I certify that on August 30, 2024, a true and accurate copy of the foregoing document was filed and served electronically, via CM/ECF.

*/s/Ryan D. Walters*
RYAN D. WALTERS