UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:24-cv-00306

**State of Texas et al.,**
*Plaintiffs,*

v.

**United States Department of Homeland Security et al.,**
*Defendants.*

# OPINION AND ORDER

Before the court is a motion to intervene filed by eleven proposed individual intervenors who either are foreign nationals present in this country unlawfully and married to U.S. citizens or are the U.S.-citizen spouses of such foreign nationals. Doc. 15. Joining them as movants is one organization that seeks to represent the interests of similarly situated individuals. Plaintiffs oppose the motion, and defendants take no position on it. For the reasons below, the court denies the motion to intervene.

## Background

In this case, plaintiffs challenge a rule issued by the Department of Homeland Security that creates a process allowing foreign nationals to obtain "parole in place" under the immigration laws if they (1) are unlawfully present in this country without admission or parole; (2) have a valid marriage to a U.S. citizen dating to on or before June 17, 2024, or have a parent who entered into such a marriage before the applicant's 18th birthday; (3) have been continuously present in this country either since June 17, 2014 in the case of a spouse of a U.S. citizen (i.e., for more than ten years), or since June 17, 2024 and before the applicant's 18th birthday, in the case of a stepchild of a U.S. citizen; (4) have no disqualifying criminal history; and (5) submit biometrics and pass national-security and public-safety vetting. Implementation of Keeping Families Together, 89 Fed. Reg. 67,459, 67,469 (Aug. 20, 2024) ("KFT Rule").

Receiving "parole in place" under the KFT Rule "enabl[es] paroled noncitizens to work lawfully in the United States." *Id.* at 67,462. And it "remove[s] a barrier to an immigration benefit" by making the foreign national "able to immediately apply for LPR status"—commonly called a green card—"without needing to wait for an immigrant visa" that generally requires departing from this country, applying at a U.S. consulate abroad, and waiting a statutorily prescribed time period calculated based on the foreign national's length of unlawful presence in the United States. *Id.* at 67,475; *accord id.* at 67,460 & n.10 (describing the depart-and-wait-abroad process). Those benefits are not merely incidental effects. The rule's stated purpose is to promote family unity by creating a path to a green card other than the depart-and-wait-abroad process:

> DHS . . . act[s] to preserve the unity of U.S. citizens and their noncitizen spouses and noncitizen stepchildren who currently cannot access LPR status without first departing the United States.

*Id.* at 67,460. Familiarity with the details of the rule is presumed.

## Discussion

Movants seek to intervene either of right or permissively. Doc. 15 at 4. Each is addressed below.

**1. Intervention of right**

Intervention of right requires that the movant either (1) "is given an unconditional right to intervene by a federal statute" or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a); *accord Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Movants' timely motion relies on the second prong.

Under that prong, a movants' interest in the case must qualify as a "direct, substantial, legally protectable interest in the

proceedings." *Texas*, 805 F.3d at 657 (quotation marks omitted). In *Texas*, the Fifth Circuit held that a sufficient interest "need not be legally *enforceable*" and that the interest of foreign nationals in receiving formal removal forbearance and associated benefits was sufficiently concrete and personalized as to satisfy this aspect of the intervention test. *Id.* at 659–60.

That holding controls here as to the movants who are foreign nationals. They rely on their interest in obtaining parole under the KFT Rule so that they may be lawfully present in and work in this country. *See* Doc. 15 at 14–15. The proposed organizational intervenor also likely satisfies this prong as representing foreign nationals with a similar interest. The movants who are U.S. citizens married to foreign nationals, however, do not meet this requirement because they are not themselves potential recipients of parole under the rule, have not shown any inability of their foreign-national spouses to represent their own interests, and do not claim to have any foreign-national stepchildren who might face an impediment in representing their own interests.

Intervention of right next requires that a movant's legally cognizable interests are sufficiently implicated by a case. That is true here of movants' interest in receiving parole under the KFT Rule, which is directly implicated in this lawsuit.

Finally, intervention of right requires that a movant's interests are inadequately represented by existing parties. The burden of establishing inadequate representation is on the applicant for intervention. *Texas*, 805 F.3d at 661. The burden is met if the applicant shows that the representation of his or her interests "may be" inadequate; a certainty of inadequate representation is not required. *Id.* at 661 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). At the same time, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.* (quotation marks omitted) (quoting *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991)).

As that burden has some teeth, the Fifth Circuit recognizes two presumptions of adequate representation that movants must overcome when they apply. *Id.* Relevant here, a presumption of adequate representation applies when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* (quotation marks omitted) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)).

That presumption applies here. Defendants' ultimate objective in this case is avoiding or defeating plaintiffs' request for judicial relief that impedes the rule's implementation. That is the same objective of the proposed intervenors.

To be sure, in a hypothetical future lawsuit brought by a particular foreign national for judicial review of whether he or she was properly *denied* parole under the KFT Rule, the interests of the foreign national and the federal government would differ. But this lawsuit challenges the future *grant* of parole under the rule to any foreign national, not the past denial of parole to specific foreign nationals. Movants and the federal government thus have the same ultimate objective in this case. *Kneeland v. NCAA*, 806 F.2d 1285, 1288 (5th Cir. 1987) (holding that the presumption applies because, even though a movant had a more personalized reason to win a lawsuit than did an association with institutional interests, the association still had the same objective of defending its challenged action).

Because that presumption of adequate representation applies here, movants "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Texas*, 805 F.3d at 661–62 (quotation marks omitted) (quoting *Edwards*, 78 F.3d at 1005). Their motion does not make such a showing.

Movants rely on four cases as showing how the federal government's defense of the KFT program here is or may be inadequate, as to overcome the presumption of adequacy. Doc. 15 at 18 (motion); Doc. 44 at 3 (reply). But those cases are inapposite because

each turned on a demonstrated variation between a position taken by the government in the case and the interests of the movants.

First, in the Fifth Circuit's 2015 *Texas* decision, the proposed intervenors argued that the federal government's executive action was based in part on "maintaining its working relationship with the States, who often assist it in detaining immigrants like the Jane Does," so the federal government might not adequately represent the movants' interests in remaining in this country. 805 F.3d at 663. The movants there "then identif[ied] the particular way in which these divergent interests [had] impacted the litigation." *Id*. "[T]o undermine the States' standing argument, the Government has taken the position that the States may refuse to issue driver's licenses to deferred action recipients. This position is directly adverse to the Jane Does, who are eligible for deferred action." *Id*.

In contrast, the program here exists for the explicit purpose of promoting family togetherness and removing a barrier under otherwise-applicable law to obtaining a green card and work permit. 89 Fed. Reg. at 67,460. Movants have not shown that the rule is also based in part on a countervailing goal, such as facilitating detention by state authorities of foreign nationals to whom the rule applies. Nor has the federal government here made a legal argument that conflicts with movants' interests, such as the driver's-license argument that animated the 2015 *Texas* decision.

Next, movants rely on *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), but that case also involved a concrete divergence in legal positions that showed an adversity of interest. There, parents opposed to dismantling a state-school-voucher program were "staking out a position significantly different from that of the state, which apparently ha[d] conceded the continuing jurisdiction of the district court." *Id*. at 346. The state's demonstrated interest in maintaining its relationship "with the courts that have continuing desegregation jurisdiction" showed a "lack of unity in all objectives" in the lawsuit. *Id*. And that lack of unity, "combined with" the "real and legitimate additional or contrary arguments" of the parents, showed that the parents' interests were not

adequately represented by the state within the meaning of Rule 24. *Id.*

Unlike in *Brumfield*, defendants here do not acquiesce in this court's jurisdiction. Indeed, defendants have sought to take discovery to contest jurisdiction. Doc. 9. Although a governmental entity almost always has a broader set of interests in crafting a regulatory program than do individuals who benefit from the program, the intervention test focuses on movants' interests in the case—not in crafting the program. And movants here do not identify a concrete way in which the government's defense of the case shows adversity of interest, collusion, or nonfeasance. Unless the presumption of adequacy in defending a benefits program is rebutted by the ever-present difference in kind between the interests of regulators and regulated parties, the court cannot find that movants have met their burden here. The burden may be minimal, but it still requires a possible divergence in concrete positions in the case. *Brumfield* itself emphasized that "a private group does not always satisfy this prong just because a governmental entity is on the same side of an issue." 749 F.3d at 346.

Next, movants cite an inapposite case about the government not defending its full program as the litigation evolved. There, the U.S. Forest Service advised prospective timber purchasers that, "as a result of [an] injunction [in the case], it would refrain from offering not only the planned timber sales challenged by the plaintiffs but also [other] timber sales." *Sierra Club v. Espy*, 18 F.3d 1202, 1204 (5th Cir. 1994). The intended purchasers of that additional timber could intervene of right because, "[w]hen the agency announced on June 24, 1993, that it would apply the preliminary injunction to all timber sales (not merely the nine sales challenged by the plaintiffs), movants became aware that the Forest Service would not protect their interests." *Id.* at 1206. That is not the case here. The federal government has not announced that it is refusing to defend any aspect of the rule or is acquiescing to relief beyond that entered by the court.

Movants' final cited case is also unavailing. There, groups representing poll watchers could intervene because the lawsuit challenging a state law was being defended by Texas only as to the court's jurisdiction (not the merits) and because the remaining, local-official defendants did not trigger the presumption of adequacy for case-specific reasons (one was in fact challenging the same law in another case; others had said that they would not defend the law). *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022). Again, that is not the situation here. If the federal defendants were to win on a jurisdictional defense, no defendants would be left to potentially offer only a half-hearted defense. The case would simply be dismissed. Nor has any defendant announced that it will refuse to defend the rule on the merits.

The court appreciates that movants have a deeply personal interest in the rule's implementation. Obtaining parole under the rule would directly affect foreign nationals' ability to work and live with their family in this country. But that interest is precisely why the executive branch created this program, as its name attests: "Keeping Families Together." 89 Fed. Reg. at 67,459. So this case is in the vein of cases like *Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994), where movants' general observations about the government's institutional interests in running a benefit-granting program that the government created did not trigger a right to intervention by program beneficiaries. There, the observation that the putative intervenors had a more singular interest in receiving affirmative action under the program, while true, did not show any adversity of interest, collusion, or nonfeasance given that the government was strongly defending its program. *Id.* at 605–06. The movants there had a more personalized interest in the program, but the government "adequately represent[ed] that interest." Fed. R. Civ. P. 24(a)(2). The same analysis applies here.

### 2. Permissive intervention

As an alternative to intervention of right, a court may permit intervention by anyone who (A) "is given a conditional right to intervene by a federal statute" or (B) "has a claim or defense that

shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Movants rely on the second prong.

Under that prong, the relevant factors to consider are whether the motion was timely, whether the proposed intervenors are adequately represented by other parties, and whether they are likely to contribute significantly to the development of the underlying factual issues. *LULAC v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). "Intervention under Rule 24(b) is left to the sound discretion of the district court . . . ." *Hopwood*, 21 F.3d at 606.

The motion to intervene here is timely, and movants' defense of the rule would share common issues with the government's defense of the rule. But the same presumption of adequate representation discussed above applies to the permissive-intervention analysis. *LULAC*, 884 F.2d at 189. And rebutting that presumption requires movants to "produce something more than speculation as to the purported inadequacy." *Id.* (quotation marks omitted) (quoting *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)). Movants have not done so, for the reasons given above, so the court concludes that defendants adequately represent movants' interests in this lawsuit.

Movants argue that their permissive intervention will significantly contribute to the full development of facts pertaining to the benefits of parole under the rule. Doc. 15 at 22. But review of federal agency action under the Administrative Procedure Act turns on the administrative record compiled by the agency. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). So any adjudicative facts developed in litigation about the claim of significant public benefit from KFT parole would not affect the merits of the APA claims.

Movants also argue that their permissive intervention will contribute to the full development of facts related to the equitable-relief factors. Doc. 44 at 4–5. But because the federal government is defending this case without any adversity of interest to

movants, movants' intervention would not significantly amplify development of such facts. Rather, as in *Hopwood*, the court "see[s] no indication that the [defendants] would not welcome their assistance" in highlighting any evidence on the matter. 21 F.3d at 606. The court also balances against any possible benefit in that regard the concern that allowing intervention when not properly justified risks detracting from the federal rules' stated goal of speedy and inexpensive determination of the action. *See* Fed. R. Civ. P. 1.

### Conclusion

Proposed intervenors' motion for excess pages (Doc. 14) is granted. Their motion for intervention (Doc. 15) is denied for the reasons given above. As such, the motion to intervene under pseudonyms (Doc. 19) is denied as moot. This denial is without prejudice to renewal should circumstances change.

*So ordered by the court on September 3, 2024.*

J. CAMPBELL BARKER
United States District Judge