# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | CASE NO. 6:24-CV-306-JCB |

**PLAINTIFF STATE OF TEXAS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUESTS FOR DISCOVERY**

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff State of Texas hereby responds to Defendants' First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission ("First Set of Requests for Discovery"). In formulating these responses, Texas relied on the documents and information available at this time. To the extent further documents become available or further information becomes known to Texas, it will supplement or amend its production and responses as required under Rule 26.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Texas objects to Defendants' definition of the term "You" as "The State of Texas, including all its agencies, subdivisions, and officers acting in official capacity." Definition No. 11.

"A party to a cause of action is a person who is both named as a party and subject to the court's jurisdiction." *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987). Texas's executive department is not like the federal executive branch—a complete unit with "one man" wielding the entire executive power to whom all "lesser officers must" be accountable. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (quotations omitted). "[U]nlike the federal constitution, the Texas Constitution does not vest the executive power solely in one chief executive. Instead, the executive power is spread across several distinct elected offices." *In re Abbott*, 645 S.W.3d 276, 280 (Tex.

1

2022). The design creates a "decentralize[d] executive authority." *State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 2012) (Womack, J., concurring).

The Attorney General of Texas, who brought this suit on Texas's behalf, does not have a free-floating executive power to direct State agencies to take any action. Texas's "Executive" is non-unitary to the point where "neither the Governor nor the Attorney General has statutory authority [even] to directly control" the actions of many non-elected departments. *In re Abbott*, 645 S.W.3d at 281.Under Texas law, the Attorney General represents "the state *qua* state and as *parens patriae*." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997). Texas's discovery obligations are limited to information or documents in the possession or control of the Attorney General of Texas.

Additionally, the State of Texas has more than 320,000 full-time employees and thousands more part-time employees spread across the general government, health and human services, public education, higher education, the judiciary, public safety and criminal justice, natural resources, business and economic development, regulatory and other state agencies, the legislature, and the Office of the Attorney General. This extends even more broadly to political subdivisions within the State.

Notwithstanding this objection, the Texas Attorney General represents the responding agencies for purposes of responding to these discovery requests and no responsive materials are being withheld on the basis of this objection.

## INTERROGATORIES

**INTERROGATORY NO. 1:** How many qualifying noncitizens reside in your State, broken down by nationality, whether they are a spouse of a U.S. citizen or a stepchild of a U.S. citizen, and whether they are an adult or minor? Identify any data relied on and methodology used to answer this Interrogatory.

>**RESPONSE:** Neither the Texas Comptroller of Public Accounts nor the Texas Workforce Commission nor the Texas Demographic Center tracks this information.

**INTERROGATORY NO. 2:** How many qualifying noncitizens who reside in your State have committed crimes in your State in the last five years? *See, e.g., Complaint* ¶¶ 84, 110, 131. Identify any data relied on and methodology used to answer this Interrogatory.

>**RESPONSE:** The Texas Department of Criminal Justice does not track this information.

**INTERROGATORY NO. 3:** How many qualifying noncitizens who reside in your State have received healthcare and medical services in the last five years for which some or all of the costs have been paid by your State without reimbursement, and how much money did you spend on such services? Provide data for the relevant period, by year.

>**RESPONSE:** The Texas Health and Human Services Commission does not track this information.

**INTERROGATORY NO. 4:** How many qualifying noncitizens who reside in your State have received state-subsidized public education in the last five years and how much money was spent on providing such services? Provide data by year.

>**RESPONSE:** The Texas Education Agency does not track this information.

**INTERROGATORY NO. 5:** What costs, if any, has your State incurred from providing family and child welfare social services to qualifying noncitizens who reside in your State? Provide data by year.

>**RESPONSE:** Texas objects to this Interrogatory as it is not claiming Article III injury on these bases in this case.

**INTERROGATORY NO. 6:** Given that your State already allegedly incurs costs from providing healthcare and medical services, public education, law enforcement, and family and child welfare social services to "illegal aliens" currently residing in your State, describe how the KFT parole process will increase costs to the State for these programs as alleged in the Complaint. Identify any data relied on and methodology used to answer this Interrogatory.

>**RESPONSE:** Texas objects that this Interrogatory seeks expert opinion and a narrative response. Subject to this objection, as the Court has noted, "the agency's premise for rulemaking is that, without the rule, some of those aliens would depart the country to apply for admission abroad." ECF No. 27 at 4. The KFT parole process will increase the costs of these programs to Texas because, taking the agency's premise above to be true, a non-zero number of the applicable illegal aliens would otherwise leave the country, voluntarily or through removal. If the illegal aliens left the country, Texas would not incur the costs to these programs providing services to these aliens. The KFT parole process is the but-for cause of these costs to Texas.

**INTERROGATORY NO. 7**: Explain what you mean by a "distorted labor market" resulting from an "inability to classify aliens" as alleged in ¶ 203 of the Complaint, and set forth the factual basis for that allegation and explain how it will cause an injury to the "economic well-being" of "lawful workers" in your State. Identify any data relied on and methodology used to answer this Interrogatory.

>**RESPONSE:** Texas objects to this Interrogatory as it seeks expert opinion and a narrative response. Subject to this objection, Texas states that lawful workers, or those legally entitled to work in Texas prior to the KFT parole process, would be harmed as a result of illegal aliens being granted work authorization. If, arguendo, you assumed that the number of jobs remained constant, the KFT beneficiaries would increase the supply of workers vying for those jobs, which would result in lower wages for lawful workers. The KFT parole process distorts the labor market because it arbitrarily and capriciously changes the natural interplay between employers and lawful workers.

**INTERROGATORY NO. 8:** Given that noncitizens are eligible for the KFT parole process only if they have been continuously physically present in the U.S. since June 17, 2024 (for stepchildren of U.S. citizens) or June 17, 2014 (for spouses of U.S. citizens), explain and identify all facts and documents supporting your allegation that the KFT parole process will "incentivize increased illegal immigration" going forward, causing the "harm" to States to "only grow over time." *See, Complaint* ¶ 86.

>**RESPONSE:** Texas objects to this Interrogatory as it seeks expert opinion and a narrative response. Subject to this objection, illegal aliens whose presence would be legalized by the KFT parole process, and eventually granted legal permanent resident status (and ultimately U.S. citizenship) would otherwise be subject to removal. Because they have been unlawfully present in the United States for more than one year, they would be subject to a ten-year bar on reentry. Bars on reentry are strong disincentives for individuals to cross the border unlawful and the risk of receiving such a bar is one of the primary reasons that aliens obey immigration rules against illegal entry. Removing disincentives for a bad behavior is likely to increase the likelihood of that behavior occurring.

Also, schemes by the Executive Branch that legalize the presence of illegal aliens have typically been expanded once blessed by federal courts. The KFT parole process will be reasonably seen by potential migrants as likely to expand if the Defendants are successful in implementing the current rule and the number of migrants paroled increases. This incentivized illegal immigration, as a perception is created among migrants that they are likely to eventually gain some form or parole or amnesty.

**INTERROGATORY NO. 9:** What particular "environmental harm" do you contend has been or will be caused by "illegal immigration," Complaint ¶ 84, and explain what costs, if any, your State has suffered as a result of that injury and how the injury alleged is caused by the KFT parole process. Identify any data relied on and methodology used to answer this Interrogatory.

**RESPONSE:** Texas objects to this Interrogatory as it is not claiming Article III injury on this basis in this case.

**INTERROGATORY NO. 10:** What do you mean by your allegation that "social disorder" has been caused by "illegal immigration," *Complaint* ¶ 84, and explain what costs, if any, your State suffered as a result of that injury and how the injury alleged is caused by the KFT parole process. Identify any data relied on and methodology used to answer this Interrogatory.

**RESPONSE:** Texas objects to this Interrogatory as it seeks expert opinion and a narrative response. Subject to this objection, the negative effects of illegal immigration on social order are manifold. Texas focuses here on four ways. First, the distortion of the labor market discussed in Interrogatory No. 7. If legal residents feel like they are following the rules of society, but the government undermines their ability to earn a living, that can cause social disorder. A second way illegal immigration causes social disorder is by increasing the number of crimes. The fewer the number of crimes committed, the greater the social order. Therefore, increasing the number of crimes committed reduces social disorder. A third way that illegal immigration creates social disorder is that illegal aliens consume government social services intended for legal residents. Illegal aliens consuming social services therefore means either that legal residents must do without social services they otherwise would receive, or additional taxes must be raised on the populace to allocate more funding to social services. If legal residents are either forced to forsake social services to which they are entitled or have their material well-being reduced through taxes to fund social services to those who would not be entitled to them if they were not present in the United States, that causes social disorder. Lastly, illegal immigration by definition violates the laws of our society and thus creates social disorder. *See* Exhibits A–D to the TRO, and documents produced at TEXAS_PIP_000001—TEXAS_PIP_001671(Healthcare: TEXAS_PIP_000001—TEXAS_PIP_000081; Incarceration: TEXAS_PIP_000082—TEXAS_PIP_000731; and Public Education: TEXAS_PIP_000732—TEXAS_PIP_000952).

**INTERROGATORY NO. 11:** Describe your injury with respect to each of your claims for relief

5

in the Complaint, broken down by claim, identifying which documents produced in response to these Requests are responsive to which claim.

> **RESPONSE:** Texas's asserted injuries are the same for all its claims for relief and arise from costs imposed by the presence of aliens in the State in numbers greater than would have been the case without the KFT parole process. *See* Exhibits A–D to the TRO, and documents produced at TEXAS_PIP_000001— TEXAS_PIP_001671(Healthcare: TEXAS_PIP_000001—TEXAS_PIP_000081; Incarceration: TEXAS_PIP_000082—TEXAS_PIP_000731; and Public Education: TEXAS_PIP_000732—TEXAS_PIP_000952).

**INTERROGATORY NO. 12:** Identify all ways in which qualifying noncitizens who reside in your State contribute economic value to your State in any way, tangible and intangible, including but not limited to: paying state income, sales, property, and other taxes, providing labor and employment opportunities, owning homes, and contributing to civic and social causes and initiatives, and specify the amount of money earned from each category.

> **RESPONSE:** Neither the Texas Comptroller of Public Accounts nor the Texas Workforce Commission tracks this information.

**INTERROGATORY NO. 13:** Describe the process of drafting, reviewing, and finalizing your State's annual budget, including approximate timelines for each step, how far in advance an annual budget is finalized, and which budget items in the Fiscal Year 2024 budget would have been different had the KFT parole process been in place at the time it was drafted.

> **RESPONSE:** Texas objects that this Interrogatory is overly broad and unduly burdensome and disproportionate to the needs of the case, as it seeks a description of the entire legislative process for determining Texas's budget. This Interrogatory also calls for speculation in asking what a hypothetical situation would have cause the Texas Legislature to act, as it is contingent on many factors, including the motivations of each member of the State Legislature and whether such a motivation can be attributed to the Legislature as a whole, or motivations within other State agencies outside the control of the Office of the Texas Attorney General. Subject to these objections, Texas directs Defendants to the Texas Comptroller of Public Accounts' description of the legislative process: https://comptroller.texas.gov/transparency/budget/primer.php.

**INTERROGATORY NO. 14:** Explain how granting parole in place to qualifying noncitizens through the KFT parole process "threatens to upend [budget] planning by imposing substantial unexpected liabilities and legal obligations" on your State. *See* TRO Mot. at 30-31.

> **RESPONSE:** Granting parole to "qualifying noncitizens," who are currently considered ineligible aliens, could affect Texas's budget planning by making such persons eligible for state benefits that are otherwise only available to U.S. citizens and certain legally admitted alien residents, including Medicaid. In addition, by granting parole and employment

6

authorization to illegal aliens, it discourages them from returning to their home countries to seek adjustment of their status lawfully, and many who remain in Texas would impose costs on the State through publication, emergency Medicaid, CHIP-Perinatal, and incarceration costs.

**INTERROGATORY NO. 15:** Explain your basis for alleging that the KFT parole process will "drive down the wages of Texas residents, directly harming the State and its citizens," *see, Complaint* ¶ 88, and identify all facts and documentary evidence supporting your allegation.

**RESPONSE:** Texas objects that this Interrogatory seeks expert opinion and a narrative response. Texas further objects on the grounds that this Request seeks information related to purported impacts on wages and workers in Texas, and thus is information equally available to Defendants. Subject it these objections, Texas states that "a primary purpose in restricting immigration is to preserve jobs for American workers." *INS v. Nat'l Ctr. for Immigrants' Rts.*, 502 U.S. 183, 194 (1991) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984)) and reflect "Congress's stated goal of closely guarding access to work authorization and preserving jobs for those lawfully in the country." *Texas v. United States (DAPA)*, 809 F.3d 134, 181 (5th Cir. 2015).

**INTERROGATORY NO. 16:** How many qualifying noncitizens in your State are currently employed, and identify the source data and methodology used to answer this Interrogatory.

**RESPONSE:** Neither the Texas Comptroller of Public Accounts nor the Texas Workforce Commission tracks this information.

**INTERROGATORY NO. 17:** For any Request for Admission that you deny, please explain the basis for your denial and identify any evidence supporting your denial.

**RESPONSE:** The basis for any denials to Requests for Admission are set forth in the Responses to those Requests.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Provide all documents and data that you relied upon to answer the Interrogatories set forth above.

> **RESPONSE:** Texas objects to this Request as it is overbroad and unduly burdensome to the extent it seeks productions of entire databases that are used to obtain data to answer any Interrogatory, as such data would be overly burdensome to produce, and disproportionate to the needs of the case. Defendants will not produce any screenshots or documents generated by databases in response to this document request. Texas also objects to this Request to the extent that those documents are subject to attorney-work product, deliberative process privilege, or attorney-client privileges. Subject to and without waiving the foregoing objections, Texas will construe this Request as seeking the production of documents that were identified or referenced in Texas's Interrogatory Responses. Texas will produce such documents.

**REQUEST FOR PRODUCTION NO. 2:** Provide all documents and data that show the number of qualifying noncitizens who currently reside in your State, and the methodology used to calculate these figures.

> **RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 3:** Provide all documents and data that show the cost to your State from providing unreimbursed medical care to qualifying noncitizens, by year, for the past five years, broken down by the nationality of the noncitizen.

> **RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 4:** Provide all documents and data that support your allegation that the KFT parole process will result in costs to your State from providing SNAP, TANF, and/or S-CHIP, and Medicaid to qualifying noncitizens.

> **RESPONSE:** Texas has no documents specifically regarding "qualifying noncitizens." As to cost to Texas from aliens, Texas will produce documents relating to costs to Texas of providing SNAP, TANF, S-CHIP, and Medicaid.

**REQUEST FOR PRODUCTION NO. 5:** Provide all documents and data that show the cost to your State from providing public education to qualifying noncitizens, by year, for the past five years.

> **RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:** Provide all documents and data that show the cost to your State from providing "other social services," *see Complaint* ¶ 80, to qualifying noncitizens, by year, for the past five years, broken down by the nationality of the noncitizen, and the type of

social service.

**RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 7**: Provide all documents and data that show the cost to your State associated with law enforcement related to qualifying noncitizens, by year, for the past five years.

**RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 8:** To the extent not provided in response to other Requests, provide all documents and data relating to any and all injuries that you allege have been caused, or will be caused, to you by qualifying noncitizens who are paroled in place pursuant to the KFT parole process.

**RESPONSE:** Texas has no documents specifically regarding "qualifying noncitizens." As to injuries to Texas from illegal aliens, s*ee* Exhibits A–D to the TRO, and documents produced at TEXAS_PIP_000001—TEXAS_PIP_001671 (Healthcare: TEXAS_PIP_000001—TEXAS_PIP_000081; Incarceration: TEXAS_PIP_000082—TEXAS_PIP_000731; and Public Education: TEXAS_PIP_000732—TEXAS_PIP_000952).

**REQUEST FOR PRODUCTION NO. 9:** Provide all documents and data that indicate to what extent qualifying noncitizens who have established residence in your State contribute economic value to your State in any way, tangible and intangible, including but not limited to: paying state income, sales, property and other taxes, providing labor and employment opportunities, owning homes, and contributing to civic and social causes and initiatives, by year, for the past five years.

**RESPONSE:** Texas has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 10:** Provide all documents and data that you have used to estimate the cost to your State for expenses incurred on behalf of "illegal aliens" as alleged in the Complaint, and the methodology used to calculate these figures. *See, e.g., Complaint,* ¶ 80.

**RESPONSE:** As to injuries to Texas from aliens, s*ee* Exhibits A–D to the TRO, and documents produced at TEXAS_PIP_000001—TEXAS_PIP_001671(Healthcare: TEXAS_PIP_000001—TEXAS_PIP_000081; Incarceration: TEXAS_PIP_000082—TEXAS_PIP_000731; and Public Education: TEXAS_PIP_000732—TEXAS_PIP_000952).

**REQUEST FOR PRODUCTION NO. 11:** Provide all documents and data, by year, that quantify unemployment in your State for the past five years and all documents that show how unemployment is defined and calculated in your State.

**RESPONSE:** Texas is producing documents responsive to this request at TEXAS_PIP_000953.

**REQUEST FOR PRODUCTION NO. 12:** Provide all documents and data that establish and quantify the number of unfilled employment positions in your State for the past five years, broken down by month and year.

**RESPONSE:** Texas is producing documents responsive to this request at TEXAS_PIP_000953.

**REQUEST FOR PRODUCTION NO. 14:** Provide all documents that demonstrate eligibility, administration, and funding for unemployment benefits in your State.

**RESPONSE:** Texas objects to the Request for "all documents that demonstrate . . . administration . . . for unemployment benefits in your State" as not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. The term "administration" is so broad it would cover any aspect of the unemployment operation. The vast majority of documents returned using the search string "administration AND unemployment benefits" would not be relevant to this case. Additionally, Texas objects to this Request it calls for information that is publicly available or otherwise equally accessible to the Defendants. Much of the eligibility for these programs is set by federal and state statutes. Subject to and without waiving the above objections, Texas is producing documents responsive to this request at TEXAS_PIP_000954—TEXAS_PIP_001671.

**REQUEST FOR PRODUCTION NO. 15:** Provide all documents that demonstrate eligibility, administration, and funding for SNAP, TANF, S-CHIP, and Medicaid in your State.

**RESPONSE:** Texas objects to the Request for "all documents that demonstrate . . . administration . . . for SNAP, TANF, S-CHIP, and Medicaid in your State" as not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. Most documents related to administration of these programs would not be relevant to this case. Additionally, Texas objects to this Request it calls for information that is publicly available or otherwise equally accessible to the Defendants. Much of the eligibility for these programs is set by federal and state statutes. Subject to and without waiving the above objections, Texas is conducting a diligent search and will produce responsive, non-privileged documents related to the eligibility and funding of SNAP, TANF, S-CHIP, and Medicaid in Texas.

**REQUEST FOR PRODUCTION NO. 16:** Provide all documents and data that demonstrate or support your allegation that if the KFT parole process were vacated "some recipients [would] leave," *see, e.g., Complaint,* ¶ 189, thereby reducing costs to your State.

**RESPONSE:** Texas objects that this Request seeks expert opinion and a narrative response. Subject to that objection, Texas directs Defendants to Exhibit A to the TRO.

11

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** You are unable to quantify the cost to your State from the current presence in your State of qualifying noncitizens.

> **RESPONSE:** Texas is unable to admit or deny this Request because it is without sufficient information currently known or reasonably available to it. Specifically, Texas would be able to quantify costs to the State form the current presence of illegal aliens eligible for the KFT parole process if the Defendants provided information to the State of all such aliens present in Texas. As Texas has yet to receive that information, it is unable to determine if it could so quantify that cost.

**REQUEST FOR ADMISSION NO. 2:** You are unable to assess the future cost to your State from the continued presence of qualifying noncitizens paroled in place pursuant to the KFT parole process.

> **RESPONSE:** Texas is unable to admit or deny this Request because it is without sufficient information currently known or reasonably available to it. Specifically, Texas would be able to quantify costs to the State from the current presence of illegal aliens eligible for the KFT parole process if the Defendants provided information to the State of all such aliens present in Texas. As Texas has yet to receive that information, it is unable to determine if it could so quantify that cost.

**REQUEST FOR ADMISSION NO. 3:** You are unable to compare the cost to your State from the presence in your State of qualifying noncitizens to the future cost that qualifying noncitizens paroled in place pursuant to the KFT parole process may cost your State.

> **RESPONSE:** Texas is unable to admit or deny this Request because it is without sufficient information currently known or reasonably available to it. Specifically, Texas would be able to quantify costs to the State form the current presence of illegal aliens eligible for the KFT parole process if the Defendants provided information to the State of all such aliens present in Texas. As Texas has yet to receive that information, it is unable to determine if it could so quantify that cost.

**REQUEST FOR ADMISSION NO. 4:** You have no evidence that you will incur more costs from qualifying noncitizens in your State if they are paroled in place under the KFT parole process than you incurred from the same populations prior to the effective date.

> **RESPONSE:** Texas is unable to admit or deny this Request because it is without sufficient information currently known or reasonably available to it. Specifically, Texas would be able to compare costs to the State form the current presence of illegal aliens eligible for the KFT parole process with costs from such aliens receiving parole if the Defendants provided information to the State of all such aliens present in Texas and information relating to the numbers of such aliens removed from the country or who

12

have emigrated from the country in the past. As Texas has yet to receive that information, it is unable to determine if it could so quantify that cost and provide any such evidence.

**REQUEST FOR ADMISSION NO. 5:** You cannot quantify how much money your State would save, if any, in the absence of the KFT parole processes.

**RESPONSE:** Texas is unable to admit or deny this Request because it is without sufficient information currently known or reasonably available to it. Specifically, Texas would be able to quantify costs to the State form the current presence of illegal aliens eligible for the KFT parole process if the Defendants provided information to the State of all such aliens present in Texas. As Texas has yet to receive that information, it is unable to determine if it could so quantify that cost.

**REQUEST FOR ADMISSION NO. 6:** You do not track unreimbursed medical expenditures specifically related to qualifying noncitizens.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 7:** You do not track unreimbursed educational expenditures specifically related to qualifying noncitizens.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 8:** You do not track unreimbursed family and child welfare service expenditures specifically related to qualifying noncitizens.

**RESPONSE:** Texas objects to this Request as it is not claiming injury on these bases in this case.

**REQUEST FOR ADMISSION NO. 9:** You do not track unreimbursed law enforcement expenditures specifically related to qualifying noncitizens.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 10:** Qualifying noncitizens who reside in your State contribute to the State's economy through their labor, entrepreneurship, and purchase of goods or services.

**RESPONSE:** Texas is unable to admit or deny this Request as it does not track this information.

**REQUEST FOR ADMISSION NO. 11:** If qualifying noncitizens who are granted parole in place under the KFT parole process receive employment authorization, they would be able to contribute to your State's economy through lawful employment and payment of income taxes.

13

**RESPONSE:** Texas objects to this Request as vague because it fails to define "contribute" and whether that involves a balancing test, vague because it fails to define whether "lawfully employed" includes employment authorization pursuant to an unlawful federal program, and calls for speculation based on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas denies that persons granted parole and employment authorization under the KFT parole process would be properly categorized as engaging in "lawful employment." Texas further denies that any of these people would contribute payments of income tax in Texas as there is no such tax in Texas.

**REQUEST FOR ADMISSION NO. 12:** Individuals who are lawfully employed generally impose fewer costs on the State than those who are unable to obtain employment, because those who are employed have access to income and may have access to other employee benefits, such as employer sponsored health insurance.

**RESPONSE:** Texas objects to this Request as vague because it fails to define whether "lawfully employed" includes employment authorization pursuant to an unlawful federal program. Texas also objects that this Request calls for speculation based on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Subject to these objections, Texas denies that individuals lawfully employed in the State generate fewer costs on the State for particular programs than they would if they were removed to or emigrated to their country of citizenship.

**REQUEST FOR ADMISSION NO. 13:** You have not made any changes to State budgeting, programs, or services in response to Defendants' implementation of the KFT parole process.

**RESPONSE:** Texas is unable to admit or deny this Request as it is contingent on many factors, including the motivations of each member of the State Legislature and whether such a motivation can be attributed to the Legislature as a whole, or motivations within other State agencies outside the control of the Office of the Texas Attorney General. There is no information Texas knows or can readily obtain that would be sufficient to enable it to admit or deny this Request.

**REQUEST FOR ADMISSION NO. 14:** The United States can neither detain nor remove all removable noncitizens.

**RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit or deny this Request as it does not have knowledge of the potential resources and capabilities of the United States, and Texas also lacks knowledge of the true number and circumstances of all removable aliens. Any information Texas could know or obtain to admit or deny this Request is within the possession of Defendants.

**REQUEST FOR ADMISSION NO. 15:** Resource constraints, lack of diplomatic relations with certain countries, and security and/or humanitarian concerns in certain countries, are all factors that limit the ability of DHS to remove certain removable noncitizens.

> **RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit nor deny this Request as it does not have knowledge of the potential resources and capabilities of the United States, the possibility of diplomatic relations with certain countries, the security and/or humanitarian concerns in certain countries. Any information Texas could know or obtain to admit or deny this Request is within the possession of Defendants.

**REQUEST FOR ADMISSION NO. 16:** The Secretary of Homeland Security has discretion as to whether to seek the removal of any qualifying noncitizens from the United States.

> **RESPONSE:** Texas objects to this Request as it seeks a pure conclusion of law untied to any facts, *i.e.*, the meaning of the Executive Power and any statutory limits on that discretion.

**REQUEST FOR ADMISSION NO. 17:** You cannot quantify the extent to which the Secretary of Homeland Security, or DHS more generally, would seek to remove, and be able to affect the removal of, any qualifying noncitizens absent the KFT parole process.

> **RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit or deny this Request as it does not have knowledge of information or motives within the mind of the Secretary (or any of his potential successors) and lacks knowledge of the potential resources and capabilities of the United States, and Texas also lacks knowledge of the true number and circumstances of all removable aliens.

**REQUEST FOR ADMISSION NO. 18:** The causes of return migration are difficult to assess, and you have no way to estimate how many, if any, qualified noncitizens would voluntarily return to their home countries if the KFT parole process were terminated.

> **RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit or deny this Request as it does not have knowledge of the potential resources and capabilities of the United States, and Texas also lacks knowledge of the true number and circumstances of all removable aliens. Any information Texas could know or obtain to admit or deny this Request is within the possession of Defendants.

**REQUEST FOR ADMISSION NO. 19:** The causes of return migration are difficult to assess,

and you have no way to estimate how many, if any, qualified noncitizens would seek to obtain lawful status through leaving the country and pursuing consular processing if the KFT parole process were terminated.

>**RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit or deny this Request as it does not have knowledge of the potential resources and capabilities of the United States, and Texas also lacks knowledge of the true number and circumstances of all removable aliens. Any information Texas could know or obtain to admit or deny this Request is within the possession of Defendants.

**REQUEST FOR ADMISSION NO. 20:** Social ties in the United States, including lengthy duration of residence in the United States, marriage to a U.S. citizen, and having U.S. citizen children or stepchildren, deter noncitizens in the United States from emigrating back to their countries of origin.

>**RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Texas is also unable to admit or deny this Request as it does not have knowledge of the potential resources and capabilities of the United States, and Texas also lacks knowledge of the true number and circumstances of all removable aliens. Any information Texas could know or obtain to admit or deny this Request is within the possession of Defendants.

**REQUEST FOR ADMISSION NO. 21:** Qualifying noncitizens are statutorily ineligible for SNAP, TANF, S-CHIP, or Medicaid, and other than certain Cubans, Haitians, Ukrainians, and Afghans, qualifying noncitizens would not become eligible for such benefits for five years after obtaining parole or lawful status.

>**RESPONSE:** Texas objects to this Request as it seeks a pure conclusion of law untied to any facts, *i.e.*, the meaning of the provisions of federal statutes setting forth qualifications for certain benefits.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

*/s/Ryan D. Walters*
**RYAN D. WALTERS**
Chief, Special Litigation Division
Texas Bar No. 24105085
Ryan.Walters@oag.texas.gov

**KATHLEEN T. HUNKER**
Special Counsel
Texas Bar No. 24118415
Kathleen.Hunker@oag.texas.gov

**GARRETT GREENE**
Special Counsel
Texas Bar No. 24096217
Garrett.Greene@oag.texas.gov

Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100
Fax: 512-457-4410

**GENE P. HAMILTON**
Virginia Bar No. 80434

**JAMES ROGERS**
Arizona Bar no. 027287

**RYAN GIANNETTI**
DC Bar no. 1613384

America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
Gene.Hamilton@aflegal.org
James.Rogers@aflegal.org
Ryan.Giannetti@aflegal.org

**COUNSEL FOR PLAINTIFF**
**STATE OF TEXAS**

### CERTIFICATE OF SERVICE

I certify that on September 3, 2024, a true and accurate copy of the foregoing document was served via email to all counsel of record.

*/s/Ryan D. Walters*
RYAN D. WALTERS

17