**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| *Plaintiffs*, | |
| v. | No.: 6:24-cv-00306 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

**PROPOSED INTERVENORS' RENEWED MOTION TO INTERVENE AS
DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... 3

INTRODUCTION ........................................................................................................... 4

BACKGROUND ............................................................................................................ 5

    I.    THE KEEPING FAMILIES TOGETHER PAROLE PROCESS ................................... 5

    II.    PROPOSED INTERVENORS ................................................................................. 6

SUMMARY OF ARGUMENT ....................................................................................... 7

ARGUMENT ................................................................................................................. 7

    A.   Proposed Intervenors Are Entitled to Intervention as of Right Because Their Interests
        Are Inadequately Represented by Federal Defendants, and the U.S. Citizen Spouses
        have Legally Protectable Interests. ................................................................. 7

      i.   Existing Parties Inadequately Represent Intervenors' Interests................................. 8

      ii.    Proposed Intervenors Possess Legally Protectable Interests. ............................... 18

    B.   Proposed Intervenors Also Meet the Permissive Intervention Requirements............. 20

CONCLUSION .............................................................................................................. 23

CERTIFICATE OF SERVICE ....................................................................................... 25

CERTIFICATE OF CONFERENCE ............................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ............................................................. 10, 12, 13

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984) ....................................................................... 13, 16

*Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160 (D.D.C. 2017) ...................................................... 22

*Cibolo Waste, Inc. v. San Antonio*, 718 F.3d 469 (5th Cir. 2013) ................................................ 14

*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) ........................................................................ 14

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) ......................................................................... 22

*Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536 (5th Cir. 2022) ........................... 12

*In re Oscar Silva Perez*, No. 24-40671 (5th Cir. Oct. 11, 2024) ......................................... 7, 9, 12

*Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872 (5th Cir. 2023) ...................... 14

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .................................................... 21

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ...................................................................... 10

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ............................................................................. 22

*Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Oct. 4, 2024) ................... 7, 13, 21, 22

*Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024) ............................................................................................................................ 14, 15

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) ................................................................. 22

*Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) ................................................................. 22

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ......................................................... passim

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016) ..... 8, 19

*Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020) ....................................................................... 19

**Statutes**

8 U.S.C. § 1154(a)(1)(A)(i) ......................................................................................................... 19

8 U.S.C. § 1255(a) ...................................................................................................................... 20

**Other Authorities**

Alina Das, *Standing on Immigrant Subordination*, 72 Am. U. L. Rev. F. 147 (2023) ................ 13

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8304 (2d ed.) ...... 22

Implementation of Keeping Families Together Reg. 67459 (Aug. 20, 2024) ................................ 5

**Rules**

Fed. R. Civ. P. 24(a), (b) ...................................................................................................... passim

**INTRODUCTION**

Oscar Silva Perez, Natalie Taylor, Salvador Doe, Justin Doe,[1] Carmen M. Miranda Zayas, Ricardo Ocampo Hernandez, Jessika Ocampo Hernandez, Foday Turay, Jaxhiel Turay, Genaro Vicencio Palomino, and Cindy Siqueiros Maduena ("Proposed Individual Intervenors"), and the Coalition for Humane Immigrant Rights ("CHIRLA") ("Proposed Organizational Intervenor") on behalf of its members (collectively, "Proposed Intervenors") renew their motion to intervene in this litigation as beneficiaries of the Keeping Families Together Parole process (hereinafter "Keeping Families Together Parole" or "KFT Parole"). *See* Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459 (Aug. 20, 2024). This Court previously found they met most requirements for intervention under Rule 24 as of right or, alternatively, permissively. *See* Fed. R. Civ. P. 24(a), (b).  Yet, it denied their motion solely based on what it perceived to be adequate representation by Federal Defendants. *See* Op. and Order, ECF No. 49. Still, the Court left open the possibility of "renewal should circumstances change." *Id.* at 9.

Circumstances have since changed. Recent developments confirm Proposed Intervenors' eligibility for intervention. The narrow issue now is whether Proposed Intervenors' interests are still adequately represented by Federal Defendants, given the Court's prior findings. To that end, Proposed Intervenors renew their motion to intervene as defendants and incorporate by reference their prior motion and briefing on intervention. *See* Mot. to Intervene, ECF Nos. 15, 44.[2]

---

[1] A motion for leave of the Court for Salvador Doe and Justin Doe to proceed under pseudonyms is being filed concurrently.

[2] In the alternative, should the Court deny Proposed Intervenors' renewed motion to intervene, Proposed Intervenors intend to participate as *amici* and request that the exhibits that accompany this renewed motion to intervene be included as part of the record.

## BACKGROUND

### I.  THE KEEPING FAMILIES TOGETHER PAROLE PROCESS

On August 19, 2024, the Department of Homeland Security ("DHS") posted for public inspection a Federal Register Notice implementing KFT and began accepting applications. On August 23, sixteen states led by Texas ("Plaintiffs") filed a complaint seeking to enjoin the process and declare it unlawful. Compl., ECF No. 1.

The next business day, August 26, Proposed Intervenors filed their first motion requesting intervention in the lawsuit to defend KFT Parole alongside the Federal Defendants. Mot. to Intervene, ECF No. 15. Later that same day, this Court issued an "administrative stay" that enjoined the federal government from granting parole under the KFT Parole process. Order, ECF No. 27. Days later, the Court denied intervention. Op. and Order, ECF No. 49. The Court reasoned that although Proposed Intervenors met three of the four requirements for intervention as of right under Rule 24(a), their interests were adequately represented by Federal Defendants. *Id.* at 3-7. The Court noted, however, that some of the Proposed Intervenors, namely the U.S. citizen spouses, did not meet the "protectable interest" requirement because they are not direct beneficiaries of KFT Parole. *Id.* at 3.

The Court denied permissive intervention under Rule 24(b) for similar reasons, adding that any development of the record by Proposed Intervenors would not affect the merits of Plaintiffs' claims under the Administrative Procedure Act ("APA") because of the record rule. *See id.* at 8 ("[T]he same presumption of adequate representation discussed above applies to the permissive-intervention analysis.").

The Proposed Intervenors promptly appealed their denied intervention on an expedited basis to the Fifth Circuit Court of Appeals. On October 4, 2024, the Fifth Circuit affirmed the district court's intervention denial without additional analysis and lifted its extension of the district

court's administrative stay. Unpublished Op., *Texas v. Dep't of Homeland Sec.* ("*KFT Appeal*"), No. 24-40571 (5th Cir. Oct. 4, 2024) (per curiam), ECF No. 111-1. It, too, noted that the motion could be renewed. *See id.* ("The denial of intervention was without prejudice"). Less than two hours later, this Court reinstated and extended its administrative stay on KFT Parole grants through November 8, 2024. Order 3, ECF No. 69. The Proposed Intervenors filed a still-pending petition for a writ of mandamus and motion seeking to lift this "administrative stay" with the Fifth Circuit that was opposed by both Plaintiffs and the Federal Defendants. *See* Pet. for Writ of Mandamus, *In re Oscar Silva Perez*, No. 24-40671 (5th Cir. Oct. 11, 2024), ECF No. 3-1. Late on October. 21, 2024, Proposed Intervenors filed an application with Justice Alito requesting that he stay this Court's "administrative stay" pending the Fifth Circuit's resolution of the mandamus petition; that application has not yet been docketed.

## II.  PROPOSED INTERVENORS

Proposed Intervenors incorporate by reference the detailed interests of each proposed intervenor as outlined in their original motion. Mot. 6-10, ECF No. 15. But by way of summary, they represent a diverse group of families whose lives would be profoundly affected by KFT Parole's full implementation. Oscar Silva Perez and Natalie Taylor, a young couple from Texas, seek stability and career growth. Salvador and Justin Doe, an LGBTQ+ couple in Pennsylvania, hope for security from potential dangers in Mexico. Carmen M. Miranda Zayas relies on her husband Francisco's care due to her medical conditions. The Ocampo Hernandez family in Nevada aims to maintain unity and stability for their children. Foday Turay, a Philadelphia resident and local prosecutor, wishes to continue his legal career without separation from his wife Jaxhiel and their young son. Genaro Vicencio and Cindy Siqueiros, a young family from Pennsylvania, hope that KFT Parole will bolster their economic growth and family stability. Finally, CHIRLA, a California nonprofit, represents numerous members who have applied for KFT Parole and seek

the safety of knowing their families will not be separated.

## SUMMARY OF ARGUMENT

The Court's previous denial of intervention as of right rested on one ground: adequate representation by Federal Defendants. But subsequent developments have decisively established an adversity of interests between Proposed Intervenors and Federal Defendants. Federal Defendants have taken legal positions detrimental to Proposed Intervenors. Among other things, they have suggested that Texas could avoid various alleged fiscal harms by changing state laws designed to protect individuals like some of the Proposed Intervenors. Crucially, both this Court and Texas earlier indicated that this kind of stance, if adopted, would demonstrate adversity. Federal Defendants additionally have made other decisions that are detrimental to the distinct and personal interests of the Proposed Intervenors. This includes the decision to: (a) not challenge this Court's most recent and ongoing thirty-five-day injunction preventing the Federal Defendants from granting KFT parole to the individual Proposed Intervenors and the members of CHILRA, if warranted; and (b) oppose the Proposed Intervenors' emergency motion to the Fifth Circuit requesting a stay of this Court's "administrative stay." These developments satisfy the final requirement for intervention as of right and likewise obviate any obstacle to permissive intervention.

## ARGUMENT

### A. Proposed Intervenors Are Entitled to Intervention as of Right Because Their Interests Are Inadequately Represented by Federal Defendants, and the U.S. Citizen Spouses have Legally Protectable Interests.

As noted earlier, the Court previously found that Proposed Intervenors satisfied three of

the four factors required to qualify for intervention as of right.[3] Consequently, the discussion below will focus on how Proposed Intervenors demonstrate they are entitled to intervention as of right because their interests are inadequately represented by Federal Defendants, and that the U.S. citizen Proposed Intervenors do have legally protectable interests.

### i.    Existing Parties Inadequately Represent Intervenors' Interests.

In denying the Proposed Intervenors' last motion for intervention, the Court applied a presumption that the Federal Defendants would provide adequate representation after finding that the Proposed Intervenors shared the same "ultimate objective" in the litigation as the Federal Defendants, and then concluded that the Proposed Intervenors were unable to overcome that presumption. Op. and Order at 3-4, ECF No. 49.

But given recent developments, this presumption no longer applies. About eleven days ago, Proposed Intervenors sought emergency relief from the Fifth Circuit of this Court's order enjoining the Federal Defendants from granting parole under the KFT Parole process, which is preventing the Proposed Intervenors' own requests from being adjudicated and possibly granted. Petition for Writ of Mandamus, *In re Oscar Silva Perez.*, No. 24-40671 (Oct. 11, 2024), ECF No. 3. The Proposed Intervenors pursued this relief because their singular focus in this litigation is in keeping their families together and becoming eligible to request work authorization. Despite agreeing with the Proposed Intervenors on their legal objection to the ongoing injunction, the Federal Defendants opposed the emergency motion because the Solicitor General's "broad" outlook on litigation better

---

[3] *See* Op. and Order 2-3, ECF No. 49. As explained in Proposed Intervenors' original motion, nonparties may intervene as of right where (1) the application is timely; (2) the proposed intervenors "have an interest relating to the property or transaction which is the subject of the action"; (3) they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest"; and (4) their interests are "inadequately represented by the existing parties to the suit." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citations omitted); Fed. R. Civ. P. 24(a)(2).

positions her to "evaluate the overall costs and benefits of pursuing a particular appeal than [ ] others with more 'parochial view[s]' of a given case." Fed. Gov.'s Resp. to Pets.' Emergency Mot. for Stay of D. Ct.'s Order 15, *In Re Oscar Silva Perez*, No. 24-40671 (Oct. 15, 2024), ECF No. 43 (second alteration in original). There can be no clearer statement evidencing that the extensive interests being balanced by the Federal Defendants are in clear tension with the narrow and deeply personal interests of the Proposed Intervenors. *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) ("[I]t is not evident that the ultimate-objective presumption of adequate representation even applies because the state has more extensive interests to balance than do the [intervenors]."). Proposed Intervenors predicted this. *See* Motion to Intervene 10-11, 18, ECF No. 15.

As Proposed Intervenors' and Federal Defendants' interests "may not align precisely," *Brumfield*, 749 F.3d at 345, all Proposed Intervenors need demonstrate is that representation by Federal Defendants *may* be inadequate, and the "lack of unity in all objectives" is sufficient to meet that minimal burden. *Id.* at 346; *see also Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (holding that representation by the federal government did not adequately represent the interests of timber trade associations because the government "must represent the broad public interest, not just the economic concerns of the timber industry").

That lack of unity has now been demonstrated in four key areas.

***First***, to challenge Texas's standing, the Federal Defendants took the position—both at this Court after Proposed Intervenors' first intervention attempt and at the Fifth Circuit—that some of the alleged costs that Texas claims it will incur because of KFT Parole stem from its own legislative choices. Defs.' Mot. to Vacate Admin. Stay at 23, ECF No. 47 ("[T]o the extent there are any costs for public higher education or other benefits provided to paroled noncitizens, those costs are attributable to the States' own choices concerning eligibility for in-state resident tuition

or participation in certain benefit programs."); Defs.-Appellees' Mot. to Vacate Ext. of D. Ct. Stay at 16-17, 19 ("Defs.-Appellees' Mot. to Vacate"), *KFT Appeal*, ECF No. 90 ("[A] State cannot sue the federal government based on the indirect effect of federal policies regulating the people within the State, including when the State responds by making additional expenditures."). By arguing that costs allegedly incurred by Texas, such as healthcare expenses and college tuition for immigrants, are incurred by Texas because of its own state laws, the Federal Defendants have effectively extended an invitation to Texas to modify these laws. This strategic legal argument shows how Federal Defendants' objectives are manifesting themselves in their legal positions in a way directly adverse to the interests of Proposed Intervenors, who oppose any threat to vital state-level protections that benefit Proposed Intervenors, including Oscar Silva (a Texas resident). Silva Decl., ECF No. 15-1.

This Court has already ruled that, in line with binding precedent, such litigation positions suffice to prove adversity of interests. Op. and Order at 5, ECF No. 49 (distinguishing this matter from *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015), the DAPA intervention case, where the decision was animated by the "driver's license argument" that Federal Defendants made "that conflict[ed] with movants' interests.").[4] Federal Defendants' argument here mirrors the argument they made in the DAPA intervention case. *Texas*, 805 F.3d at 663 ("[T]o undermine the States' standing argument, the [federal] Government has taken the position that the States may refuse to issue drivers' licenses to deferred action recipients.").

***Second***, other positions taken by Federal Defendants further reveal the misalignment

---

[4] Texas itself sought to distinguish this case from the DAPA Intervention case on the grounds that Federal Defendants there had suggested that any costs Texas bore as a result of DAPA was a product of its own choices. Pls.' Opp'n to Proposed Intervenors' Mot. to Intervene as Defs. 7, ECF No. 42.

between their and Proposed Intervenors' interests. In addition to not filing their own interlocutory appeal to challenge this Court's ongoing injunction, the Federal Defendants opposed Proposed Intervenors' emergency motion to stay that injunction—despite agreeing that the "administrative stay" is unlawful. They rationalize this stance by arguing that "the district court's order does not harm [the Proposed Intervenors] in a manner that could not be remedied through other available means." Federal Government's Resp. to Pet'rs' Emergency Mot. for Stay of District Ct.'s Order, *In re Oscar Silva Perez*, No. 24-40671 (Oct. 15, 2024), ECF No. 43 at 3. This view fails to recognize that complying with the injunction and leaving it unchallenged necessarily means forgoing the opportunity to seek immediate relief that is in the direct interest of Proposed Intervenors. *Cf. Brumfield*, 749 F.3d at 345-46 (explaining federal government's compliance with preliminary injunction that was detrimental to intervenor sufficed to show it was acting contrary to the interests of intervenors). In simplest terms, the parties' divergent positions highlight that while Federal Defendants are rightly concerned about the question of whether they have the power to administer KFT Parole as a legal matter, they can wait months, if not years, for such a resolution as they balance other competing interests. But for Proposed Intervenors, every day without KFT Parole is another day of instability—another day of "living in limbo"—especially after long-awaited relief was finally within reach. Ricardo Ocampo Declaration ("R. Ocampo Decl.") 5, ECF No. 15-6; *see also* Silva Decl. 6, ECF No. 15-1 ("I feel like we are living our lives in six-month increments . . . [It] makes it impossible to plan our careers and our futures."). Accordingly, their independent pursuit to immediately lift this court's "administrative stay" is not merely a difference in tactics. It represents a fundamental divergence in their assessment of urgency and the human cost of delay. *Cf. Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536, 546-47 (5th Cir. 2022) (proposed intervenors could not show how an existing party's "chosen defense strategy is

uniquely favorable to their own interests while placing those of the [proposed intervenors] in jeopardy.").

*Third*, recent developments have shown that Proposed Intervenors and Federal Defendants have divergent views on the appropriate geographic scope of any injunctive relief that the Court may issue. Specifically, if the Court were to decide that a permanent injunction is appropriate, the Federal Defendants would accept an injunction geographically limited to Texas. Defs.' Trial Br. and Mot. for Summ. J. at 69-71, ECF No. 77; Defs.-Appellees' Mot. to Vacate at 21-23, *KFT Appeal*, ECF No. 90. Federal Defendants' openness to a geographically limited injunction may be an attempt to salvage KFT Parole in other parts of the country, which reflects its competing priorities. *Brumfield*, 749 F.3d at 346. But it reflects a calculus that is directly adverse to Proposed Intervenors' interests, including Oscar and his wife, Natalie, who are Texas residents. As such, Proposed Intervenors would argue forcefully against *any* injunctive relief. *See Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984) (noting that inadequate representation may be found in suits "in which it is clear that the applicant will make a more vigorous presentation of arguments than existing parties.").

Furthermore, a fundamental disagreement on the issue of standing represents another profound legal divergence between Proposed Intervenors' and Federal Defendants' positions. As a threshold matter, Proposed Intervenors refute the notion that states can claim fiscal injuries based on their legal obligations to offer equal protection to its residents regardless of immigration status. *Compare* Compl. ¶ 186, ECF No. 1 (alleging financial injury because Plaintiffs "must spend money on government programs and services" for noncitizens present in their states); *with* Alina Das, *Standing on Immigrant Subordination*, 72 Am. U. L. Rev. F. 147, 149 (2023) (arguing that "acceptance of the immigrant-as-injury theory permits an end-run around Equal Protection

itself."). By contrast, Federal Defendants concede that such state responsibilities may be costs, but they are insufficient for standing because they are permissible "indirect effects" of federalism and a byproduct of legislative and policy choices adopted by Texas and other Plaintiff States. Defs.-Appellees' Mot. to Vacate at 15-19, *KFT Appeal*, ECF No. 90.

*Fourth*, Proposed Intervenors have a manifestly distinct theory of Texas's (lack of) standing from that which Federal Defendants propound. Texas frames its theory of injury as "increased incentive for [undocumented noncitizens] to remain in the United States," arguing that individuals "currently subject to [KFT] would be removable if [KFT] were vacated, providing incentives for some if not many to leave the United States, including Texas," so that their departure would reduce Texas's costs. Pls.' Mot. for TRO, Prelim. Inj., Stay of Agency Action at 48 ECF No. 3 (internal quotation marks and citation omitted). Federal Defendants argue at length that a possible termination of KFT won't result in a net decrease in presence of otherwise-eligible individuals, because ultimately, Federal Defendants have discretion as to whom to remove and when to remove them, and have no plans to remove individuals who are not priorities for enforcement. Defs.' Mot. to Vacate Admin. Stay, at 13-16, 19-21, ECF No. 47. And in any regard, Federal Defendants argue, there are fatal issues of speculation and attenuation. *Id.* at 41-43

While Federal Defendants refute Texas's *conclusions* as to harm, Proposed Intervenors contest the premise itself. That is, even *if* Texas's alleged costs were cognizable, the number of self-deportations or removals is the wrong metric to measure irreparable harm. "To show irreparable harm, Texas's preexisting irreparable costs must *increase* due to Keeping Families Together . . . ." Amicus Br. in Supp. of Defs.' Mot., at 12, ECF No. 52. Yet Texas does not allege

that Keeping Families Together will increase these costs, as required to show injury.[5] Instead, Texas claims that its *preexisting* costs will *decrease* if individuals eligible for the process become so discouraged in its absence that they decide to uproot their lives and extricate themselves from the country they have called home for an average of a quarter-century. *Id.* At 9. Here, Proposed Intervenors offer "real and legitimate additional or contrary arguments," *Texas*, 805 F.3d at 662, in a matter central to the viability of the case—standing. This alone is "sufficient to demonstrate that the representation may be inadequate," *id.*, and without regard to how this Court might rule on the ultimate standing question if presented with it later in the case.

Moreover, Proposed Intervenors also offer unique evidence refuting standing that Federal Defendants are unlikely to introduce. Proposed Intervenors previously filed twelve declarations on behalf of the individual proposed intervenors and CHIRLA. Proposed Intervenors' five expert and fact declarants attached as exhibits to this motion now demonstrate that Texas has failed to meet its burden of establishing harm and redressability (such as by causing some number of noncitizens to "self deport" absent KFT Parole). This evidence will likely not be entered in the record otherwise. In fact, to date, Federal Defendants have offered no such evidence in support of their trial brief and motion for summary judgment, further bolstering adversity. *See* Defs.' Trial Br. & Mot. for Summ. J., ECF No. 77 (citing only to exhibits that concern discovery and declarations

---

[5] *See, e.g., Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) ("Mississippi's alleged fiscal injury was purely speculative because there was no concrete evidence that Mississippi's costs had increased or will increase as a result of DACA."); *Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) (finding that standing through a strain on state resources "is necessarily contingent on a finding that the Final Rule will increase [the state's] enforcement costs"); *Cibolo Waste, Inc. v. San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013); *see also Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068, at *16 (S.D. Tex. Mar. 8, 2024) ("[W]hen deciding whether a state has been injured . . . the Fifth Circuit reviews whether the numbers of [noncitizens], and the associated amount expended because of them, increased relative to those same numbers prior to the implementation of the challenged program.").

that Texas offers, originating from cases challenging separate and different immigration processes). Additionally, in Texas's recent lawsuit against the parole processes for certain nationals of Cuba, Haiti, Nicaragua, and Venezuela—which Judge Drew B. Tipton of the Southern District of Texas dismissed for lack of standing—the intervenor defendants (represented by many of the same undersigned counsel) introduced more than twenty fact and expert declarations on issues of standing, relief, and the historical use of the statutory parole authority. Intervenor Defs.' Opp'n to Pl. States' Mot. for Permanent Nationwide Inj., *Texas v. United States*, No. 6:23-CV-00007 (S.D. Tex. June 20, 2023), ECF No. 175-52-76. None of these duplicated anything presented by the federal government. When Texas introduced declarations in that case—as they have done here—pertaining to alleged education, law enforcement, and healthcare costs, only intervenor defendants introduced expert declarations disputing Texas's claims. Not only would the declarations and evidence Proposed Intervenors plan to submit here constitute "real and legitimate additional or contrary arguments," *Texas*, 805 F. 3d at 662, but they also demonstrate an instance where Proposed Intervenors "will make a more vigorous presentation of arguments than existing parties." *Viterna*, 740 F.2d at 357.

The five expert and fact declarations Proposed Intervenors now put forth as evidence are as follows:

- Expert declaration of Dr. Leighton Ku ("Ku Decl."), Exh. 1, addressing Texas's claims about its alleged increased healthcare-related costs;

- Expert declaration of Dr. Charis Kubrin ("Kubrin Decl."), Exh. 2, addressing Texas's claims about its alleged increased crime and incarceration-related costs;

- Expert declaration of Dr. Patricia Gándara & Dr. Gary Orfield ("Gándara & Orfield Decl."), Exh. 3, addressing Texas's claims about its alleged increased education-related

costs;

- Expert declaration of Dr. Robert Courtney Smith ("Smith Decl."), Exh. 4, addressing Texas's claims regarding the likelihood that intended beneficiaries of the KFT Parole process would leave the United States if it was permanently enjoined; *and*

- Fact declaration of Debra Rogers ("Rogers Decl."), Exh. 5, describing the military parole-in-place policy that serves as a model for the KFT Parole process.

As explained by Dr. Robert Courtney Smith, the evidence offered by Texas and their expert declarant, Dr. Lloyd Potter, provides no support for their claim that any KFT beneficiaries will leave the United States if KFT is permanently enjoined. On the contrary, research indicates that individuals like KFT beneficiaries—immigrants without lawful status who have lived in the United States for many years and have formed deep ties in their community, including through marriage to a U.S. citizen spouse and often as parents to children who are also frequently U.S. citizens—are extremely unlikely to depart the country even temporarily, let alone permanently. Smith Decl. ¶¶ 19-27, 35-39. Critically, as Dr. Smith explains, much of Texas's evidence to support its "self-deportation" theory is either irrelevant or inapposite, including its expert's reliance on studies that do not purport to estimate a return rate for undocumented immigrants (let alone well-settled undocumented immigrants such as those who make up the KFT population), a 1979 study that catalogued the interstate travel choices of young, non-Hispanic white males (presumably citizens) to infer KFT beneficiaries' migration choices, and a single online survey question of DACA recipients that, among other things, "provides little reliable evidence that any survey respondent had a serious intent to leave the country. *Id*. at ¶¶ 12-18, 28-34. Indeed, as Dr. Smith notes, it does not even make logical sense that "blocking parole in place, which the KFT population does not now enjoy, has never enjoyed, and may have little knowledge of, will change their future behavior,

and cause them to abandon the lives with their spouses and children they have developed over decades." *Id*. at ¶ 45. Moreover, contrary to Texas's theory and as explained by Dr. Leighton Ku, if KFT Parole is allowed to be fully implemented, Texas's alleged healthcare costs are likely to *decrease* rather than increase. Ku Decl., ¶¶ 14-18; *see also* Gándara & Orfield Decl. ¶¶ 18-25 (explaining that between major federal government compensatory education funds for low-income students and the educational and workforce benefits of investing in education, and particularly in fluent bilingual skills, Texas is ignoring "substantial financial returns for the state"); Kubrin Decl. ¶ 25 (concluding that "based on the collective research, including studies conducted in Texas specifically, immigrants, including undocumented immigrants, are disproportionately less likely to engage in crime compared to their native-born counterparts and increases in immigration are not associated with crime increases").

Finally, Proposed Intervenors likewise offer "additional or contrary" and "more vigorous presentation of arguments" regarding both the balance of harms and public interest elements for injunctive relief. Federal Defendants articulate general harms to "core concerns of the executive branch" such as "public safety, obtaining international cooperation with migration and law enforcement efforts, managing its backlog and limited resources, and preserving family unity." Defs.' Mot. at 56, ECF No. 47. Proposed Intervenors, on the other hand, painstakingly detail the various ways that (a) harm to Proposed Intervenors outweigh Texas's attenuated and speculative claims to harm, Amicus Brief in Support of Defs.' Mot. at 13-16, ECF No. 52; and (b) halting Keeping Families Together Parole undermines the public interest, *id*; *see also* Mot., to Intervene at 6-10, ECF No. 15. Likewise, here, Proposed Intervenors raise arguments either that the federal government has *not* otherwise made; or offer detail, context, and experience that it is not *able* to make.

As time has passed in this litigation, it has become apparent that Federal Defendants do not and cannot adequately represent Proposed Intervenors' interests. Intervention is essential for the Court to have a complete understanding of the issues at stake and to ensure, as always, that "greater justice [is] attained." *Texas*, 805 F.3d at 657.

### ii.  Proposed Intervenors Possess Legally Protectable Interests.

The Court should also take this opportunity to correct its error in its original order on intervention, namely its finding that Proposed Intervenors who are U.S. citizens do not have a legally protectable interest in KFT Parole's implementation.

To satisfy Rule 24(a), intervenors must show a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657-58 (citation omitted). "[A]n interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Id.* at 658. Intervenors must demonstrate "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* at 657. Intervenors' interests need not give rise to Article III standing: "[A]n interest is sufficient if it is of the type that the law deems worthy of protection." *Wal-Mart Stores*, 834 F.3d at 566 (citation omitted).

The Court has already recognized the compelling and personal interests of all Proposed Intervenors. *See* Op. and Order at 7, ECF No. 49 ("The Court appreciates that movants have a deeply personal interest in [KFT Parole's] implementation."). But in its previous order, the Court found that the interests of Proposed Intervenors who are U.S. citizens did not meet the standard for intervention, because they are not "potential recipients of parole . . . [and] have not shown any inability of their foreign national spouses to represent their own interests . . . ." *Id.* at 3. As an initial matter, Proposed Intervenors who are U.S. citizens are not legally required to show that their noncitizen spouses are unable to represent their own interests. *Cf. Texas v. U.S.*, 805 F.3d 660-61

(distinguishing between what constitutes a protected interest and the separate requirement of whether an *existing* party inadequately represents that interest). Nonetheless, the Court's finding that Proposed Intervenors who are U.S. citizens do not have legally protectable interests was incorrect for two reasons.

*First*, although the U.S. citizen spouses are not the ones directly applying for KFT Parole, their legal interests are inextricably linked to its fate, and they directly benefit from the process and grants of parole. Many of these U.S. citizen spouses have filed family-based petitions for their non-citizen spouses to obtain green cards based on federal law. *See e.g.*, Declaration of Salvador Doe ("Salvador Decl.") at 6, ECF No. 15-4; Declaration of Carmen M. Miranda Zayas ("Miranda Decl.") at 6, ECF No. 15-5; Declaration of Cindy Siqueiros ("Siqueiros Decl.") at 4, ECF No. 15-11. Federal law vests these citizens with unique rights and a direct legal interest in the adjudication of these petitions. 8 U.S.C. § 1154(a)(1)(A)(i) (explaining petition process); *Zerezghi v. USCIS*, 955 F.3d 802, 808 (9th Cir. 2020) (recognizing "[i]mmediate relative status for [a noncitizen] spouse is a right to which citizen applicants are entitled"). KFT Parole's full implementation significantly impacts this petition process by enabling the citizen spouse's petition to be adjudicated through the adjustment of status process. 8 U.S.C. § 1255(a). This matters because: (i) KFT Parole may be their noncitizen spouse's most, or only, feasible option for satisfying the "inspected and admitted or paroled" prerequisite for adjustment of status; and (ii) it eliminates the specter of prolonged family separation and the costs that accompany consular processing.

*Second*, if the noncitizen spouses are granted KFT parole, U.S. citizen Proposed Intervenors also stand to benefit in tangible, life-changing ways that support intervention. The economic benefits conferred by KFT extend beyond the parole recipient, as the Court seems to have acknowledged. Op. and Order at 7, ECF No. 49 ("Obtaining parole under the rule would

19

directly affect foreign nationals' ability to work and live with their family in this country."). Proposed Intervenors' situations provide concrete examples: a grant of KFT parole would make Oscar eligible to request employment authorization for the first time, which would allow him to seek a job after finishing graduate school and relieve the burden on his wife, Natalie, who is currently their family's sole breadwinner and who has delayed her dream of pursuing a graduate degree in science. *See* Declaration of Oscar Silva ("Silva Decl.") at 3-4, ECF No. 15-1; Declaration of Natalie Taylor ("Taylor Decl.") at 4-5, ECF No. 15-2. KFT parole recipients' lawful immigration status and ability to live free from fear of removal would also have concrete and meaningful benefits for their U.S. citizen spouses. Carmen—a little person with Multiple Sclerosis—depends on her noncitizen spouse, Francisco, for help with daily tasks. *See* Miranda Decl. at 5, ECF No. 15-5. His protection from deportation would allow her to feel "more stable and secure" knowing she will not have to be without the person who has been her primary source of physical, financial, and emotional support for over three decades. *Id.* at 9. Clearly, all Proposed Intervenors, noncitizen and U.S. citizen alike, have the direct, substantial, and legally protectable interest required for intervention.

## B.  Proposed Intervenors Also Meet the Permissive Intervention Requirements

Even if this Court still finds that Proposed Intervenors do not meet the standard for intervention as of right, it should exercise its discretion to grant permissive intervention under Federal Rule of Civil Procedure 24(b). Given the course of litigation in this case, the Court now has more insight into the parties' positions and interests to address its original concern that permissive intervention was unwarranted because Proposed Intervenors' interests were adequately

represented by Federal Defendants.[6]

Separately, the Court previously concluded that Proposed Intervenors' intervention was also unnecessary because they were unlikely to contribute to the factual development of this case due to the APA's "record rule." But the record rule does not bar the Court from considering the evidence that Proposed Intervenors seek to submit, most of which goes to issues that fall outside the scope of Texas's APA claims. In fact, Texas's lawsuit presents many other legal and factual questions that, as Texas has (correctly) acknowledged in other recent lawsuits about federal immigration policy, are not limited to the administrative record. Exh. A, Appellants' Reply in Support of Motion to Expedite, *KFT Appeal,* ECF No. 51-2. For instance, a central issue in this case is whether Texas has alleged or can prove an injury in fact that is fairly traceable to the challenged program and can be redressed by a federal court, which courts have repeatedly found can be decided by considering evidence outside of the administrative record. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case); *Texas v. United States*, 40 F.4th 205, 216-18 (5th Cir. 2022) (same); *Texas v. Biden*, 10 F.4th 538, 547 (5th Cir. 2021) (same). Here, Texas itself has opened the door for the Court to consider evidence outside the administrative record to assess, for example, its redressability argument, which is predicated on its allegations of what may or may not motivate noncitizens and their families to leave their places of residence. *See* Compl. at 30, ECF No. 1 (alleging that "[v]acatur of [KFT Parole] would 'cause some recipients to leave, thereby reducing the financial burdens on the State.'" (quoting *Texas v. United States*, 50 F.4th 498, 519

---

[6] In its original order denying intervention, the Court agreed that Proposed Intervenors met the basic requirements for permissive intervention—namely that their claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). Op. and Order at 8, ECF No. 49 ("[M]ovants' defense of [KFT Parole] would share common issues with the government's defense of [KFT Parole].").

(5th Cir. 2022)). The only parties situated to explain what may or may not cause them to upend their lives in states that they have called home for years or decades—and the only parties that have to date offered evidence in the form of expert declarations responsive to the Plaintiffs' expert declarations—are the Proposed Intervenors.

In fact, the record rule may not apply to Texas's non-APA claims, *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017), and Texas has previously taken the position that it does not. *See* Exh. A, Appellants' Reply in Support of Mot. to Expedite at 5-6, *KFT Appeal*, ECF No. 51-2 (Texas claiming *ultra vires* claims are exempt from record rule). Here, under Texas' own theory, its two non-APA claims are exempt from the record rule: one being the claim KFT Parole is *ultra vires*, Compl. at 51, ECF No. 1, and the other alleging that KFT Parole violates the Take Care Clause under Article II of the Constitution, *id.* at 49-51.

Lastly, the record rule does not govern questions of remedy. *See* 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8304 (2d ed.). Courts may consider extra-record evidence "in cases where relief is at issue, especially at the preliminary-injunction stage." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (listing several exceptions to the record rule); *accord Davis Mountains Trans-Pecos Heritage Ass'n v. FAA*, 116 F. App'x 3, 16 (5th Cir. 2004). As noted above in Section A.i., Proposed Intervenors have produced evidence that directly addresses these questions of fact, evidence that Federal Defendants have not introduced themselves to date.

**CONCLUSION**

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant

them intervention.[7]

---

[7] Proposed Intervenors' Proposed Answer, filed with the original motion, is incorporated by reference. *See* Proposed Answer of Proposed Intervenor Defendants, ECF 15-13.

Dated: October 22, 2024

Respectfully submitted,

**Paige Austin\***
New York Bar No. 5246954
paige.austin@maketheroadny.org

*/s/ Harold A. Solis*
**Harold A. Solis\***
New York Bar No. 5122726
Harold.Solis@maketheroadny.org

MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169


     \* *admitted pro hac vice*

**Esther H. Sung\* (Lead Attorney)**
California Bar No. 255962
esther.sung@justiceactioncenter.org

**Karen C. Tumlin\***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Hillary Li\***
Georgia Bar No. 898375
hillary.li@justiceactioncenter.org

**Laura Flores-Perilla\***
California Bar No. 355645
laura.flores-perilla@justiceactioncenter.org

**Brandon Galli-Graves\***
Texas Bar No. 24132050
brandon.galli-
graves@justiceactioncenter.org


JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

*Counsel for Proposed Intervenor Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2024, I electronically filed this motion with the Clerk of the Court for the United States District Court for the Eastern District of Texas by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Harold A. Solis*
Harold A. Solis

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Proposed Intervenors have complied with the meet and confer requirements of Local Rule CV-7(h). On October 22, 2024, counsel for Proposed Intervenors— Harold A. Solis—conferred with counsel for Defendants—Erez Reuveni—by telephone about the relief requested in this motion. Defendants oppose this motion. On October 22, 2024, counsel for Proposed Intervenors—Harold A. Solis—conferred with counsel for Plaintiffs—Ryan Walters and Alan Hurst—by videoconference about the relief requested in this motion. Plaintiffs oppose this motion because: Proposed Intervenors did not wait until the mandate had issued from the Fifth Circuit in their prior appeal and, in their view, this motion is untimely. Counsel for Texas requested that Proposed Intervenors include the following: "Plaintiffs oppose this renewed attempt to intervene in this case and will be filing a notice to the Court setting forth the reasons." Pursuant to Local Rule CV-7(i), discussions have conclusively ended at an impasse, leaving an open issue for the Court to decide.

*/s/ Harold A. Solis*
Harold A. Solis