**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | Civil Action No. 6:24-cv-00306 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY, *et al.*, ) | |
| ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The Court should grant summary judgment in Defendants' favor and dismiss Plaintiffs' claims, for the reasons Defendants explained in their motion and response to Plaintiffs' Motion. ECF No. 77; ECF No. 99. Plaintiffs' responsive arguments fail to demonstrate they have Article III standing, can obtain review under the Administrative Procedures Act (APA), can succeed on the merits of their claims, or are entitled to the universal relief they request. *See* ECF No. 99 (Defendants' Response Brief). The Federal Register Notice, *Implementation of Keeping Families Together*, 89 Fed. Reg. 67459 (Aug. 20, 2024) ("Notice"), complies with all legal requirements.

## STATEMENT OF FACTS

Plaintiffs acknowledge that the record rule—the limitation of review of the merits of challenges under the APA to the record of materials examined by the agency in reaching its decision—applies to this case. ECF No. 100 at 3; *see Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *1 (N.D. Tex. July 19, 2021) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). However, they claim there are exceptions to the record rule where courts may look at extrinsic evidence to evaluate certain merits issues, such as claims that an agency failed "to consider relevant factors," "ultra vires claims," "determining whether an agency action is a substantive rule," and claims that "evidence arising after the agency action shows whether the decision was correct or not." ECF No. 100 (Plaintiffs' Response Brief) at 3-4. Defendants dispute that all of these are in fact exceptions to the record rule. Regardless, to have the Court consider extrinsic evidence on merits issues for any of these reasons, Plaintiffs must successfully move to supplement the record and introduce the extra-record evidence (which they have not done) and also demonstrate why any departure from the APA's limitation on review to the record is justified by "unusual circumstances" (which they also have not done). *Medina Cnty.*

2

*Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) ("Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency.").

ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING

#### A.  Plaintiffs Have Failed to Establish Injury in Fact.

First, the Supreme Court's decision in *United States v. Texas*, 599 U.S. 670 (2023) (*Priorities*), precludes Texas from demonstrating a legally cognizable injury based on the types of harms—downstream impacts on public expenditures—it asserts. *See* ECF No. 77 at 16–20; ECF No. 99 at 5–9. Plaintiffs' Response Brief offers nothing new on this issue and cannot overcome this fundamental Article III problem. As explained, the Supreme Court's reasoning in *Priorities* applies equally to Plaintiffs' challenge here. Texas lacks a judicially cognizable interest in avoiding attenuated spending effects that may flow from discretionary government decisions about whether and how to enforce immigration laws against third parties—regardless of the precise agency action their legal claims challenge. ECF No. 99 at 5–6. Further, at bottom, Plaintiffs *do* challenge the Executive's arrest and removal policies. *Id.* at 6. Plaintiffs do not dispute that Texas's claimed injury stems from the mere presence of noncitizens in Texas. *See generally* ECF No. 100 at 10–17; *see also, e.g.*, *id.* at 6–7, 18–19 (confirming this theory of injury). Nor do Plaintiffs provide any viable reason to depart from the standing analysis in *Priorities*. *See* ECF No. 99 at 6-9 (demonstrating why Plaintiffs' arguments concerning affirmative benefits and "abdication of . . . statutory responsibilities" are unavailing).

Second, even assuming Texas's claimed injury were cognizable, Plaintiffs still have not established an imminent injury in fact that could be fairly traceable to the KFT parole process.

3

Plaintiffs' cited evidence does not prove that the KFT process will lead to any "certainly impending" increase in noncitizens. All of the evidence they cite for their assertion comes from the declaration of Dr. Potter,[1] and that declaration does not suffice to support their claim. To the contrary, it establishes that the volitional departure of noncitizens who have long resided in the United States and have social ties here is speculative, distant, and reliant on independent factors that have nothing to do with the KFT process.

Nor does the KFT process provide durable "protection from removal" as Plaintiffs claim. ECF No. 100 at 18. Plaintiffs have failed to respond to Defendants' point that neither a request for,

---

[1] The Court should decline to consider Dr. Potter's declaration as expert testimony, and any hearsay on which it relies is inadmissible as direct evidence. *See* ECF No. 99 at 13 & n.6. Plaintiffs did not properly disclose Dr. Potter's testimony, and their arguments to preserve Dr. Potter as an expert are unavailing. It is of no moment that Plaintiffs could not have disclosed Dr. Potter as an expert "90 days before trial" due to the expedited schedule in this case. *See* ECF No. 100 at 18–19, n.1. The "90-day deadline" set forth in the federal rules applies only "[a]bsent a stipulation or a court order." FED. R. CIV. P. 26(a)(2)(D). Here, the Court ordered discovery on standing to take place within 21 days, and set additional deadlines for discovery "notice and response periods." *See* ECF No. 27 at 7. These Court-ordered discovery deadlines encompass expert disclosures, because the Court did not except them from the parties' discovery obligations. *See id.* The deadlines in that Court order thus supersede the 90-day deadline. *See* FED. R. CIV. P. 26(a)(2)(D). And importantly, Plaintiffs provide no explanation for their failure to identify Dr. Potter as an expert the first time they relied on his sworn testimony in support of their preliminary injunction. *See* ECF No. 100 at 18–19, n.1. Likewise, Plaintiffs do not explain why they did not supplement the record during discovery, as the Federal Rules *require* them to do. *See* FED. R. CIV. P. 26(a)(2)(E). Plaintiffs' untimely disclosures occur at a litigation stage where the parties are relying on the record for dispositive motion practice. And Dr. Potter's two declarations vary in material respects. First, in support of Plaintiffs' summary judgment motion, Dr. Potter includes substantive testimony that was not included in the first. *See* ECF No. 79-6 at ¶ 17 (citing to study omitted from ECF No. 3-1). In that same declaration, Dr. Potter attached two exhibits for the very first time: his curriculum vitae, and a list of his publications within the last ten years. *Compare* ECF No. 79-6 at ¶ 2 *with* ECF No. 3-1 at ¶ 2. Moreover, Plaintiffs offer (also for the first time) information about Dr. Potter's prior testimony. *Id.* Although Plaintiffs' "expert disclosure," still remains incomplete under Rule 26(a)(2)(B)(i)–(vi), this declaration is the first time they shared any intention to rely on Dr. Potter as an expert. Should the Court allow Plaintiffs to proceed in this way, Defendants will be unfairly prejudiced. The parties did not engage in expert discovery, because no experts were identified during discovery. Consequently, Defendants did not obtain their own expert, because this was not a theory of the case Defendants knew they had to defend against. *See* ECF No. 99 at 13, n.6.

nor a grant of, parole will prevent removal if appropriate under existing enforcement guidelines. *See* ECF No. 77 at 21. Presumably, they have not done so because their only possible response is that the current enforcement guidelines are, in Plaintiffs' view, too lenient—but this would underscore that their claim is in fact a challenge to immigration prosecution policies.

Plaintiffs argue that, absent the KFT process, some noncitizens would pursue consular processing abroad to obtain an immigrant visa, and that this is a premise of the KFT process. ECF No. 100 at 19–20. But Plaintiffs do not dispute that the "vast majority" would not. *See id.* at 20; *see also* ECF No. 99 at 11. And Plaintiffs still do not expressly argue that Texas will suffer more costs with the KFT process in place because some noncitizens may otherwise leave the country *temporarily* to pursue such consular processing. And they still have not shown or even explained how a *temporary* departure of some of those noncitizens who may decide to leave—for varying lengths of time, at some unknown time in the future, before returning to the United States as a lawful permanent resident—will have a non-speculative impact on Texas's expenditures.

Indeed, Plaintiffs have failed to provide any calculations or projections at all that could show how some hypothetical subset of KFT process-eligible noncitizens that would otherwise choose to depart from the United States would impact any particular expenditures by the State of Texas through their failure to do so, let alone calculations that properly take into account the contours of the population eligible for KFT parole and their impact on certain state-funded expenditures. Plaintiffs' argument that "once an injury is established, courts do not consider offsetting benefits," ECF No. 100 at 10, misses the point.[2] Texas cannot establish an imminent prospective injury in the first place if it cannot show that its speculated diminished decrease in

---

[2] In any event, Plaintiffs' contention is incorrect, because Fifth Circuit precedent acknowledges that offsetting benefits arising from the same transaction as the alleged costs should be considered. *See* ECF No. 77 at 26.

KFT-process-eligible noncitizens would likely lead to an increase in costs. Plaintiffs still provide no evidence that KFT-process-eligible noncitizens are imposing any costs to begin with. Further, the administrative record establishes that if those KFT-process-eligible noncitizens obtain employment authorization, they are less likely to use any State-funded healthcare benefits in the future and thus less likely to impose the costs that Texas asserts as injury. *See* ECF No. 99 at 15 (citing AR 285–92, 2172–79).

Plaintiffs do not present any evidence that the KFT process will lead to increased crimes and the Court cannot assume that any given noncitizen eligible for the KFT process will commit crimes that lead to increased law enforcement or incarceration costs. *See Arizona v. Biden*, 40 F.4th 375, 387 (6th Cir. 2022) (rejecting theory of injury grounded in rising crime rates because the injury "hinge[s] on third parties committing more crimes"); *Arpaio v. Obama*, 797 F.3d 11, 22 (D.C. Cir. 2015) (even if a court were to "assume" that a policy change "increase[s] unlawful immigration," it "cannot further infer that [it] increase[s] crime"). Plaintiffs' simplistic assumption that more noncitizens always equals more health care and law enforcement costs is unsupported. Finally, Plaintiffs have not shown whether any child eligible for the KFT process attends Texas public schools, relying only on statistics for unaccompanied minors. *See* ECF No. 77 at 24–25; ECF No. 79-3. Even assuming that some such children attend Texas K-12 public education, Texas provides only unsupported speculation that, were it not for the KFT process, these children would leave their U.S. families and return to their home countries, *see* ECF No. 100 at 6. Further, Texas does not show how any temporary or permanent absence of such children would in any event impact Texas-provided funding. *See* ECF No. 77 at 24–25.

Ultimately, Texas's predictions as to future expenditures are inadequately supported and underscore how attenuated and remote its claimed injury is. Even assuming at least one noncitizen

would temporarily leave Texas absent the KFT process, that event and its impact on Texas's expenditures are too far in the future and too uncertain to support standing. "[D]istant (even if predictable) ripple effects . . . cannot establish Article III standing." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024).  Plaintiffs disagree with the approach taken by DHS with respect to this long-resident population of noncitizens, but they have not shown any injury from it. Disagreement with a policy alone is insufficient to establish standing. *Id.* at 390 n.3.

### B.  Plaintiffs' Injuries Are Not Redressable.

In any event, Plaintiffs' claimed harms would not be redressable. Plaintiffs claim they can establish that their injuries are redressable if the Court affords them "special solicitude." *See* ECF No. 100 at 21–24. Plaintiffs thus tacitly acknowledge that their claimed injuries cannot succeed unless the courts afford them the benefit of a lower standard for showing Article III standing. However, for the reasons previously stated, Plaintiffs are not entitled to special solicitude. *See* ECF No. 99 at 15–17; *see also* ECF No. 77 at 24. And even if Plaintiffs could meet this standard, there is no order that this Court could craft that would truly redress Plaintiffs' claimed injuries even under a relaxed standard for assessing Article III standing. *See* ECF No. 99 at 17–19. Plaintiffs misapprehend certain of Defendants arguments in this regard. *See* ECF No. 100 at 5. Defendants' redressability argument is not simply that KFT-process-eligible noncitizens might be paroled through some other process—it is that a Court order cannot remedy Plaintiffs' claimed harms. The Court cannot order these noncitizens to leave or the government to remove them, and thus an injunction of the Notice would not redress their claimed injury from the noncitizens continued presence in the Plaintiffs' states and, in any event, would not eliminate DHS's discretionary statutory authority to grant parole. *See* ECF No. 99 at 17–19.

### II.    THRESHOLD ISSUES BAR PLAINTIFFS' CLAIMS

Zone of Interests. Plaintiffs are not within the zone of interests of the parole statute. ECF No. 77 at 29. To the extent some courts have not strictly applied this test, ECF No. 100 at 24-26, those decisions do not survive the Supreme Court's ruling in *Priorities*, 599 U.S. at 674, 677—relying on principles that inform not only the scope of Article III but also the scope of the APA's cause of action—that third parties like Plaintiffs have no cognizable interest in the way the Executive Branch enforces the immigration laws against others. Plaintiffs cite a dissent in *Arizona* to advance their "quasi-sovereign interest in protecting [the States'] territory," ECF No. 100 at 25, but the core holding in that case was that the Federal Government wields "broad, undoubted" "power to determine immigration policy." *Arizona*, 567 U.S. at 394. And the *Arizona* Court held in the main that States are precluded "from regulating conduct in a field that Congress . . . has determined must be regulated by its exclusive governance." *Id.* at 399. The statutory scheme governing parole constitutes just such an exclusive field, and the States have no cognizable interest in co-opting any of the federal control over the parole process for themselves.

Final Agency Action. Plaintiffs cannot raise an APA claim because they do not challenge final agency action. ECF No. 77 at 30-31. Plaintiffs argue to the contrary by asserting that the Notice "binds DHS and imposes legal consequences," ECF No. 100 at 27, but the KFT process does not give anyone a right to parole or determine the outcome on any individual parole request, and thus does not consummate the agency's decisionmaking process on any parole request in a way that has legal consequences. *See* ECF No. 77 at 30-31. Plaintiffs, in particular, ignore crucial details in the Notice to press their claim that the "presumption" of significant public benefit renders parole approvals under the KFT process "mandatory." ECF No. 100 at 27. There is no such automatic presumption, and USCIS officers are not required to grant a parole request for any noncitizen who simply meets the criteria in the Notice. On the contrary, even for those noncitizens,

USCIS retains "exclusive" authority to determine, on a case-by-case basis, "whether parole for each requestor *individually* will provide a significant public benefit to further [the goals and interests of the United States]" and "whether the requestor merits a favorable exercise of discretion." 89 Fed. Reg. at 67465 (emphasis added). The Notice, in short, is not binding and does not amount to a final agency action.

  <u>Challenge to Discretionary Agency Action.</u> Both the APA and the INA bar APA challenges to agency action that is committed to agency discretion. 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B)(ii). *See* ECF No. 77 at 29-32. Plaintiffs argue the parole statute does not commit parole decisions to the agency's discretion, ECF No. 100 at 28-29, but section 1182(d)(5)(A) expressly commits parole decisions to the Secretary's "discretion" "under such conditions as he may prescribe." Notably, Plaintiffs do not contend with that statutory language, which clearly commits discretionary authority to the Executive. Plaintiffs also argue section 1252(a)(2)(B)(ii) applies to bar review only of individual discretionary decisions, citing the Fifth Circuit's MPP decision, ECF No. 100 at 28-29, but that narrow reading of 1252's scope has already been rejected by the Supreme Court. *See Texas v. Biden*, 597 U.S. 785, 801 (2022); *see also Patel v. Garland*, 596 U.S. 328, 338 (2022). In *Texas*, the Supreme Court applied one of the review bars in section 1252 to a programmatic challenge brought by several States—effectively repudiating the rigid distinction Plaintiffs have tried to draw between individual enforcement decisions and the policies that necessarily underlie and inform them. *See Texas*, 597 U.S. at 801.

## III. PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR CLAIMS

### A. The Notice is Not Contrary to Law.

  The Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United

States." 8 U.S.C. § 1182(d)(5)(A). The Notice comports with all requirements of this statute, as Defendants explained. ECF No. 77 at 32-63.

1.   <u>There is No Limitation on Parole to Noncitizens Outside of the United States.</u>

Plaintiffs contend that Congress's express affirmation of parole in place for military families in the National Defense Authorization Act of 2020 (NDAA) implies that other uses not expressly ratified by Congress are invalid. ECF No. 100 at 30-31. Not only does the NDAA make no such statement, but it expressly provides that it is the "[s]ense of Congress" that "the importance of the parole in place authority of the Secretary of Homeland Security is reaffirmed." 8 U.S.C. § 1182 note (acknowledging requests for "parole in place" under the statutory authority in section 1182(d)(5)). Further, the military-family parole in place initiative predated the NDAA, and Congress's use of the term "reaffirmed" only confirms that the NDAA was not newly conferring parole in place authority, but acknowledging authority Congress understood the Secretary to already have. *See id.* Plaintiffs argue that the Court should discount this statement due to the "Sense of Congress" qualifier, but they ignore the clear import of the words themselves: there is no limit on "the parole in place authority" to only the military context. *See id.* Given that the surrounding provisions in the NDAA all include terms referring to "military famil[ies]," Congress clearly knew how to say, for example, "the importance of the parole in place authority … *for military families* is reaffirmed," but chose not to, indicating there is no such limitation on parole in place. *See Jama v. ICE*, 543 U.S. 335, 341, (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply" especially "when Congress has shown elsewhere in the same statute that it knows how to make such a [modifier] manifest.").

Parole under section 1182(d)(5)(A) is by its own terms available to any "alien applying for admission." 8 U.S.C. § 1182(d)(5)(A). Plaintiffs argue that the category of "applicant for admission"—created by IIRIRA to make a noncitizen's admitted status and not the fact of their

physical entry the key factor —must be temporally limited. ECF No. 100 at 33-34. This is contrary to the plain terms of the INA, which provides simply, without time or other limitation, that a noncitizen "present in the United States who has not been admitted … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Plaintiffs cite *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc). But that case dealt with "peculiar circumstances" where, due to a change in law governing a U.S. territory, Torres "never crossed the U.S. border; the border crossed [her]," rendering her unlawfully present despite her previous lawful residence, and the Ninth Circuit has not broadly extended its unique holding. *United States v. Gambino-Ruiz*, 91 F.4th 981, 989 (9th Cir. 2024). As for *Ortiz-Couchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1355–56 (11th Cir. 2013) (per curiam), and *Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016), those cases dealt with whether adjustment of status constitutes an "admission" for noncitizens who previously were admitted in other than LPR status, not whether noncitizens who were never inspected and admitted remain "applicant[s] for admission" until such occurs, which the terms of section 1225(a)(1) indicate to be the case.

Finally, Plaintiffs concede Defendants' point that IIRIRA "remove[d] the incentive for noncitizens to unlawfully enter the country and thereby obtain more favorable procedural rights" but misunderstand what rights this prior "perverse incentive" in immigration law concerned. ECF No. 100 at 34. Congress was addressing the more favorable procedural rights in *defending against removal* in the former (more robust) deportation versus (more cursory) exclusion proceedings. *See, e.g.*, *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 159 (1993) (explaining, pre-IIRIRA, noncitizens "residing illegally in the United States are subject to deportation after a formal hearing" while those "arriving at the border … are subject to an exclusion hearing," a "less formal process"). IIRIRA did not limit the Secretary's discretionary authority to *affirmatively* grant parole to

unadmitted noncitizens who have entered the country, and the parole statute authorizes parole for any applicant for admission, a term IIRIRA made clear encompasses any noncitizen present in the country without admission. *See* 8 U.S.C. §§ 1182(d)(5)(A), 1225(a)(1).

> 2. Parole in Place Under the Notice is Only "Temporarily … on a Case-by-Case Basis for Urgent Humanitarian Reasons or Significant Public Benefit."

Section 1182(d)(5)(A) explicitly confers "discretion" upon DHS to grant parole as the Secretary deems appropriate "temporarily" "on a case-by-case basis" "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Plaintiffs still fail to contend with the meaning of the word "discretion" in the first clause of section 1182(d)(5)(A), and the implications of Congress's express decision not to define the terms "urgent humanitarian reason" or "significant public benefit" so as to allow the Secretary "flexib[ility]" to apply parole as he deems appropriate. H.R. Rep. No. 104-469, pt. 1, https://www.govinfo.gov/content/pkg/CRPT-104hrpt469/pdf/CRPT-104hrpt469-pt1.pdf (parole terms chosen to give the Secretary "flexibility to deal with compelling immigration situations"). Plaintiffs' unsupported and cramped reading of section 1182(d)(5)(A) would impermissibly render this textual grant of discretion to apply the terms of this section "without work to perform," *Ysleta Del Sur Pueblo v. Texas,* 596 U.S. 685, 699 (2022), and read into the statute limitations Congress rejected.

Plaintiffs' assertion that Defendants would simply parole anyone who meets the Notice's eligibility requirements without looking to see whether there is a justification pertaining to that case, ECF No. 100 at 40, is contradicted by the explicit requirements of Notice itself. "Even if a requestor establishes that they have met all of the criteria for eligibility, USCIS will examine the totality of the circumstances in the individual case to determine whether the requestor merits a grant of parole in place as a matter of discretion for significant public benefit or urgent humanitarian reasons." 89 Fed. Reg. at 67465. Furthermore, a determination of whether such

criteria have been met necessarily involves an assessment of the significant public benefit and urgent humanitarian factors present in each individual case. *See, e.g.*, *id.* at 67471. Plaintiffs' argument that DHS may not provide guidance to officers on generalized conditions that, if present, may support a finding of urgent humanitarian reasons or significant public benefit, and then allow officers to determine whether those generalized conditions do apply in individual cases to justify parole on that basis, *see id.* at 67465*,* also lacks support and is inconsistent with other sources of law interpreting the parole authority. *See Reno v. Flores*, 507 U.S. 292, 313-14 (1993) (holding that a statute requiring "individualized determination[s]" does not prevent immigration authorities from using "reasonable presumptions and generic rules"). A longstanding regulation establishes five different presumptive scenarios where an individual in custody would qualify for parole under section 1182(d)(5)(A) if an individual demonstrates that the general justifying condition factually applies to their case, paralleling the way in which significant-public-benefit justification is described in the Notice. *See* 8 C.F.R. § 212.5(b). The Notice operates in the same way as this regulation. *See* 89 Fed. Reg. at 67465 ("Through a case-by-case assessment, USCIS will consider whether parole for each requestor individually will provide a significant public benefit to further the[ general] goals" delineated in the Notice.).

Plaintiffs also have no basis for asserting that an urgent humanitarian reason or significant public benefit will not be "specified" to the individual request, which is what the Notice requires. 89 Fed. Reg. at 67465. And if what Plaintiffs mean is that the justification may not be "unique" to that individual because more than one noncitizen's parole may arise from the same or overlapping urgent humanitarian reasons or significant public benefit, section 1182(d)(5)(A) imposes no such uniqueness requirement and nowhere indicates that justifications may not apply to more than one person. *See* 8 U.S.C. § 1182(d)(5)(A). Congress's recognition and ratification of parole initiatives

with generally applicable justifications confirms that there is no such bar on so-called "programmatic" parole justifications. *See, e.g.,* 8 U.S.C. 1182 note (military parole in place); 48 U.S.C. § 1806(e)(6) (CNMI parole in place); Pub. L. 117-128 (2022) (Ukrainian parole process); Pub. L. 117-43 (2021) (Afghan parole process); Pub. L. 104-208, § 646 (1996) (Polish and Hungarian parole program). Indeed, Congress anticipated that "categories of aliens" would be "paroled into the [United States]" under section 1182(d)(5)(A) and did not prohibit this, but rather provided for reporting to Congress on the categories and numbers of noncitizens. *See* H.R. Rep. No. 104-828, at 162, 245 (1996); Pub. L. No. 104-208, Div. C, Title VI, § 602(b) (1996).

And regarding case-by-case adjudication, Plaintiffs fail to address the requirement that courts presume USCIS adjudicators will act in accordance with the Notice's requirement that all applications be decided on a case-by-case basis and granted only if they individually demonstrate a justification. 89 Fed. Reg. at 67465; *U.S. v. Chem. Found. Inc.*, 272 U.S. 1, 14-15 (1926). They point to no admissible evidence from the record to rebut this presumption, and the inadmissible extrinsic evidence they cite—suggesting USCIS granted parole in place eight times nationally in response to eight applications over the course of about a week, ECF No. 79-2, Ex. B. at 267— does not demonstrate that these determinations did not receive the individualized "case-by-case" consideration expressly required by the Notice, but instead that the mere handful of cases that USCIS was able to adjudicate to completion prior to the Court staying the KFT process were found to have merit. If plaintiffs could rebut the presumption that employees follow the explicit requirements of law and agency policy, without offering any evidence that proves it, merely by asserting that these agency "recitations" are "rote" and will not be meaningfully applied, ECF No. 100 at 41, then *every* agency action could be held invalid under the APA on this flimsy basis.

Finally, on temporariness, Plaintiffs rely on a later clause in section 1182(d)(5)(A) referring to a return to custody. ECF No. 100 on 42. Their argument ignores courts' recognition that not all grants of parole under section 1182(d)(5)(A) need be to noncitizens who would otherwise be in custody, such as advanced parole or parole for noncitizens awaiting visas. *See* ECF No. 99 at 49.

### B.  Parole in Place under KFT Does Not Circumvent Other INA Provisions.

The KFT process operates within Defendants' statutory parole authority and does not circumvent other INA provisions for providing noncitizens lawful status within the U.S. The parole authority has long existed as one of the options offering a path for noncitizens to adjust status to that of a lawful permanent resident, as the language of the adjustment statute itself declares in allowing noncitizens present in the United States to apply for adjustment if they have been "inspected and admitted or paroled." 8 U.S.C. § 1255(a); ECF No. 77 at 46-48, No. 99 at 50-53.

Plaintiffs argue, in essence, that parole in place may not offer an independent statutory pathway for meeting the criteria for adjustment of status because "the parole power is limited," as reflected by IIRIRA's title for the amendment to section 1182(d)(5)(A): "LIMITATION ON USE OF PAROLE." ECF No. 100 at 43-45. However, a mere title cannot override the express meaning of the text, which includes no such limit on the use of the parole authority, or of the explicit command of 8 U.S.C. § 1255(a) making adjustment available to paroled noncitizens. *Fulton v. City of Philadelphia*, 593 U.S. 522, 536–37 (2021) ("[A] title or heading should never be allowed to override the plain words of a text.") (alteration in original) (quotation omitted).

### C.  The Notice is Not Arbitrary and Capricious.

DHS's use of its longstanding parole-in-place authority in this context easily satisfies the APA's narrow scope of review. *See* ECF No. 77 at 48-53. None of the arguments Plaintiffs raise in response have any merit. Plaintiffs raise reliance interests, ECF No. 100 at 45, but States are not

regulated by the Notice, nor have Plaintiffs identified any actions they took in reliance on the pre-KFT-process status quo that have been disturbed, *see* ECF No. 77 at 49. Nor do Plaintiffs identify any costs the Secretary failed to consider. ECF No. 77 at 49-50; ECF No. 100 at 46-47. Plaintiffs' argument that the Secretary failed to consider incentive structures, ECF No. 100 at 47, is contradicted by the Notice, ECF No. 77 at 50-51; 89 Fed. Reg. at 67479, 67475-76. And Plaintiffs point to nothing in the Notice to support their assertion that it improperly "treats *illegal* aliens in the workforce as a positive," ECF No. 100 at 48 (emphasis added). *See* ECF No. 79 at 52.

### D.  Plaintiffs' Notice-and-Comment Claim Fails.

Plaintiffs cannot succeed on their claim that the Notice was required to undergo notice-and-comment rulemaking. *See* ECF No. 77 at 53–58. Contrary to Plaintiffs' arguments, ECF No. 100 at 49, the Notice is a general statement of policy, rather than a legislative rule, because it explains how USCIS will exercise its preexisting discretionary parole authority generally without binding the agency to any particular outcome in any individual case. ECF No. 77 at 53–55; *see, e.g.*, *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251-52 (D.C. Cir. 2014) (distinguishing legislative rules from general statements of policy; observing that "[a]n agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy").  Likewise, the Notice constitutes a rule of agency procedure because it establishes a process for submitting requests for consideration for parole in place, without creating any new rights or dictating the outcome of any parole determination. ECF No. 77 at 55. These same individuals could seek parole in place under section 1182(d)(5)(A) even prior to the KFT process, *id.*, and Plaintiffs' arguments to the contrary misstate Defendants' position and the language of the Notice, ECF No. 100 at 49-50. Finally, Plaintiffs dispute that the foreign affairs

exception applies, noting the KFT process applies to "people who have been present in this country for over 10 years." *Id.* at 50. Plaintiffs ignore the specific foreign affairs implications the Secretary set out in the Notice that would be caused by a delay for notice and comment. ECF No. 77 at 55-58; 89 Fed. Reg. at 67489. When "the President chooses the parole option … for foreign-policy reasons, a court … must be deferential to the President's Article II foreign-policy judgment," as "[n]othing in the relevant immigration statutes ... suggests that Congress wanted the Federal Judiciary to improperly second-guess the President's Article II judgment." *Texas*, 597 U.S. at 816 (Kavanaugh concurring).

### E.  Plaintiffs' Paperwork Reduction Act Claims Lack Merit.

Plaintiffs cannot succeed on their APA claim challenging the Office of Management and Budget's (OMB) approval of the collection of information through Form I-131F, Application for Parole in Place for Certain Noncitizen Spouses and Stepchildren of U.S. Citizens, under the emergency processing provisions of the Paperwork Reduction Act (PRA), 44 U.S.C. § 3507(j); 5 C.F.R. § 1320.13. Their only claim to injury from OMB's authorization for DHS to collect information from noncitizens stems from the alleged harms from the KFT process itself, *see* ECF No. 100 at 51, and is even more attenuated than their challenge to the Notice, as it is one step further removed, *see* ECF No. 77 at 58. As Plaintiffs lack standing to challenge the KFT process, they necessarily lack standing to challenge the emergency information collection. And even if Plaintiffs could challenge the KFT process, Plaintiffs cite no authority suggesting that a party has standing to challenge a PRA approval when they are not the target of the information collection that has been approved. Further, Plaintiffs challenge only the decision to approve information collection *under the expedited procedures of § 3507(j), i.e.*, without the PRA's ordinary notice-and-comment procedures. ECF No. 100 at 51. Plaintiffs assert no injury connected to DHS's use

of Form I-131F prior to notice and comment, or any plausible interest in providing "input" on the form, and thus they cannot establish traceability. *Dep't of Educ. v. Brown*, 600 U.S. 551, 562, 566–67 (2023). Further, relief on this claim cannot redress their claimed harm from the Notice, because it would not prevent DHS from obtaining ordinary authorization to collect the same information, and DHS has already commenced those clearance procedures. *See* 89 Fed. Reg. at 67489.

Nor are Plaintiffs' interests in halting the KFT process related to any of the informational interests protected by the PRA. Plaintiffs allege their claim vindicates one the PRA's many stated purposes: "strengthen[ing] the partnership between the Federal Government and State, local, and tribal governments by minimizing the burden and maximizing the utility of information created, collected, maintained, used, disseminated, and retained by or for the Federal Government." 44 U.S.C. § 3501(6). This "partnership" clearly relates to the burdens of information collection and the efficient use of information, and thus connects to the overall purpose of the PRA of reducing paperwork burdens from the government seeking information from State governments and others. *See* H.R. Rep. No. 96-835, at 2 (1980) (expressing concerns with practices that "reduce the effectiveness of the Government while, at the same time, drowning our citizens in a sea of forms, questionnaires, and reports"). Plaintiffs do not dispute that this is the overall purpose of the PRA, which is reinforced by the fact that the PRA's sole enforcement mechanism ensures that no one may be penalized for a failure to comply with unauthorized collections of information. ECF No. 77 at 59 (citing 44 U.S.C. § 3512). Plaintiffs' claimed interest is in blocking the KFT process, not any claimed burden of information collection or inefficient use of information. Nothing in the PRA addresses that interest, and Plaintiffs cite nothing supporting the remarkable notion that anyone who thinks a government process is unlawful can challenge any form used to implement it.

But Plaintiffs' claim also is barred by the PRA's judicial review provision and fails on the merits. Plaintiffs provide no basis, textual or otherwise, to conclude that the decision to "authorize a collection of information" set forth in the Federal Register Notice under § 3507(j) is not "a collection of information contained in an agency rule" described in § 3507(d). *See* ECF No. 100 at 51; *Hyatt v. OMB*, 908 F.3d 1163 (9th Cir. 2018) (§ 3507(d)(6) is not limited "to proposed rules"). Even if the claim were reviewable, OMB's authorization easily withstands the highly deferential arbitrary-and-capricious standard, as DHS's justifications for emergency processing are reasonable and align with the standards in § 3507(j). *See* ECF No. 77 at 59–60; ECF No. 99 at 62–63. Plaintiffs question that families would face any "additional fraud" beyond "[w]hat they have faced during their more-than-ten-year illegal stay in the country." ECF No. 100 at 52. But they miss that the risk of fraud—and thus the resulting public harms and impediments to information collection—would most likely arise during any period between announcement of the policy and the collection of information through forms, making prompt clearance crucial. OMB AR 002. And the Federal Register Notice describes the particularly acute harms faced by noncitizens without lawful status for longer periods of time. *E.g.*, 89 Fed. Reg. at 67483. These harms separately and together amply justify expedited processing. The statute requires only that the agency find that public harm is "reasonably likely to result" if the ordinary clearance procedures are followed. 44 U.S.C. § 3507(j)(1). For these reasons, Defendants are entitled to judgment on this claim.

### F.  Plaintiffs Do Not Have a Claim Under the Take Care Clause.

Plaintiffs concede that they are not attempting to raise a separate claim under the Take Care Clause, but rather are arguing that the KFT process is contrary to law under the APA. ECF No. 100 at 54. The Supreme Court has explained that claims arguing an "executive official" is acting

"in excess of his statutory authority" are statutory claims, "not constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). The Court should thus dismiss this claim as duplicative of their APA claim. *Texas v. Biden*, 589 F. Supp. 3d 595, 617 (N.D. Tex. 2022) (dismissing Take Care Clause claim as duplicative of APA claim).

### G.  Plaintiffs Have Abandoned Their Ultra Vires Claim.

Plaintiffs have abandoned their ultra vires claim by failing to move for judgment on this claim at trial. *See* ECF No. 79; ECF No. 99 at 64. Plaintiffs' response to Defendants' motion, ECF No. 100 at 55-57, does not respond to Fifth Circuit cases holding that a plaintiff cannot raise an ultra vires claim that is in substance a suit against a government agency, nor can they raise an ultra vires claim and a similar APA claim in the same suit. ECF No. 77 at 61-63.

### IV.    IF THE COURT GRANTS RELIEF IT MUST BE SHARPLY LIMITED

Even assuming Plaintiffs can demonstrate actual injury by a preponderance of the evidence and that they are entitled to summary judgment on any of their claims, remand without vacatur is the only appropriate remedy. ECF No. 77 at 66-67.

First, Plaintiffs cannot demonstrate that they will suffer immediate, irreparable harm absent entry of injunctive relief, and the balance of harms weighs against injunctive relief, foreclosing any basis for an injunction. *Id*. at 64-65, Plaintiffs do not respond to these points.

Second, remand without vacatur would be the only appropriate remedy. The Fifth Circuit has held that "[r]emand, not vacatur, is generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389–90 (5th Cir. 2021). Plaintiffs argue, however, that remand without vacatur is available only when the Court determines agency action is arbitrary or capricious and not when it is found to be contrary to law. ECF No. 100, at 61. In fact, Plaintiffs argue that universal vacatur is required. ECF No. 100, at 58.

Not so. In *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), the Fifth Circuit, sitting en banc, found a final rule to be unlawful for "multiple independent reasons," yet still remanded the case to the district court to consider whether "a more limited remedy" than universal vacatur would suffice. *Id.* at 471-72. While Plaintiffs quibble with the procedural history of the case, ECF No. 100 at 59, they do not dispute that the Court noted that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury," and, to that end, the court instructed the district court to "determine what remedy—injunctive, declaratory, or otherwise—is appropriate." *Id*. at 472. Stated differently, there would have been no need for the Court of Appeals to remand the case if universal vacatur were the only available, or required, remedy.

Remand without vacatur is particularly appropriate here where vacatur would interfere with and disrupt the country's diplomatic efforts with other Western Hemisphere countries to obtain their cooperation in immigration and international-crime enforcement in return for providing a route for regularization of their nationals long residing in the United States. ECF No. 77, at 65. Plaintiffs' only response is that "[i]t is hard to see how vacating a Rule that was only in effect for a few days could have such disruptive consequences." ECF No. 100 at 62. But Defendants have explained why vacatur would be disruptive notwithstanding the short time the KFT process was in place before this Court issued an administrative stay. ECF No. 77 at 66-67. The KFT process responds to requests from other countries to offer regularization avenues for their nationals living in the United States. *Id*. at 56-58, 66-67. Additionally, further delaying or otherwise hampering its implementation "would adversely affect the United States' ability to negotiate with … Mexico and Colombia[] for additional enforcement measures and increased cooperation with removals." 89 Fed. Reg. at 67,489; *see* AR 921-24, 1342-45, 2967-71, 2975-82, 4434-4448, 4450-4468.

Plaintiffs ask this Court for both an order of universal vacatur and a nationwide injunction.

The Court should award neither. Plaintiffs have not met their burden "to *prove*" that the relief they seek is "no broader" than necessary "to protect against their proven injuries." *Feds for Med Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023). *See generally*, ECF No. 100 at 58-64. Plaintiffs argue they require universal relief primarily because KFT beneficiaries are "free to move among the states." ECF No. 100 at 64. But Plaintiffs do not cite any evidence in support of the argument that KFT beneficiaries are likely to move to Texas. Plaintiffs once again simply cite to *Texas v. U.S.*, 809 F.3d 134, 187-88 (5th Cir. 2015) (*DAPA)*. ECF No. 100 at 64. But the *DAPA* case precedes recent Supreme Court precedent questioning universal relief, ECF No. 99 at 68, and Plaintiffs ignore the fact that KFT beneficiaries have established ties to wherever they are living, including having spouses and children there, and thus would be unlikely to uproot their lives to move to Texas. Plaintiffs also argue they require nationwide relief because the legal violations here are nationwide and immigration laws should be enforced uniformly. ECF No. 100 at 29-35, 59, 64. Even assuming this Court were to find that to be the case, another court elsewhere in the country might disagree. *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Nationwide injunctions "short-circuit the decision making benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top."); *Priorities*, 599 U.S. at 703 (Gorsuch, J., concurring) ("[U]niversal relief, whether by way of injunction or vacatur, strains our separation of powers" and "exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide."). Indeed, for precisely that reason, another district court in this State recently declined to grant nationwide relief in another case concerning a national policy. *Texas v. Biden*, No. 6:22-CV-00004, 2023 WL 6281319, at *16 (S.D. Tex. Sept. 26, 2023).

 Plaintiffs also assume that universal relief will serve to "benefit" non-parties. Plaintiffs

argue that this "incidental benefit" to non-party states should not dissuade this Court from issuing universal relief. ECF No. 100 at 59, 64. But Plaintiffs have the burden to prove that whatever relief they seek is no broader than necessary to address their proven injuries, ECF No. 77 at 69. Plaintiffs have stipulated that they are not introducing or seeking to establish any injury to any state other than Texas, ECF No. 36, and 19 other states have filed an amicus brief arguing that "[a] nationwide injunction against implementation of the KFT process would . . . grievously harm amici States," ECF No. 98 at 12.

Plaintiffs' requested relief also extends beyond their claims in their Complaint. In addition to asking the Court to enjoin the KFT process, they ask the Court to enjoin Defendants from "granting parole to PIP applicants." ECF No. 100 at 65. Plaintiffs state that such relief is necessary because "Defendants have asserted that even without the Notice, 'any noncitizen applicant for admission physically present in the United States can apply for parole in place,'" essentially conceding that their alleged injuries are not redressable by the claims they have raised. ECF No. 100 at 63.[3] Plaintiffs' Complaint challenged only the KFT process, and sought relief only with respect to that process. ECF No. 1 at 52. It did not challenge DHS's ability to offer parole-in-place outside the KFT process. *See generally* ECF No. 1. The law is clear that the Court may not award preliminary or permanent injunctive relief that is not tied to a cause of action and relief sought in the Complaint. A motion for a preliminary injunction or a permanent injunction must be based upon both a cause of action and relief sought in the complaint. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). As the Eleventh Circuit explained:

> [A]ny motion or suit for either a preliminary or permanent

---

[3] Indeed, there are procedures in place whereby noncitizens can seek parole in place from within the United States, and these procedures existed before the KFT process was implemented. *See* https://www.uscis.gov/humanitarian/humanitarian_parole, Who Can Apply for Parole; https://www.uscis.gov/i-131.

> injunction must be based upon a cause of action .... There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).

*Id*. at 1128 (internal citations omitted); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 219 (1945) (the issuance of preliminary relief "presupposes or assumes ... that a decree may be entered after a trial on the merits enjoining and restraining the defendants from certain future conduct"); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (Injunctive relief is permissible only where there is "a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (same);  *Davis v. Chairman, Texas Bd. of Crim. Just.*, No. 6:10CV646, 2011 WL 831417, at *2 (E.D. Tex. Feb. 10, 2011), *adopted*, 2011 WL 830668 (E.D. Tex. Mar. 2, 2011).[4]

If this Court determines the KFT process violates the APA, Defendants have provided the Court with a workable alternative to a universal vacatur or nationwide injunction—remanding without vacatur, or at most, enjoining parole in place through the KFT process only as to those eligible noncitizens who live in Texas. The Court should reject Plaintiffs' request for a universal injunction or vacatur.

---

[4] Plaintiffs similarly seek declaratory relief beyond that sought in the Complaint. *Compare* ECF No. 100 at 62 ("The Court should therefore declare that . . . 8 U.S.C. § 1182(d)(5)(A) only permits an alien to be "parole[d] *into* the United States" and "cannot lawfully be applied to aliens physically present in the country, whether lawfully or unlawfully."), *with* ECF No. 1 (asking the Court to "decree that the PIP Program, as well as the Notice, the Filing Guide, and the Form I-131F, were issued in violation of the APA."). For the same reasons set forth above, the Court exceeds its authority by issuing declaratory relief that goes beyond the process challenged and the relief sought in the Complaint.

## CONCLUSION

The Court should grant summary judgment in Defendants' favor.

Dated: October 30, 2024

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

DAVID MCCONNELL
*Director*
Office of Immigration Litigation
General Litigation and Appeals Section

EREZ REUVENI
*Acting Deputy Director*

BRIAN C. WARD
*Acting Assistant Director*

KATHERINE J. SHINNERS
ALEXANDER J. HALASKA
DAVID KIM
*Senior Litigation Counsel*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ELISSA P. FUDIM
CAROLINE MCGUIRE
ERIN T. RYAN
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2024, I electronically filed this memorandum in support of Defendants' motion with the Clerk of the Court for the United States District Court for the Eastern District of Texas by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice