# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

STATE OF TEXAS, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    *Defendants*.

CASE NO. 6:24-CV-306-JCB

**CORRECTED PLAINTIFF STATE OF TEXAS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST REQUESTS FOR DISCOVERY**

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff State of Texas hereby corrects several of its responses to Requests for Admission in Defendants' First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission ("First Set of Requests for Discovery"). In formulating these responses, Texas relied on the documents and information available at this time. To the extent further documents become available or further information becomes known to Texas, it will supplement or amend its production and responses as required under Rule 26.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Texas objects to Defendants' definition of the term "You" as "The State of Texas, including all its agencies, subdivisions, and officers acting in official capacity." Definition No. 11.

"A party to a cause of action is a person who is both named as a party and subject to the court's jurisdiction." *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987). Texas's executive department is not like the federal executive branch—a complete unit with "one man" wielding the entire executive power to whom all "lesser officers must" be accountable. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (quotations omitted). "[U]nlike the federal constitution, the Texas Constitution does not vest the executive power solely in one chief executive. Instead, the executive

1

power is spread across several distinct elected offices." *In re Abbott*, 645 S.W.3d 276, 280 (Tex. 2022). The design creates a "decentralize[d] executive authority." *State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 2012) (Womack, J., concurring).

The Attorney General of Texas, who brought this suit on Texas's behalf, does not have a free-floating executive power to direct State agencies to take any action. Texas's "Executive" is non-unitary to the point where "neither the Governor nor the Attorney General has statutory authority [even] to directly control" the actions of many non-elected departments. *In re Abbott*, 645 S.W.3d at 281.Under Texas law, the Attorney General represents "the state *qua* state and as *parens patriae*." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997). Texas's discovery obligations are limited to information or documents in the possession or control of the Attorney General of Texas.

Additionally, the State of Texas has more than 320,000 full-time employees and thousands more part-time employees spread across the general government, health and human services, public education, higher education, the judiciary, public safety and criminal justice, natural resources, business and economic development, regulatory and other state agencies, the legislature, and the Office of the Attorney General. This extends even more broadly to political subdivisions within the State.

Notwithstanding this objection, the Texas Attorney General represents the responding agencies for purposes of responding to these discovery requests and no responsive materials are being withheld on the basis of this objection.

.

# REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** You are unable to quantify the cost to your State from the current presence in your State of qualifying noncitizens.

> **RESPONSE:** Texas admits that it does not track information specifically related to this category of aliens and is therefore unable to provide specific numbers of costs related to them.

**REQUEST FOR ADMISSION NO. 2:** You are unable to assess the future cost to your State from the continued presence of qualifying noncitizens paroled in place pursuant to the KFT parole process.

> **RESPONSE:** Texas admits that it does not track information specifically related to this category of aliens and is therefore unable to provide specific numbers of costs related to them.

**REQUEST FOR ADMISSION NO. 3:** You are unable to compare the cost to your State from the presence in your State of qualifying noncitizens to the future cost that qualifying noncitizens paroled in place pursuant to the KFT parole process may cost your State.

> **RESPONSE:** Texas admits that it does not track information specifically related to these categories of aliens and is therefore unable to provide specific numbers of costs related to them.

**REQUEST FOR ADMISSION NO. 4:** You have no evidence that you will incur more costs from qualifying noncitizens in your State if they are paroled in place under the KFT parole process than you incurred from the same populations prior to the effective date.

> **RESPONSE:** Texas admits that it does not track information specifically related to these categories of aliens and is therefore unable to provide specific numbers of costs related to them.

**REQUEST FOR ADMISSION NO. 5:** You cannot quantify how much money your State would save, if any, in the absence of the KFT parole processes.

> **RESPONSE:** Texas admits that it does not track information specifically related to this category of aliens and is therefore unable to provide specific numbers of costs related to them.

**REQUEST FOR ADMISSION NO. 17:** You cannot quantify the extent to which the Secretary of Homeland Security, or DHS more generally, would seek to remove, and be able to affect the removal of, any qualifying noncitizens absent the KFT parole process.

**RESPONSE:** Texas objects to this Request as speculative because it depends on the independent future actions of third parties or even future governmental policies, as well as other independent, unknown factors. Subject to this objection, Texas admits that it is unable to predict the extent to which the Secretary or DHS would be able to effect removal of any of this category of aliens because Texas does not have knowledge of future resources and capabilities of the agency. Texas also admits that it is unable to predict what actions any particular Secretary of Homeland Security will take regarding removal of this category of aliens in the future.

**REQUEST FOR ADMISSION NO. 18:** The causes of return migration are difficult to assess, and you have no way to estimate how many, if any, qualified noncitizens would voluntarily return to their home countries if the KFT parole process were terminated.

**RESPONSE:** Texas admits that many factors affect likelihood of return migration and that it cannot provide a numerical estimate as to how many aliens in this category would do so absent the KFT parole process, but at least some in that category would return to their home countries.

**REQUEST FOR ADMISSION NO. 19:** The causes of return migration are difficult to assess, and you have no way to estimate how many, if any, qualified noncitizens would seek to obtain lawful status through leaving the country and pursuing consular processing if the KFT parole process were terminated.

**RESPONSE:** Texas admits that many factors affect likelihood of return migration and that it cannot provide a numerical estimate as to how many aliens in this category would do so absent the KFT parole process, but at least some in that category would return to their home countries to pursue consular processing.

**REQUEST FOR ADMISSION NO. 20:** Social ties in the United States, including lengthy duration of residence in the United States, marriage to a U.S. citizen, and having U.S. citizen children or stepchildren, deter noncitizens in the United States from emigrating back to their countries of origin.

**RESPONSE:** Texas admits that many factors affect likelihood of return migration, including these social ties for certain aliens that have them, though older immigrants (and those who immigrated later in childhood) are more likely to return to their home countries and that at least some with these social ties would return to their home countries.

| | |
|---|---|
| **KEN PAXTON**<br>Attorney General of Texas<br><br>**BRENT WEBSTER**<br>First Assistant Attorney General<br><br>**RALPH MOLINA**<br>Deputy First Assistant Attorney General<br><br>**AUSTIN KINGHORN**<br>Deputy Attorney General for Legal Strategy<br><br>*/s/Ryan D. Walters*<br>**RYAN D. WALTERS**<br>Chief, Special Litigation Division<br>Texas Bar No. 24105085<br>Ryan.Walters@oag.texas.gov<br><br>**KATHLEEN T. HUNKER**<br>Special Counsel<br>Texas Bar No. 24118415<br>Kathleen.Hunker@oag.texas.gov<br><br>**GARRETT GREENE**<br>Special Counsel<br>Texas Bar No. 24096217<br>Garrett.Greene@oag.texas.gov<br><br>Office of the Attorney General of Texas<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: 512-463-2100<br>Fax: 512-457-4410 | **GENE P. HAMILTON**<br>Virginia Bar No. 80434<br><br>**JAMES ROGERS**<br>Arizona Bar no. 027287<br><br>**RYAN GIANNETTI**<br>DC Bar no. 1613384<br><br>America First Legal Foundation<br>611 Pennsylvania Ave. SE #231<br>Washington, DC 20003<br>(202) 964-3721<br>Gene.Hamilton@aflegal.org<br>James.Rogers@aflegal.org<br>Ryan.Giannetti@aflegal.org<br><br>**COUNSEL FOR PLAINTIFF**<br>**STATE OF TEXAS** |

### CERTIFICATE OF SERVICE

I certify that on September 6, 2024, a true and accurate copy of the foregoing document was served via email to all counsel of record.

*/s/Ryan D. Walters*
**RYAN D. WALTERS**
